**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MANUEL BARRIOS, BRANDON FULLER, and SAVANNAH WASHINGTON, individually and on behalf of a class of similarly situated persons,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) | **Case No. 15 C 2648** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **THE CITY OF CHICAGO, GARRY McCARTHY, and MARK JAEGER,** | ) ) | |
| **Defendants.[1]** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Manuel Barrios, Brandon Fuller, and Savannah Washington allege that the City

of Chicago deprived them of their vehicles, which were impounded pursuant to City of Chicago

ordinances based on the alleged commission of offenses related to drug use, without providing

required procedural due process.  Specifically, according to the plaintiffs, the City has a custom,

policy, and practice of attempting to coerce lienholders with an interest in certain impounded

vehicles to repossess those vehicles without notifying the vehicles' owners that it is pressuring

the lienholders.  The City and City police officer Mark Jaeger seek to dismiss the claims against

them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that the plaintiffs lack standing

---

[1]  The plaintiffs sued now-former Chicago Police Superintendent Garry McCarthy in his
official capacity.  They have conceded that their claims against McCarthy should be dismissed as
unnecessary because they also sued the City.  (Pls.' Resp., Dkt. 32, at 14.)  A public officer's
successor is automatically substituted when that officer ceases to hold office while an action is
pending.  Fed. R. Civ. P. 25(d).  Given the plaintiffs' position, the court will dismiss McCarthy
as a defendant and will not substitute the new acting police commissioner.  The court also notes
that the plaintiffs do not oppose dismissal of their claim for damages based on emotional
distress.

and, alternatively, that the plaintiffs' claims fail on the merits. Officer Jaeger also argues that he is entitled to qualified immunity.

For the following reasons, the motion to dismiss is granted in part and denied in part. Washington's request for injunctive relief is dismissed with leave to replead consistent with this order. The plaintiffs may proceed with their remaining procedural due process claims against the City (Count I). In addition, the plaintiffs' procedural due process claim against Officer Jaeger (Count II) is dismissed based on qualified immunity, so the request for the City to indemnify Officer Jaeger (Count III) is also dismissed.

## I. Background[2]

Plaintiffs Brandon Fuller and Savannah Washington were joint owners of a 2004 Pontiac Grand Prix and plaintiff Manuel Barrios is the registered owner of a 2012 Honda Accord. In 2014, the plaintiffs' paths converged with municipal and state laws governing the impoundment of vehicles in relation to certain drug offenses. The court begins by reviewing the applicable laws relating to impoundment of a vehicle owned by an individual charged with a "use related" drug offense and then addresses the specific circumstances surrounding the impoundment of the plaintiffs' vehicles.

---

[2] The following facts are drawn from the amended complaint and will be accepted as true for the purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The court has omitted legal conclusions presented as factual allegations (*e.g.*, ¶ 46 of the amended complaint, which asserts that upon the dismissal of felony charges against Barrios' son, "a clear right to the release of [Barrios'] vehicle was vested in [Barrios], and a corresponding duty to release Plaintiff's vehicle was vested in the City of Chicago, contingent upon any hold 'pursuant to applicable state, federal or other law, court order or warrant authorizing the continued impoundment or if vehicle is subject to police investigation hold that has not been removed.'").

## A.    Impoundment Under Illinois Law and Chicago's Municipal Code

Possession of more than 30 grams of cannabis is a felony under Illinois law.  720 Ill.

Comp. Stat. § 550/4.  If cannabis is found in a vehicle, the vehicle can be inventoried as evidence

of a crime.  If so, the vehicle is under the control of the court with jurisdiction over the criminal

proceeding.  *See* 725 Ill. Comp. Stat. §§ 5/108-2, 108-11.  If law enforcement discovers cannabis

in a vehicle, the vehicle is subject to criminal forfeiture under Illinois law, subject to certain

defenses.  720 Ill. Comp. Stat. § 550/12.

If the vehicle is subject to criminal forfeiture, the State's Attorney must initiate

proceedings under Illinois's Drug Asset Forfeiture Procedure Act, 725 Ill. Comp. Stat. § 150/1,

*et seq.  See* 720 Ill. Comp. Stat. § 550/12(c-1).  If the State's Attorney's office decides to seek

forfeiture of a vehicle under the Drug Asset Forfeiture Procedure Act, it "shall seek a

preliminary determination from the circuit court as to whether there is probable cause that the

property may be subject to forfeiture" within 14 days after the seizure of the vehicle.  725 Ill.

Comp. Stat. § 150/3.5(a).  "When the property seized for forfeiture is a vehicle, the law

enforcement agency seizing the property shall immediately notify the Secretary of State that

forfeiture proceedings are pending regarding such vehicle."  725 Ill. Comp. Stat. § 150/5.

In addition, § 7-24-225 (the "Impoundment Ordinance") of the Municipal Code of

Chicago ("MCC") authorizes the City to seize and impound vehicles containing controlled

substances such as cannabis.[3]  The Impoundment Ordinance subjects the vehicle owner to a fine,

plus towing and storage fees.  To seize a vehicle under the Impoundment Ordinance and

---

[3]   This rule does not apply to cannabis that is subject to the Medical Cannabis Pilot
Program Act, 410 Ill. Comp. Stat. § 130/1, *et seq.*

impound it by towing it to a City facility, a police officer must have probable cause to believe that the vehicle is subject to seizure and impoundment.  MCC § 7-24-225(b).

A vehicle owner can challenge the basis for the impoundment by submitting a written request for a preliminary hearing before the City's Department of Administrative Hearings ("DOAH") within 15 days after her vehicle is impounded.  A DOAH hearing officer may only resolve claims under the Impoundment Ordinance as she cannot resolve issues related to any pending or potential civil forfeiture action or criminal proceeding.  *See* MCC § 2-14-132(2).  A preliminary hearing must be conducted within 48 hours of a vehicle owner's request, excluding Saturdays, Sundays, and holidays.  *See* MCC § 2-14-132(1).  If the vehicle owner fails to vindicate her rights at a preliminary hearing, she may seek a full hearing by filing a written request with the DOAH.  *See* MCC § 2-14-132(2).

The MCC contains provisions requiring the City to send vehicle owners and lienholders written notice of the right to seek a full hearing.  *Id*.  The owner has 15 days from the date of mailing to file a written request for a full hearing with the DOAH.  *Id*.  If the DOAH hearing officer finds that the vehicle was properly impounded, she "shall enter an order finding the owner of record liable to the city for the amount of the administrative penalty prescribed for the violation, plus towing and storage fees."  *Id*.  If the officer finds for the vehicle owner, she "shall enter an order finding for the owner and for the return of the vehicle or previously paid penalty and fees; provided that if the vehicle was seized and impounded pursuant to Section 7-24-225, the vehicle shall not be returned unless and until the city receives notice from the appropriate state, or where applicable, federal officials that (i) forfeiture proceedings will not be instituted;

or (ii) forfeiture proceedings have concluded and there is a settlement or a court order providing that the vehicle shall be returned to the owner of record." *Id.*

If a vehicle owner does not prevail when challenging the seizure and impoundment of her vehicle, the MCC allows the City to dispose of her vehicle under certain circumstances. *See* MCC § 2-14-132(4);[4] *see also* 625 Ill. Comp. Stat. § 5/4-208 ("disposal of unclaimed vehicles"), 625 Ill. Comp. Stat. § 5/4-209 ("disposal of unclaimed vehicles more than 7 years of age; disposal of abandoned or unclaimed vehicles without notice").

The plaintiffs allege that:

> The City of Chicago has a policy, practice and custom of refusing to return vehicles impounded for a § 7-24-225 ["unlawful drugs in motor vehicle"] use-related offense even when the underlying Illinois drug offenses have been dismissed and an administrative judge has ordered the release of the car without the payment of fines and storage and tow fees and the City has not given notice to the State's Attorney of a seizure of property for forfeiture as required in 725 ILCS 150/5.

(Am. Compl., Dkt. 21, ¶ 24.) The plaintiffs further allege that when a vehicle is impounded in connection with a drug offense, the City has an unwritten policy, practice and custom "of contacting lienholders with an interest in the vehicle and coercing them to repossesses the car when forfeiture has not or can no longer be pursued, thus illegally and unlawfully depriving the owner of their vehicle forever without due process, and/or, in cases like that of Barrios,

---

[4] Specifically, MCC § 2-14-132(4) provides that "[a]ny motor vehicle that is not reclaimed within ten days after the expiration of the time during which the owner of record may seek judicial review of the city's action under this section, or, if judicial review is sought, the time at which a final judgment is rendered in favor of the city, or the time a final administrative decision is rendered against any owner of record who is in default may be disposed of as an unclaimed vehicle as provided by law; provided that, if the vehicle was seized and impounded pursuant to Section 7-24-225 and proceedings have been instituted under state or federal drug asset forfeiture laws, the vehicle may not be disposed of by the city except as consistent with those proceedings."

unlawfully deprives the owner of the use of their vehicle for a substantial amount of time." (*Id.*

¶ 29.) According to the plaintiffs, the City "regularly contacts lienholders to coerce them to

repossess vehicles by threatening forfeiture (with no intention of actually pursuing forfeiture)

before the time runs under the Municipal Code for an owner to contest the impoundment." (*Id.*

¶ 30; *see also id.* ¶ 34.)

> With respect to defendant Jaeger:
>
> In drug use-related offense vehicle impoundments, when the City of Chicago
> determines that a lienholder exists, the Chicago Police Department's Asset
> Forfeiture Unit Vehicle Office, specifically, Officer Mark Jaeger (#9974),
> illegally circumvents the vehicle owner's constitutionally protected due process
> rights by directly contacting the lienholder and employing an illegal and
> intentionally coercive scheme for the purpose of effectuating immediate
> repossession of the vehicle by the lienholder for the sole purpose of effectuating
> permanent
> deprivation of the impounded vehicle from the vehicle's registered owner. The
> City of Chicago and Officer Mark Jaeger threatens [sic] the lienholder with the
> pursuit of civil asset forfeiture proceedings should the lienholder decline
> ratification of an illegal, and intentionally coercive, contract designed and
> promulgated by the City of Chicago and the Chicago Police Department's Asset
> Forfeiture Unit Vehicle Office.

(*Id.* ¶¶ 36-37.)

## B.     The Impoundment of the Plaintiffs' Vehicles

### 1.     Plaintiff Manuel Barrios

Barrios owns a 2012 Honda Accord. On August 29, 2014, Chicago Police impounded

Barrios' car pursuant to MCC 7-24-225 ("unlawful drugs in motor vehicle") and 2-14-135

("impoundment – towing and storage fee hearing") following the arrest of the driver, Jesus

Barrios (Barrios's son), on suspicion that he possessed more than 30 grams of cannabis, in

violation of 720 Ill. Comp. Stat. § 550/4(d). Ultimately, on September 15, 2014, the City non-

suited ordinance violations against Barrios' son and the DOAH hearing officer entered an order

requiring the City to return Barrios' car unless it was being "held pursuant to applicable state, federal or other law, court order or warrant authorizing the continued impoundment or if vehicle is subject to police investigation hold that has not been removed."  (Am. Compl., Dkt. 21, ¶ 45.)

On September 18, 2014, the State amended criminal charges against Barrios' son from a felony to a misdemeanor, and then declined to prosecute the amended charge.  Thus, the circuit court dismissed the case.  That same day, Barrios served a copy of the September 15th DOAH order on the City of Chicago auto pound located at 10300 South Doty Road in Chicago and demanded the release of his vehicle, but the pound refused to give him his Honda.  On September 22, 2014, Barrios again unsuccessfully tried to free his Honda by faxing a copy of the DAOH order to the Chicago Police Department's Asset Forfeiture Unit.  Barrios then made repeated unavailing demands on the Chicago Police Department.  He eventually filed a mandamus action in the Circuit Court of Cook County and was able to reclaim his car on January 15, 2015.

According to Barrios, "almost immediately" after his car was impounded, the City of Chicago Police Department's Asset Forfeiture Unit contacted his lienholder (American Honda Financial Corporation) and "demanded that the [lienholder] sign a contract to repossess the car and refuse to return it to [Barrios]."  (*Id*. ¶ 54.)  Barrios also alleges that, through his counsel, he learned that the Chicago Police Department did not notify the State's Attorney of the seizure so the State was never in a position to initiate a civil forfeiture proceeding.  Barrios asserts that the City unlawfully deprived him of the use of his car for four months.

### 2. Plaintiffs Brandon Fuller and Savannah Washington

Fuller and Washington jointly owned a 2004 Pontiac Grand Prix that was subject to a lien held by Greater Chicago Finance Company. The City impounded their car on January 13, 2014, incident to the arrest of passenger Evin Reynolds-Brown (arrested and charged as Avin J. Brown) on suspicion that Reynolds-Brown possessed more than 30 grams of cannabis. On February 13, 2014, the Circuit Court entered a finding of no probable cause and dismissed the charges against Reynolds-Brown. Based on this ruling, Fuller and Washington began to try to reclaim their car by making repeated demands on the Chicago Police Department.

Fuller and Washington allege that they learned that "almost immediately" after their car was impounded, the City of Chicago Police Department's Asset Forfeiture Unit contacted their lienholder and "demanded that the [lienholder] sign a contract to repossess the car and refuse to return it to [Fuller and Washington]." (*Id.* ¶ 62.) As with Barrios, Fuller and Washington also allege that, through their counsel, they learned that the Chicago Police Department did not notify the State's Attorney of the seizure so the State was never in a position to initiate a civil forfeiture proceeding.

Fuller and Washington do not allege that they sought either a preliminary or full hearing pursuant to the Impoundment Ordinance. According to the City, their time to request a hearing from DOAH expired, at the latest, on February 7, 2014. *See* MCC § 2-14-132(2). Fuller and Washington never recovered their car. They believe that the lienholder repossessed it.

### 3. The Plaintiffs' Amended Complaint

The plaintiffs' amended complaint is styled as a class action. On behalf of themselves and a putative class, the plaintiffs allege that the defendants violated their federal due process

rights (Count I).[5]  The plaintiffs also bring a class action due process claim against Officer Jaeger

in his individual capacity (Count II).  In addition, to the extent that the court finds Officer Jaeger

liable for compensatory damages and attorneys' fees and costs (Count III), the plaintiffs request

indemnification from the City pursuant to 745 Ill. Comp. Stat. § 10/9-102.

The defendants assert two standing arguments: (1) Barrios lacks standing because (a) he

got his car back so a City custom, policy, or practice cannot have deprived him of due process

and (b) he does not allege that the delay in regaining possession of his car was due to the City's

purported policy, and (2) all plaintiffs lack standing to seek prospective injunctive relief because

they face no actual and imminent threat that a vehicle that they own and that is subject to a lien

will be impounded by the Chicago Police Department in connection with a drug-related offense.

Alternatively, the defendants argue that the plaintiffs' due process claims in Counts I and II

should be dismissed pursuant to Rule 12(b)(6) based on numerous grounds, and Officer Jaeger

asserts that in any event, Count II should be dismissed based on qualified immunity.

## II.  DISCUSSION

### A.    Rule 12(b)(1) Motion to Dismiss Based on Standing

#### 1.    Legal Standard

A Rule 12(b)(1) motion to dismiss allows a party to challenge the existence of subject

matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The plaintiff, as the party invoking federal

jurisdiction, must establish that standing is proper.  *Remijas v. Neiman Marcus Group, LLC*, 794

---

[5]  Count I refers to defendants in the plural.  The court assumes that the plaintiffs
originally intended to direct Count I at the City and Garry McCarthy, who has been dismissed as
a defendant.  The court will interpret Count I as a procedural due process claim against the City
because there is a separate procedural due process claim (Count II) against Officer Jaeger, the
other remaining defendant.

F.3d 688, 691 (7th Cir. 2015).  When determining if subject matter jurisdiction is proper, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Id.* (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).   If a defendant factually challenges the basis for federal jurisdiction, however, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

### 2.       Standing

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, a plaintiff must prove that: (1) he suffered a concrete and particularized injury that is actual or imminent; (2) the injury is fairly traceable to the defendant's actions; and (3) it is likely that the injury will be redressed by a favorable decision. *Id.*  Here, the defendants argue that Barrios lacks standing to assert the procedural due process claims in Counts I and II because the amended complaint does not set forth a plausible link between his alleged injury and the defendants' challenged conduct.  They also argue that Barrios, Fuller, and Washington lack standing to seek injunctive relief because they have not alleged that they face a real or imminent threat that they will be subjected to the challenged conduct again.

### a.       Barrios — Causation

The Fourteenth Amendment's Due Process Clause (as opposed to the Fourth Amendment) regulates the City's ability to retain seized property.  *Bell v. City of Chicago*, — F.

Supp. 3d —, No. 14 C 7382, 2015 WL 4576765, at *3 (N.D. Ill. July 30, 2015) (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 51-52 (1993)).  Thus, due process principles govern challenges to vehicle impoundment.  *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982) ("Since a person's car is property, the state may not deprive him of it without due process of law . . . ").  To state a procedural due process claim, a plaintiff must allege (1) that he had a protected property or liberty interest under the Fourteenth Amendment and (2) that he was deprived of that interest (3) without due process of law.  *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010).

Courts distinguish between due process claims based on an alleged policy, custom, or practice and due process claims based on a random and unauthorized deprivation by a government actor.  *See Leavell v. Ill. Dept. of Natural Resources*, 600 F.3d 798, 804-05 (7th Cir. 2010).  If a plaintiff alleges that a deprivation occurred pursuant to an established governmental procedure, courts assume that the government could have predicted when the deprivation would occur and could have provided a pre-deprivation hearing.  *Id.* at 805.  In contrast, when a state actor's conduct is random and unauthorized, due process requires only that an adequate post-deprivation remedy exists.  *See*, *e.g.*, *Zinermon v. Burch*, 494 U.S. 113, 12-30 (1990); *Leavell*, 600 F.3d at 805.

### i.  Causation — The City

The court begins with the City's arguments about the causation element of standing.[6]  To

_____

[6]  The defendants' arguments about Barrios' standing appear in detail in the reply memorandum but span less than a page in the opening oversize memorandum.  Generally, arguments that are developed in a reply brief are deemed waived.  *See*, *e.g.*, *Nationwide Ins. Co. v. Central Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013).  While a more detailed presentation in the opening memorandum would have been preferable, the plaintiffs appear to

satisfy this element, "[a plaintiff] and must show that [his or her] injury is fairly traceable to action taken by the [defendant]." *P.G. by & through K.G. v. Hamos*, No. 13-cv-3020, 2014 WL 274130, at *5 (C.D. Ill. Jan. 24, 2014) (citing *Bennett v. Spear*, 520 U.S. 154, 168 (1997)).

First, the City briefly argues in the motion to dismiss (but not the supporting memorandum) that Barrios lacks standing to proceed with a procedural due process claim because he eventually got his car back so the City's alleged policy could not have harmed him. This is incorrect; in the seminal Seventh Circuit case about due process claims based on the seizure of vehicles, the court specifically held that "the deprivation [of a vehicle] need not be permanent to be actionable." *Sutton*, 672 F.2d at 645.

Second, and relatedly, the City argues that even if its alleged policy, custom, and practice existed or Officer Jaeger coerced lienholders to repossess other vehicles, Barrios eventually retrieved his car so he cannot have been a victim of the City's alleged efforts to cause Barrios' lienholder to repossess his car. The City has not pointed to any authority holding that an allegedly unconstitutional scheme that results in the prolonged wrongful impoundment of a car does not give rise to an actionable injury if the car's owner eventually manages to thwart the scheme by obtaining redress in the state courts. Moreover, the City's position that all's well that ends well because Barrios eventually got his car back is, as discussed above, incorrect since even a temporary deprivation of the right to access a vehicle can violate the Due Process Clause. *See id.*

have understood the gist of the defendants' arguments. The court will consider the defendants' standing arguments about Barrios, but cautions them to avoid this problem moving forward.

Third, the City contends that Barrios lacks standing because he challenges the City's purported policy of coercing lienholders to repossess impounded vehicles but does not allege any facts linking this alleged practice to the four-month delay between submitting his paperwork in September 2014 and getting his car back in January 2015. Ultimately, to prevail on his § 1983 due process claim against the City, Barrios "must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

Barrios contends that he has sufficiently alleged that the City's attempt to get the lienholder to repossess his car was the driving force behind the delay in getting his car back. *See Pyles v. Fahim*, 771 F.3d 403, 409-10 (7th Cir. 2014) (to state a § 1983 claim under *Monell*, a plaintiff must allege that an official policy or custom was the direct cause of, or a moving force behind, his constitutional injury). The court agrees. It is true that allegations about isolated incidents are not enough to state a claim against a governmental entity. *See*, *e.g, Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). But Barrios has alleged that on multiple occasions – not just a single time – he tried to get his car back by providing what should have been definitive documentation establishing his right to drive his Honda out of the pound, scot-free. He further alleges that his attorney investigated and discovered that the City's Asset Forfeiture Unit contacted his lienholder to try to convince it to repossess his car and that this effort was consistent with the City's normal practice of encouraging repossession of cars that had been impounded for drug offenses, even when the owners were vindicated. Barrios asserts that

the City pound refused to turn over his Honda to further the City's efforts to convince Barrios' lienholder to do as the City wished.

These allegations plausibly suggest that the City acted pursuant to a policy of trying to part people in Barrios' situation from their cars, that the City attempted to attain this goal by following its practice of trying to convince Barrios' lienholder to repossess his car, that City pound staff repeatedly refused to turn over Barrios' car because that would thwart the repossession plan, and that Barrios was finally able to put the brakes on this practice by abandoning direct dealings with the City and filing a state court mandamus action. This is enough to survive the City's motion to dismiss. *See Johnson v. City of Evanston, Ill.*, 250 F.3d 560, 563-64 (7th Cir. 2001) (reversing dismissal of a § 1983 claim against the City of Evanston based on Evanston's alleged policy that caused its officer to order an auto body shop to retain the plaintiff's car while the shop and the plaintiff mediated a dispute about repairs).

It is true that the City has attempted to cast blame on the staff at the auto pound who, according to the City, randomly deprived Barrios of his right to recover his car. (Defs.' Reply, Dkt. 40, at 11.) But according to Barrios, the pound held onto his car due to the City's practice of making heavy-handed efforts to encourage lienholders to repossess cars in City custody. Discovery may belie Barrios' position. For now, however, Barrios has sufficiently alleged the causation element of standing against the City.

### ii.     Causation — Officer Jaeger

Officer Jaeger asserts (improperly in reply) that Barrios failed to allege the causation element of standing because the amended complaint does not specifically state that Officer Jaeger was involved in Barrios' repeated unsuccessful attempts to free his car from the City

-14-

pound.  Officer Jaeger appears to be contending that even if he violated the rights of other car owners (which he, of course, disputes), Barrios has not alleged that he had an personal involvement with Barrios' four-month Honda odyssey.

This position is at odds with the allegations in the amended complaint.  A police officer "will be held liable if he 'affirmatively aided in a repossession [of a car] such that he can be said to have caused the constitutional deprivation." *Jackson v. City of Milwaukee*, No. 12-CV-00490, 2013 WL 3154073, at *2 (E.D. Wis. June 20, 2013) (quoting *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609-10 (3d Cir. 2011)).  Barrios asserts that Officer Jaeger was the point-person in the Chicago Police Department's Asset Forfeiture Unit Vehicle Office tasked with directly contacting lienholders "for the purpose of effectuating immediate repossession of the vehicle by the lienholder for the sole purpose of effectuating permanent deprivation of the impounded vehicle from the vehicle's registered owner."  (Am. Compl., Dkt. 21, ¶ 36.) According to Barrios, the City, through Officer Jaeger, advises lienholders that the City will pursue civil forfeiture proceedings unless the lienholder agree to repossess the cars that are the subject of Officer Jaeger's calls.  (*Id.* ¶ 37.)

Since Officer Jaeger allegedly is involved in *all* attempts to convince lienholders to repossess cars similarly situated to Barrios' Honda, it is plausible to infer that he called American Honda Financial Corporation (Barrios' lienholder) to demand that American Honda Financial Corporation repossess Barrios' car.   Officer Jaeger's contention that Barrios failed to allege personal involvement is, therefore, a non-starter.  In sum, the defendants' motion to dismiss Barrios's claims in Counts I and II for lack of standing based on the causation element is denied.

### b.    All Plaintiffs — Injunctive Relief

As noted above, to establish standing, a plaintiff must, among other things, allege that he suffered a concrete and particularized injury that is actual or imminent. *Lujan*, 504 U.S. at 560-61; *see also Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 641-42 (7th Cir. 2014) (to establish standing, a plaintiff must show that "(1) it has suffered an actual or imminent concrete and particularized 'injury in fact'; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision").   In other words, he must be "realistically threatened by a repetition of his experience." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

According to the City, all of the plaintiffs have failed to allege that there is a realistic threat that (1) in connection with a purported drug use offense, the Chicago police will again impound a vehicle that they own that is subject to a lien and (2) the City will coerce the lienholder to take possession of the impounded vehicle.  The City also asserts that the plaintiffs can allege facts sufficient to show standing only by alleging that they intend to allow their vehicles to be used for illegal activity in the future, and that as they have failed to do so, their request for injunctive relief must be dismissed.

In support, the City relies on the Supreme Court's decision in *City of Los Angeles v. Lyons*.  In that case, the plaintiff sought injunctive relief based on his claim that the defendant police officers had subjected him to an illegal choke-hold during a traffic stop that was based on the plaintiff's unlawful conduct.  The Supreme Court held that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief" if it is "unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (citation

omitted).  It thus concluded that, based on the assumption that the plaintiff would not engage in future misconduct, the past use of force did not establish an imminent threat of future harm.

This case is distinguishable from *Lyons* because no allegations about intent to engage in future illegal activity are necessary.  The plaintiffs allege that their cars were impounded based on a suspicion of illegal activity.  *See Smith v. City of Chicago*, No. 15 C 3467, 2015 WL 6859299, at *5 (N.D. Ill. Nov. 9, 2015) (distinguishing *Lyons* based on the plaintiffs' allegation that they engaged in innocent, lawful conduct prior to alleged suspicionless stops and frisks).  Moreover, the plaintiffs' position is that they were ultimately vindicated by the criminal justice system (*i.e.*, the person whose conduct led to the seizure and impoundment of their vehicles was not convicted) but they nevertheless could not recover their cars in a timely fashion (Barrios) or at all (Fuller and Washington).

In addition, Fuller represents (through an affidavit of counsel attached to the plaintiffs' response to the motion to dismiss, Dkt. 32 at PageID #195-96) that after this case was filed, he was the victim of the City's alleged policy in connection with a second vehicle.  Specifically, Fuller asserts that in addition to the impoundment of the Pontiac Grand Prix he owned with Washington, the City impounded his 2013 Dodge Charger.  According to Fuller, he requested a DOAH hearing and entered into a settlement with the City regarding fees arising from the impoundment.  However, he could not get his Dodge Charger back.  As part of his efforts to secure the return of his car, the lienholder advised Fuller's attorney that the Chicago Police Department had notified it of the impoundment and "demanded that the [lienholder] enter into a contract where the City would forgo foreclosure proceedings in exchange for [the lienholder's] promise to strip Fuller of his right to 'reinstatement' under the terms of the lien."  (*Id*. at PageID

#196.)  Based on that agreement with the City, the lienholder  refused to return Fuller's car based on its contention that Fuller's redemption rights had been extinguished.

The defendants raise numerous procedural challenges to the affidavit, including a hearsay objection.  A plaintiff, however, may allege facts in a brief in opposition to a motion to dismiss that are consistent with, and expand on, the factual allegations in the complaint.  *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015); *see also Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 563 (2007) ("once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint").  In essence, in response to the motion to dismiss, Fuller has alleged that he was recently subjected to the same alleged ongoing practice that is the subject of this case.  Allegations of repeated experiences of alleged police misconduct are "significant" as "the possibility of recurring injury ceases to be speculative when actual repeated incidents are documented."  *Smith v. City of Chicago*, No. 15 C 3467, 2015 WL 6859299, at *5 (N.D. Ill. Nov. 9, 2015) (quoting *Thomas v. County of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992)).  Fuller's allegations about the impoundment of his second car are sufficient; the court will not require the plaintiffs to present admissible evidence at the motion to dismiss stage in response to the defendants' challenge to Fuller's allegations supporting standing.  *See Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).  The motion to dismiss Fuller's request for injunctive relief is denied.

Barrios, in contrast, has alleged a single instance of past misconduct.[7]  He ascribes the

---

[7]  Barrios argues generally that Fuller's second impoundment and subsequent inability to reclaim his car supports Barrios' claim for injunctive relief.  Barrios, however, does not explain how the City's impoundment of Fuller's car and its alleged actions regarding that car's lienholder means that it is more likely that Barrios will be subjected to the City's alleged policy again.  Any claim that Fuller's situation informs what the future may hold for Barrios is

delay in freeing his car to (1) the City's alleged policy of thwarting car owners' legitimate efforts to recover their vehicles by convincing the lienholders to repossess those vehicles or face forfeiture proceedings and (2) Officer Jaeger, the person in the Chicago Police Department's Asset Forfeiture Unit Vehicle Office allegedly tasked with effectuating that policy. But he will not experience the effects of the purported policy again unless his car is seized and impounded for a second time, he obtains documentation memorializing his right to obtain possession of his vehicle, and then experiences difficulty getting his car back due to the City's alleged custom, policy, and practice. The defendants thus argue that any claim of future harm is impermissibly speculative.

As discussed above, an assertion that future harm may occur based on an instance of past harm is generally insufficient to support a claim for injunctive relief. *See Lyons*, 461 U.S. at 102*; see also Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010) (collecting cases). However, as noted by the plaintiffs, in *Hvorcik v. Sheahan*, a court in this district concluded that allegations of an ongoing policy can be enough to support a request for injunctive relief. 870 F. Supp. 864, 869 (N.D. Ill. 1994); *see also Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1067 (7th Cir. 1976) ("Because plaintiffs have shown a specific pattern of conduct, akin to an explicit policy, they have demonstrated a reasonable likelihood of future harm, justifying their request for injunctive relief."). In *Hvorcik*, the plaintiffs challenged the Cook County Sheriff's failure to adopt policies that would minimize the presence of invalid warrants in its computerized record system. The court denied the Sheriff's motion to dismiss the request for injunctive relief, explaining that standing was proper because "further criminal activity (or even asserted criminal

speculative.

-19-

activity) . . . is not at all necessary for the peril posed by the Sheriff's unconstitutional conduct to be converted into reality" since the plaintiffs were subject to further arrests based on the policy about removing invalid warrants even if the plaintiffs refrained from illegal conduct. *Id*. at 867.

The defendants attempt to distinguish *Hvorcik* by stressing that the plaintiffs in the instant case have conceded that only vehicle owners who allow their cars to be used in connection with illegal activity are subject to the City's alleged policy. The court, however, does not read the plaintiffs' filings that narrowly. Barrios' car was impounded based on probable cause resting on his son's alleged possession of cannabis. Nothing in the amended complaint suggests that Barrios gave his son permission to use his car while possessing cannabis. Barrios, therefore, could be subject to the City's alleged policy again if he allows another person – such as a family member – to borrow his car and, unbeknownst to Barrios, the police then suspect that an individual in the borrowed car has engaged in criminal activity. Thus, the defendants' emphasis on illegal activity is not persuasive. As they have not provided an alternative reason to reject Barrios' standing to request injunctive relief, their motion to dismiss that claim is denied.

This leaves Washington's standing to request injunctive relief. Washington and Fuller jointly own a 2004 Pontiac Grand Prix. The current location of the car is unclear but Fuller and Washington specifically allege that they never recovered their car after it was impounded. Washington does not allege that she owns another non-impounded car. Without an allegation that she owns a car, Washington cannot plausibly again fall victim to the City's alleged policy. Thus, her request for injunctive relief is dismissed with leave to replead.

**B.      Rule 12(b)(6) Motion to Dismiss**

**1.      Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

**B.      Due Process Claims (Counts I and II) — Arguments Applicable to All
         Plaintiffs**

The defendants argue at length that the plaintiffs' due process claims are based on the contention that the City violated state and municipal law regarding the transfer of impounded vehicles to lienholders. This argument is understandable as the amended complaint alleges that "[t]he Defendants (apparently, the City) violated the Due Process rights of Plaintiffs and the Class by intentionally depriving them of their vehicles in violation of the procedures detailed in the Chicago Municipal Code and the Illinois Drug Asset Forfeiture Procedure Act."[8] (Am.

---

[8] In each of the amended complaint's three counts, the plaintiffs start their allegations at paragraph 1. This practice makes the amended complaint difficult to cite as each count largely contains the same paragraph numbers. Any further amended complaints should use consecutive numbering.

Compl., Dkt. 21, Count I ¶ 77.)  The plaintiffs also allege that "Defendant Mark Jaeger intentionally and unlawfully deprived Plaintiffs and the Class of their vehicles in violation of the procedures detailed in the Chicago Municipal Code and the Illinois Drug Asset Forfeiture Procedure Act."  (*Id.*, Count II ¶ 79.)

In their response to the motion to dismiss, the plaintiffs disavow any claim that the City has a policy of misapplying or failing to follow the Impoundment Ordinance or the Illinois Drug Asset Forfeiture Procedure Act and that Officer Jaeger carries out that policy.  Instead, they describe the challenged practice as "transferring cars impounded for drug use-related offenses to the lienholders of record without authority, and without providing notice of its post-impoundment transfer activities to the vehicle owner of record."  (Pls.' Resp., Dkt. 32, at 1-2.) In contrast, the vast majority of the allegations in the amended complaint, as well as portions of the plaintiffs' response to the motion to dismiss, define the challenged practice as "depriving persons whose cars are impounded for a state law drug use-related offense by contacting lienholders and threatening forfeiture" in violation of the plaintiffs' due process rights.  (Am. Compl., Dkt. 21, Count I ¶ 77; see also ¶¶ 1-3, 29-30, 34-38, 65-67.)  According to the plaintiffs, the City coerces lienholders into signing a contract requiring the lienholder to initiate repossession proceedings and to refrain from returning the car to the owner of record.  (*Id.* ¶ 38.) Once the contract is signed, the City transfers possession of the car to the lienholder.

The court will set the plaintiffs' inconsistent allegations aside and accept their statements about what arguments they do not wish to raise.  The thrust of the plaintiffs' due process claim appears to be a challenge to the City's alleged policy of contacting lienholders and advising them that if they do not agree to repossess vehicles held by the City, the City will initiate civil

forfeiture proceedings (regardless of whether the threat to initiate those proceedings is legally proper). The plaintiffs' theory is that the City, for whatever reason, is trying to circumvent the available state and municipal process by coercing lienholders into repossessing vehicles that were impounded in connection with certain drug offenses.[9] The plaintiffs contend that "[n]o notice of the illegal contact is given, and no opportunity to contest." (Pls.' Resp., Dkt. 32, at 6.) Elsewhere, they say that the City's demand that the lienholder "repossess the car and promise to refuse to return it to the Plaintiffs . . . . is not provided for in the impoundment ordinance, and is a due process violation." (*Id*. at 10.)

The court will proceed, for present purposes, based on this understanding of the plaintiffs' claims (*i.e.*, that the plaintiffs are challenging the alleged policy of secret pressure on the lienholders to repossess). Given this interpretation, many arguments in the defendants' motion to dismiss are inapposite, since they are premised on the belief that the plaintiffs' due process claims rest on the City's alleged violation of state and municipal law governing the transfer of impounded vehicles to lienholders. However, neither the defendants nor the court should have to guess at the contours of the plaintiffs' claims. Moreover, the allegations in a complaint and arguments in response to a motion to dismiss should be internally consistent as well as consistent with each other.

The plaintiffs are, therefore, ordered to file a second amended complaint that clearly articulates the basis of their claims and outlines the specific process that they believe they should have received. In addition, while the plaintiffs are not required to engage in detailed fact

---

[9] The "coercing" part of the theory is important, as the plaintiffs do not appear to be challenging the City's practice of notifying lienholders of the impoundment, as a City ordinance requires. *See* MCC § 2-14-132(2).

pleading, their response to the motion to dismiss repeatedly refers to a written document that they say memorializes the City's alleged coercion of lienholders in violation of the plaintiffs' procedural due process rights. To avoid further confusion, it may be helpful if the second amended complaint summarizes or attaches that document.

Despite the expected filing of a second amended complaint, to conserve the resources of the court and the parties, the court turns to the defendants' remaining arguments about the current iteration of the complaint.

### C. Barrios' Due Process Claims (Counts I and II)

The defendants argue that Barrios has failed to allege that the City's alleged policy deprived him of a constitutional property right because "Barrios fails to allege any facts that plausibly suggest that he was deprived of property as a result of [the Chicago Police Department's] purported attempts to coerce the lienholder to take possession of [Barrios' car]." (Defs.' Memo., Dkt. 31, at 11.) As discussed above, Barrios has alleged that the City's efforts to coerce his lienholder to repossess his car prevented him from getting his car back promptly once he had paperwork showing that he was entitled to reunite with his car. Barrios alleges that he was eventually able to thwart the City's efforts to withhold his car by filing a state court mandamus action. A temporary denial of the right to access a car is sufficient to state a due process claim. *Sutton*, 672 F.2d at 645. The City's motion to dismiss Barrios' due process claims due to the failure to allege a constitutional deprivation is, therefore, denied.

### D. Fuller and Washington's Due Process Claims (Counts I and II)

The defendants contend that Fuller and Washington's due process claims are not actionable because (1) Fuller and Washington do not allege that their lienholder ever took

possession of their jointly owned Pontiac Grand Prix[10] and (2) even assuming that the lienholder wrongfully repossessed their car, Fuller and Washington had available remedies under state law – including a cause of action for wrongful repossession – but failed to pursue them. These arguments have no traction.

In *Jackson v. City of Chicago*, the lienholder advised the owner that she had materially breached her loan agreement contract by allowing others to engage in illegal activity in her car. 975 N.E.2d 153, 170-71 (Ill. App. Ct. 2012). Based on the alleged breach, the lienholder invoked an acceleration clause in the contract, terminated the contract due to failure to pay, and repossessed the car. The Illinois Appellate Court held that the car's owner did not have a procedural due process right to a hearing before the City released her vehicle to the lienholder. The rationale for this conclusion was that in these circumstances, legal title to the car passes to the lienholder when the lienholder exercises its right to repossession. *Id*. As of that moment, the individual claiming an interest in the car no longer possesses a property interest in it. *Id*. The lack of a property interest dooms a procedural due process claim based on the City's subsequent transfer of the car to the lienholder. *Id*.

The City argues that under *Jackson*, even assuming that the lienholder eventually repossessed Fuller and Washington's car, there is no right to due process because the exercise of the right to repossession stripped Fuller and Washington's interest in the car, so they had no interest when the City turned the car over to the lienholder. But that is not the plaintiffs'

---

[10] The allegations in the amended complaint are not always a model of clarity, but the court was left with the impression (confirmed in the response to the motion to dismiss) that the lienholder repossessed Fuller and Washington's Pontiac Grand Prix. Thus, the court will not discuss this argument further.

argument.  Fuller and Washington challenge the City's efforts to coerce their lienholder to repossess the Grand Prix, at a time when they still had an interest in their car.

This case is thus closer to *Niemeyer v. Williams*, 910 F. Supp. 2d 1116, 1127 (C.D. Ill. 2012).  In *Niemeyer*, the plaintiffs brought a procedural due process claim based on a similar alleged policy carried out by the City of Peoria relating to vehicles impounded based on an ordinance prohibiting the use of a vehicle to possess or distribute a controlled substance.  As in this case, the plaintiffs alleged that the City actively encouraged lienholders to repossess cars without telling the owner of record that it was doing so.  *Id*. at 1127.  The court agreed with the plaintiffs that even when a lienholder is ultimately entitled to repossess a vehicle, "there are procedural requirements when a state actor aids in repossession" because "[w]here the government aids in a private repossession, creating state action, the requirements of procedural due process are triggered."  *Id*. (citing *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004) ("the overarching lesson of the case law is that officers . . . may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance.")).

As in *Niemeyer*, the plaintiffs in this case contend that the defendants' secret alleged pressure on their lienholder violated their right to procedural due process.  In other words, they challenge the defendants' alleged efforts to coerce the lienholder, unbeknownst to them, to repossess their impounded car.  They do not challenge the fact that the City notified the lienholder that the seizure had occurred, as the City is entitled to do.  In contrast, in *Jackson*, the plaintiffs challenged the City's actions in handing an impounded car over to the lienholder after the lienholder had obtained the legal right to repossess the car.

These are two completely different arguments.  *Niemeyer* holds that wrongful state action

related to repossession can be actionable under § 1983. *Niemeyer*, 910 F. Supp. 2d at 1127-28; *see also Johnson v. City of Evanston, Ill.*, 250 F.3d 560, 562 (7th Cir. 2001) ("[t]he Constitution's requirements are as applicable to the police when they choose sides in a dispute among citizens as when they seize evidence for use in criminal prosecutions"). As the *Niemeyer* court explained, "it appears some process was due" because if the plaintiffs had "been given the opportunity to contest [the City's] actions, they . . . . could have challenged the right of the lienholders to repossess the vehicles in the first place: Plaintiffs argue that their respective loan agreements were subject to a good faith application, such that de minimis violations . . . would not provide a substantial enough breach to warrant acceleration of the loan and repossession." *Niemeyer*, 910 F. Supp. 2d at 1127-28. However, because the City attempted to influence the lienholder without notice to the car's owner, the owner stated a viable procedural due process claim due to the lack of notice and an opportunity to be heard. *Id.*

This rationale applies equally to Fuller and Washington. The motion to dismiss Fuller and Washington's procedural due process claim is denied.

### E.     The *Monell* Claim Against the City (Count I)

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A municipality is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Municipal liability can rest on: (1) an express policy that caused the constitutional deprivation;

(2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy; or (3) that the constitutional injury was caused by a person with final policymaking authority. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

The City challenges the plaintiffs' due process claim pursuant to *Monell*, arguing that the plaintiffs have not alleged that the City's alleged policy was the moving force behind the purported due process violation since they do not allege that the policy was widespread. This argument conflates two distinct principles.

Liability under *Monell* flows from a custom, policy, or practice that is "the moving force of the constitutional violation" *Monell*, 436 U.S. at 694-95. The Seventh Circuit "requires that the complained-of policy be the moving force behind the constitutional deprivation, as opposed to a moving force." *Ebrahime v. Dart*, No. 09 C 7825, 2010 WL 4932655, at *4 (N.D. Ill. Nov. 30, 2010) (collecting cases). The defendants do not argue that the policy was not "the" moving force behind the alleged due process violation, perhaps because the plaintiffs alleged that Officer Jaeger, pursuant to City practice, attempted to coerce the lienholders into repossessing the plaintiffs' cars. Instead, they argue that the practice could not have been the moving force behind the alleged deprivation because the plaintiffs' impoundment woes were isolated incidents.

To survive a motion to dismiss a *Monell* claim, a plaintiff must "plead facts that show 'that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work.'" *Liska v. Dart*, No. 13 C 1991, 2014 WL

3704635 at *10 (N.D. Ill. July 23, 2014).  There is no bright-line rule for determining when conduct rises to the level of a policy, custom, or practice.  *See Wilson v. Cook Cnty.,* 742 F.3d 775, 780 (7th Cir. 2014).  However, "[i]solated incidents of allegedly unconstitutional conduct are insufficient to establish a widespread practice."  *Nettles-Bey v. Burke,* No. 11 C 8022, 2015 WL 4638068, at *12 (N.D. Ill. Aug. 4, 2015).

In Count I, the plaintiffs allege that the City is liable under *Monell* based on the purported policy of coercion discussed above.  The three plaintiffs, between them, have allegedly been subjected to that policy in connection with the impoundment of three cars (Barrios' Honda, Fuller and Washington's Pontiac Grand Prix, and Fuller's Dodge Charger).  Three incidents are not enough to state a *Monell* claim.  *See Wilson,* 742 F.3d at 780 ("it is clear that a single incident—or even three incidents—do not suffice"); *see also Palka v. City of Chicago,* 662 F.3d 428, 435 (7th Cir. 2011) ("two alleged instances of discrimination do not constitute a widespread pattern or practice sufficient to subject the City to liability").

However, the plaintiffs allege that they "believe[] that the potential number of [individuals affected by the alleged policy] exceeds 1,000 per year."  (Am. Comp., Dkt. 21, ¶ 68.)  The defendants do not address this allegation in their reply.  The court will not research and raise arguments for them.  *See Allison v. Garrard*, No. 09-CV-703-JPG-DGW, 2011 WL 1770510, at *3 (S.D. Ill. May 9, 2011) ("The Court is not in the business of crafting arguments for counsel and will not do so here.").  The motion to dismiss based on *Monell* is denied.

### F.    Officer Jaeger's Claim that He is Entitled to Qualified Immunity (Count II)

Officer Jaeger argues, in the alternative, that even assuming that the plaintiffs stated colorable procedural due process claims, the claims against him should be dismissed based on

qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, —, 131 S.Ct. 2074, 2085 (2011). When evaluating whether qualified immunity applies, the court must ask "two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Alvarado*, 267 F.3d at 652; *see also Lane*, 134 S.Ct. at 3281.

First, the plaintiffs focus on the "discretionary functions" aspect of qualified immunity, arguing that Officer Jaeger's alleged actions flowed from adherence to a City custom, policy, or practice, as opposed to an exercise of independent discretion. The plaintiffs' emphasis on the word "discretion" is misplaced. The defense of qualified immunity was meant to encourage the "vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506 (1978). The plaintiffs' allegations make it clear that they believe that Officer Jaeger's allegedly wrongful actions were within the scope of his employment. City employees are not automatons. Officer Jaeger's challenged actions, as alleged, are discretionary functions. *See Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotations omitted).

Second, the plaintiffs argue that Officer Jaeger is not entitled to qualified immunity because he violated clearly established law – *Niemeyer* (a 2012 Central District of Illinois district court case) – addressing the procedural due process owed to the plaintiffs.  In determining if a constitutional right is clearly established, "the right's contours [must be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  To satisfy this standard, "'existing precedent must have placed the . . . constitutional question' confronted by the official 'beyond debate.'"  *Id*. (quoting *al-Kidd*, 131 S.Ct. at 2080).

Generally, precedent from the Supreme Court, the applicable circuit court, or the highest court in the state is necessary to clearly establish a constitutional right.  *See Lane*, 134 S.Ct. at 3281-83 (considering controlling Supreme Court cases and "the landscape of Eleventh Circuit precedent" and declining to consider cases from other circuits that conflicted with Eleventh Circuit precedent); *Plumhoff*, 134 S. Ct. at 2023 (considering Supreme Court precedent existing at the time of the challenged conduct and whether "controlling authority" or a "robust consensus of cases of persuasive authority" had subsequently developed that would alter the analysis of the qualified immunity issue).

The Seventh Circuit also teaches that "[i]n the absence of a binding precedent we will look to all relevant decisional law to determine whether a right has been clearly established" and will consider "whether at the time the alleged actions took place there was a substantial consensus of opinion that a course of conduct infringed on a right protected by the Constitution." *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir. 1989); *see also Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989) (a right is clearly established despite the lack of controlling

precedent, if "there [is] such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time"). Under existing precedent:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Wilson v. Layne*, 119 S. Ct. 1692, 1699 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *see also McAllister v. Price*, 615 F.3d 877, 885 (7th Cir. 2010).

Viewed through this lens, Officer Jaeger is entitled to qualified immunity. The plaintiffs have identified a single case in this circuit supporting their claimed procedural due process right: *Niemeyer*, a 2012 Central District of Illinois district court decision. The *Niemeyer* court cited a 2004 Tenth Circuit case to support the proposition that a police officer who actively assists a private actor's repossession efforts can be liable under § 1983. *Niemeyer*, 910 F. Supp. 2d at 1127 (citing *Marcus*, 394 F.3d at 819). This court agreed with the analysis in *Niemeyer*. However, it does not believe that the outcome in *Niemeyer* was foreordained by prior precedent, given the *Niemeyer* court's reliance on a 2004 out-of-circuit case. This is especially true given that the court has conducted its own research on the constitutional issue presented in this case. There is neither a robust nor a substantial consensus of opinion that encouraging a lienholder to repossess a car violates the right to procedural due process when remedies exist to challenge the impoundment of the car, as well as challenge any wrongful repossession. *See Plumhoff*, 134 S. Ct. at 2023 (qualified immunity turns on whether a "robust consensus of cases of persuasive

authority" exists); *Doe*, 881 F.2d at 511 (considering if a "substantial consensus of opinion" exists).

Moreover, the plaintiffs' allegations that Officer Jaeger's actions were taken in furtherance of the challenged City policy undermine their contention that he should have recognized that his actions violated a clearly established constitutional right. Reliance on a policy does not "render the officer's conduct per se reasonable" for the purposes of qualified immunity. *Roska v. Peterson*, 328 F.3d 1230, 1252 (10th Cir. 2003). Thus, the existence of a policy cannot "make reasonable a belief that was contrary to a decided body of case law." *Wilson v. Layne*, 119 S. Ct. 1692, 1700-01 (1999). But if "the state of the law . . . [is] at best undeveloped," it can be reasonable for a law enforcement officer to rely on a policy. *Id.*; *see also Van Dunk v. Brower*, No. 11 CIV. 4564 ER, 2013 WL 5970172, at *14 (S.D.N.Y. Nov. 7, 2013) ("The fact that [a police officer] acted in accordance with his own department's policy supports a conclusion that, to the extent he committed a mistake of law, his mistake was reasonable.").

The court finds that Officer Jaeger's reliance on the City's alleged policy is, therefore, further support for the court's conclusion that he is entitled to the protection of qualified immunity. Accordingly, Officer Jaeger's motion to dismiss the claims against him based on qualified immunity is granted. Count II, which is directed at Officer Jaeger, is dismissed with prejudice.

### G. The Plaintiffs' Request for Indemnification (Count III)

Finally, the City argues that Count III, which asserts that the City must indemnify Officer Jaeger for certain damages, fails because Counts II fails to state a colorable procedural due

process claim against Officer Jaeger. The court has dismissed the claims against Officer Jaeger pursuant to the doctrine of qualified immunity. Because Officer Jaeger is no longer a party, the City cannot be responsible for damages against him. Thus, Count III is dismissed with prejudice.

## IV. CONCLUSION

For the above reasons, the defendants' motion to dismiss [27] is granted in part and denied in part. Washington's request for injunctive relief is dismissed with leave to replead consistent with this order. The plaintiffs may proceed with their remaining procedural due process claims against the City (Count I) but, as detailed above, must file a second amended complaint by February 8, 2016, that clearly articulates the basis of their claims and outlines the specific process that they believe they should have received. The City shall answer or otherwise plead by February 29, 2016. Counts II (procedural due process against Officer Jaeger) and III (indemnification for certain damages owed by Officer Jaeger) are dismissed with prejudice. The plaintiffs agree to the dismissal with prejudice of their official capacity claim against former Chicago Police Superintendent Garry McCarthy and their claim for damages based on emotional distress. This case is set for status on March 2, 2016, at 9:30 a.m.

Date:  January 14, 2016                     _____/s/_____

                                              Joan B. Gottschall

/cc                                        United States District Judge