**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Manuel Barrios, Brandon Fuller, and | ) | |
| Savannah Washington individually and as | ) | No.: 15 cv 2648 |
| representatives of all similarly situated persons, | ) | |
| | ) | The Honorable Joan B. Gottschall |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Chicago, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNCONTESTED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS,
<u>AND FOR OTHER RELIEF</u>**

## TABLE OF CONTENTS

PAGE(S)

I.      **INTRODUCTION**............................................................................................1

II.     **FACTUAL AND PROCEDURAL BACKGROUND**.............................................2

       **A. Nature of the Class Action and Procedural History**.............................2

       **B. Settlement Negotiation and Settlement**...............................................7

       **C. Terms of Settlement**...........................................................................8

       **D. The Preliminary Approval and Implementation of Notice Plan**............10

III.    **ARGUMENT**.................................................................................................13

       **A.**    **The Guidelines for the Final Approval of the Settlement**.................13

       **B.**    **The Settlement Satisfied the Criteria for Final Approval**................15

            **1.**   **The Strength of Plaintiff's Case Compared to the Terms of the Proposed Settlement**..........................................15

            **2.**   **The Complexity, Length and Expense of Continued Litigation Favors Settlement**.................................................17

            **3.**   **Opposition to the Settlement**.................................................18

            **4.**   **Plaintiffs' Counsel believes that the Settlement is Fair**............18

            **5.**   **The Stage of the Proceedings and the Amount of Discovery Completed**.................................................19

       **C.**    **Certification of the Settlement Class is Appropriate**.........................21

            **1.**   **Rule 23 Prerequisites for Settlement-Class Certification are Satisfied**.................................................21

                 **a.**   **Numerosity – Rule 23(a)(1)**.......................................21

                 **b.**   **Commonality – Rule 23(a)(2)**....................................22

                 **c.**   **Typicality– Rule 23(a)(3)**.........................................22

                 **d.**   **Adequate Representation – Rule 23(a)(4)**.....................23

**2.**      **Rule 23(b)(3)** ...................................................................24

      **a.**      **Common Questions Predominate** ........................................24

      **b.**      **A Class Action is the Superior Method for Adjudicating this Controversy** .........................................25

      **c.**      **Consideration of the Factor in 23(b)(3)(A)-(D) Support Certification** ...............................................26

      **d.**      **The Notice Plan as Implemented Provided Notice to the Vast Majority of the Class** ......................................27

  **D.**      **Award of Attorney's Fees, Costs and Service Awards** ..........................28

**IV.**      **CONCLUSION** ..........................................................................28

**Class Definition**

Named owners of 356 vehicles (estimated) that were impounded by the City of Chicago under Chicago Municipal Code § 7-24-225 for a State of Illinois drug related offense where the seizure did not result in forfeiture of the vehicle and the City of Chicago initiated contact with the lienholder of the vehicle and demanded that the lienholder take possession of the vehicle, during the period of March 28, 2013 through August 1, 2015, and as a result: (1) the vehicle owner was permanently deprived of his or her vehicle due to the lienholder taking possession of the vehicle, or (2) the vehicle owner was temporarily deprived of the use and possession of his or her vehicle ...............................................................................................7

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591,
117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .......................................................26, 27

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee*,
616 F.2d 305, 312 (7th Cir. 1980) .............................................................13, 19

*Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330 (N.D. Ill. 2009) ..........................22

*Beezley v. Fenix Parts, Inc.*, 1:17-CV-07896, 2019 WL 6463154 (N.D. Ill. Nov. 26, 2019) .......12

*Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985) .................................................................27

*Butler v. Sears, Roebuck and Co.*, 702 F.3d 359 (7th Cir. 2012) ....................................................25

*Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 287 (N.D. Ill. 2006)..............................................23

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ........................................17

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983)........................................22

*EEOC v. Hiram Walker & Sons*, 768 F.2d 884 (7th Cir. 1985)....................................................20

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)) .......................................................13

*Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641 (N.D. Ill. 2006)................25

*Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) .......................23

*In re AT & T Mobility Wireless Data Services Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010)..........................................................13, 15, 18, 20, 23, 28

*In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000) ................................19

iv

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D 369 (D.D.C. 2002)..........................19

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202
    (N.D. Ill. 2019)...................................................................................................17

*In re Prudential Ins. Co. Sales Practices Litig.*, 177 F.R.D. 216 (D.N.J. 1997) ..........................27

*In re: Sears, Roebuck & Co. Front-loading Washer Prod.*
    *Liab. Litig.*, No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ........................13

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ......................................................13, 14, 15, 20

*Kaufman v. Am. Express Travel Related Services Co., Inc.,*
    877 F.3d 276, 284-85 (7th Cir. 2017) ..................................................................14, 17, 22

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ............................................................................22

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ......................................................26

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
    834 F.2d 677 (7th Cir. 1987) ..........................................................................................19. 20

*McCabe v. Crawford & Co.*, 210 F.R.D. 631(N.D. Ill. 2002) .....................................................21

*Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802 (7th Cir. 2012).....................................24

*Muro v. Target Corp.*, No. 04 C 6267, 2005 WL 1405828 (N.D. Ill. July 15, 2005)..................21

*Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392 (N.D. Ill. 2006)................................................23

*Owner- Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc*.,
    231 F.R.D. 280, 282 (N.D. Ill. 2005)..............................................................................22

*Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002)...........................................14, 18

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992).........................................................22, 23, 24

*Saltzman v. Pella Corp.,* 257 F.R.D. 471 (N.D. Ill. 2009).....................................................22, 25

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)....................14, 15

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ............................................................20

*Walker v. Nat'l Collegiate Athletic Ass'n*, 19-2638, 2019 WL 8058082
    (7th Cir. Oct. 25, 2019)...................................................................................................14

*Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) ...................................14

*Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) .......................................................14

## **Other Authorities**

Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* (3rd ed. 2011).......................................................................24

*Newberg on Class Actions* (4th ed. 2010)......................................................................................27

T. Eisenberg and G. Miller, *The Role of Opt-Outs and Objections in Class Action Litigation:*
   *Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529 (2004)...................................28

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation:*
   *A Pocket Guide for Judges*, 3rd Ed., Federal Judicial Center (2010). .........................28

## **Exhibits**

Exhibit A:  Declaration of Jennifer Keough

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Manuel Barrios, Brandon Fuller, and | ) | |
| Savannah Washington individually and as | ) | No.: 15 cv 2648 |
| representatives of all similarly situated persons, | ) | |
| | ) | The Honorable Joan B. Gottschall |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Chicago, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNCONTESTED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS,
<u>AND FOR OTHER RELIEF</u>**

Plaintiffs and Named Class Representatives, MANUEL BARRIOS, BRANDON

FULLER, and SAVANNAH WASHINGTON, by counsel, Edward R. Moor and Paul J. Lytle,

respectfully states, in support of their uncontested Motion for final approval of the settlement as

follows:

**I.      INTRODUCTION**

The Court issued an Order providing preliminary approval to the settlement of this class

action on June 9, 2020 (Dkt. 172), and appointed the named Plaintiffs as class representatives, the

undersigned as Settlement Class Counsel, and JND Legal Administration ("JND") as the "Claims

Administrator" on July 22, 2020 (Dkt. 176).   After the City Council approved the settlement on

July 22, 2020, (*see* Dkt. 177), Settlement Class Counsel worked with JND to implement the Notice

Plan that had been outlined in Plaintiff's Motion for Preliminary Approval and approved by the

Court in the Preliminary Approval Order.  The result has been that direct notice has been given to

at least 325 Settlement Class Members, who represent 91.29% of the Settlement Class and, to date, 126

have submitted claims for the fair market value of their automobile on the date of the impoundment, a claim rate of 35.4%. (Ex. A, Declaration of Jennifer Keogh, at ¶¶ 9 and 14, attached). Plaintiffs now present this unopposed motion for final approval of the settlement of this class action.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Nature of the Class Action and Procedural History

This case, filed March 28, 2015, resulted in the cessation of a practice by which the City of Chicago Police Department would allegedly, and in some cases, impound a vehicle under City of Chicago Municipal Ordinance (hereinafter MCC) §7-24-225 for a drug-use offense and thereafter contact that vehicle's lienholder (if the vehicle was subject to a finance lien), without notice to the owner, to coerce the lienholder to repossess the vehicle. Plaintiffs claimed that this alleged practice circumvented the due process afforded to them by the existing municipal and state frameworks specified at MCC §§ 7-24-255 and 2-14-132 and 735 ILCS 150/1 *et. seq.* (Dkt. 43, Plaintiffs' Second Amended Complaint at ¶¶ 1, 7-8, 9, 11, 12, 23, 34-35, 36, 37-38, 41-42, 46-47, 50). The Defendant City of Chicago represents that it ceased the alleged practice after this case was filed, specifically on August 1, 2015, a date that Plaintiffs' counsel confirmed was accurate through an examination of impound data. (*See* Dkt. 170 at PageID #1931, and see Declaration of Paul J. Lytle in support of Motion for Preliminary Approval (Dkt. 164 at Page ID# 1541-1556 at ¶¶ 15-16 ("Lytle Dec.") and Declaration of Edward R. Moor in support of Motion for Preliminary Approval (Dkt. 164 at Page ID #1558-1564 at ¶¶ 7-8) ("Moor Dec.")).

Defendant moved to dismiss the Amended Complaint on July 17, 2015. (DKT. 27). After briefing, the motion was granted in part and denied in part (DKT. 42) and, as ordered, the Plaintiffs repleaded on February 7, 2016. (DKT. 43). The Defendant then answered the complaint on March 4, 2016 (DKT. 49), served its Rule 26(a)(1) disclosures on the same day, and the parties

then commenced written discovery in earnest. The City began a rolling production on May 6, 2016 that continued into 2019 and which ultimately resulted in the production of hundreds of thousands of documents totaling over one million pages.

Given the extensive documentation that the City possessed on each impoundment, it became clear to the parties very early in discovery that it was possible to identify with precision which of the impoundments were drug-use impoundments in which the City, relative to vehicles subject to finance liens, contacted the lienholder and may have coerced the lienholder to repossess the car under threat of forfeiture proceedings.

The parties also determined that, while the City of Chicago maintained warehouses and servers full of relevant information, the Chicago Police Department's Asset Forfeiture Unit ("AFU") maintained an aggregate spreadsheet, referred to as "the 1505," which compiled information on all impoundments and summarized information in the source documents maintained in City warehouses and on servers. The Defendant produced a version of the 1505 that contained information on all impoundments for a period of time beginning six months prior to the period of limitation, March 28, 2013, and ending after the date on which Defendant's Counsel represented that the complained of practice had ceased. (Lytle Dec., at ¶ 9; Moor Dec. at ¶ 7). The 1505, not limited to drug-use impoundments, and not limited to cars that were subject to finance liens, numbered 22,264 vehicles. The Defendant initially represented to Plaintiffs' Counsel that 809 vehicles were potentially subjected to the complained of practice and that it would fully produce any documents related to those 809 vehicles. (Lytle Dec. at ¶ 10). Plaintiffs' Counsel, reviewing the 1505, demanded that the Defendant fully produce documents related to an additional 250 vehicles. The Defendant retained outside counsel while this dispute progressed. By late 2017, the parties had conferred and determined that there was evidence in the 1505 to

3

believe that as many as 1,813 vehicles may have been subjected to the complained of practice. (Lytle Dec. at ¶ 15). Plaintiffs' Counsel then determined that sixty (60) of the 1,813 vehicles were excluded from the class because those vehicles were not impounded for a drug-use offense; those vehicles were rental cars returned to their corporate owner; the records of those vehicles were duplicative; or the owners' deprivations occurred outside the period of limitation. (Lytle Dec. at ¶ 15). The parties agreed that 1,495 vehicles remained potentially in the class. (Lytle Dec. at ¶ 16).

The Defendant fully produced documents from five (5) different municipal agencies, including emails, related to the 1,495 vehicles. The production continued through June 2019. In all, over one million pages of material were produced. Between August 2018 and June 2019, the parties separately analyzed the pool of 1,495 vehicles and used a shared spreadsheet to determine whether the production supported a specific vehicle's inclusion or exclusion in the proposed class, or that the production was insufficient to support a determination of inclusion of exclusion. (Lytle Dec. at ¶ 18). Plaintiffs' Counsel identified documents which could dispositively identify vehicles that belonged in the class (Lytle at ¶ 20) and other documents which were material to the determination of whether a vehicle belonged in the class. *Id.* at ¶ 21. Plaintiffs' Counsel and Defense counsel separately undertook an extensive review of the City's voluminous production to determine which among the 1,495 cases were clearly in the class, those which were clearly out of the class, and those which could not be either included or excluded by the available evidence. (Lytle Dec. at ¶¶ 22-24). Plaintiffs' Counsel tendered their conclusions, Defendant's Counsel tendered theirs, and a series of meetings occurred to review the differences. (Lytle Dec. at ¶¶ 25-26, 30-34). The result of this process and numerous meet-and-confer sessions over the subsequent three years, is that the parties have identified 356 vehicles that were subject to the due process

4

violation at issue in this case. (Lytle Dec. at ¶ 34; Moor Dec. at ¶ 7). Given that the parties are highly confident that they have identified all persons whose cars were subject to the challenged practice between March 28, 2013 and August 1, 2015, the parties seek certification of a class that includes the owners of those 356 vehicles.[1]

While the parties conferred and tested how to determine *who* is in the class, the parties also debated *how* to value their loss. When no agreement could be reached, Plaintiffs' Counsel moved for partial summary judgment on the issue of valuation relative to putative class members who suffered permanent deprivation. This Court issued an opinion on March 20, 2019 (DKT. 120), which held that "the proper measure of damages on the facts of this case is the fair market value of the vehicle when the due process violation occurred, regardless of any liens, plus interest as allowed at common law."

Plaintiffs' Counsel retained Randall McCathren, an expert in automobile finance. McCathren was tasked, *inter alia*, with proposing a method of valuing each putative class member's loss as of the date of the impoundment. McCathren identified Kelley Blue Book as the preeminent organization that held this information. Kelley Blue Book maintains an electronic database of retrospective vehicle valuations and is capable of providing an accurate retrospective value for a particular vehicle, during the specific week in which that vehicle was impounded in the Chicagoland area. (Declaration of McCathren in support of the Motion for Preliminary Approval, Dkt. 164 at PageID # 1566-1573 at ¶¶ 14 and 16 ("McCathren Dec."), Lytle Dec., at ¶¶ 42 and 45; Moor Dec. at ¶ 10). McCathren advised that Kelley Blue Book maintains both dealer and private party sales data. Of the various value categories maintained by Kelley Blue Book, McCathren

---

[1] Most of the cars at issue are owned by one person, but some are titled in the name of two, so there are more persons in the proposed class than VINs, 405 to be precise, but there will only be one recovery per VIN as explained below.

suggested "Fair Purchase Price." Kelley Blue Book defines "Fair Purchase Price" as the average of prices paid for Certified Preowned Vehicles of the same VIN during a particular week in a specific geographical area. The data is based on actual sales of a vehicle occurring during a particular week in the Chicagoland area. (McCathren Dec. at ¶ 17). When no sales occurred for a given model of vehicle within the week of the impoundment at issue, McCathren recommended using "Configured Retail Value," a record of the asking price for that same model vehicle, during that particular week, in the Chicagoland area. (McCathren Dec. at ¶ 18; Moor Dec. at ¶ 10). Using the foregoing methodology, Kelley Blue Book produced individual values for each of the 356 vehicles, totaling a fair market value of $4,973,946.80. (McCathren Dec. at ¶ 20; Moor Dec. at ¶ 10; Lytle Dec. at ¶ 49). The results of the Kelley Bluebook valuation were summarized in an Excel spreadsheet and shared with Defendant's Counsel. (Summary of Valuation attached to Dkt. 164 at Page ID # 1545 as Exhibit F).

As to the valuation of temporary deprivations, examination of the 356 vehicles in the class failed to clearly show that anyone other than Manual Barrios suffered a temporary deprivation. As discussed below, whether any other member of the class actually suffered a temporary instead of a permanent deprivation would be contested if the case proceeded to trial, but for purposes of settlement, because the data shows that the fair market value of Barrios' 2012 Honda far exceeds the cost of a rental car for six months and because Barrios owes a fiduciary duty to the class, McCathren was also tasked with valuing the loss suffered by Barrios' temporary deprivation. McCathren was unable to identify any reasonably reliable and publicly available repository of historical rental rates in the Chicagoland area. Instead, McCathren confirmed that the Consumer Price Index for new cars between 2013 and 2015 did not materially change, and he opined that the current rental rates in the Chicagoland area would fairly estimate historical rental rates between

6

August 24, 2014 and January 15, 2015, the period during which Barrios was deprived of his vehicle. (McCathren Dec. at ¶¶ 20-21, and Dkt. 43 at ¶¶ 52 and 62). McCathren determined that the major rental companies consider a Honda Accord to be a full-sized car, and determined that their rental rates for a full-sized car range between $64 and $95 a day, so that the average daily rental price was $78.49. *Id*. This means that Barrios' loss is $78.49 multiplied by 144 days, or $11,302.56, instead of the $20,278.00 Fair Purchase Price produced by McCathren's Kelley Blue Book analysis. (*Id.* and Moor Dec. at ¶ 12).

### B.  Settlement Negotiation and Settlement

The parties began discussing settlement in broad terms as they worked together to identify putative class members. On April 19, 2019, at the request of the parties, the Court referred this matter to the magistrate for a settlement conference. After reassignment, Magistrate Judge Fuentes supervised the written submissions of the parties and held two settlement conferences. Through his able and expert assistance, after several sessions the parties agreed to settle at a conference conducted by Judge Fuentes on September 26, 2019, and submitted the attached term sheet to him on October 9, 2019.

The parties settled the case for $4,950,000.00, which Plaintiffs' counsel believes is fair. (Moor Dec. at ¶¶ 10-14; Lytle Dec. at ¶ 50). $4,950,000 is 99.5% of $4,973,946.80. When the $20,278.00 fair market value of Barrios' Honda, as shown on Exhibit F, is subtracted from the class valuation because he was temporarily rather than permanently deprived, and the $11,302.56 rental value is added back to it, the full valuation figure for the putative class is $4,964,971.36. In securing $4,950,000 Plaintiffs' counsel secured 99.7% of that figure.

The new proposed settlement class definition, recognizing that the persons who were subjected to the challenged practice have been identified is:

7

Named owners of 356 vehicles (estimated) that were impounded by the City of Chicago under Chicago Municipal Code § 7-24-225 for a State of Illinois drug related offense where the seizure did not result in forfeiture of the vehicle and the City of Chicago initiated contact with the lienholder of the vehicle and demanded that the lienholder take possession of the vehicle, during the period of March 28, 2013 through August 1, 2015, and as a result: (1) the vehicle owner was permanently deprived of his or her vehicle due to the lienholder taking possession of the vehicle, or (2) the vehicle owner was temporarily deprived of the use and possession of his or her vehicle.

This definition replaces the proposed definition in the Second Amended Complaint. It reflects the fact that the parties were able, after extensive work, to identify 356 specific impoundments that occurred within the period two years prior to the filing of this action and August 1, 2015 when the challenged practice was halted. After negotiation, the Defendant agreed to the new definition. (Moor Dec. at ¶ 9).

### C.    Terms of Settlement

In settling the case, the parties agreed that the putative class consisted of the owners of 356 vehicles. The parties agreed that the City of Chicago terminated the challenged practice in August 2015, and Plaintiffs' examination of the 1505 database and the voluminous production showed that there were no impoundments identified that were characterized by the practices at issue in this case after August 1, 2015. (Lytle Dec. at ¶¶15-16; Moor Dec. at ¶ 7). The parties agreed that each member of the class must submit a claim form verifying their identity. (Dkt. 170, Second Amended Stipulation at § 5.2 and Stipulation Exhibit D, the Proposed Proof of Claim Form). The parties agreed that all fees, costs, administration costs and incentive payments would be deducted from the $4,950,000 settlement figure. (Dkt. 170, Second Amended Stipulation at Articles IV and XII). The parties agreed that Plaintiffs' counsel would seek a fee of 33.333% plus costs from the common fund. *Id.* at Article XII. The settlement class is an opt out class (*Id.* at §§ 2.2 and 7.1) and the parties agreed that the City could terminate, at its discretion, the settlement if more than

8

5% of the class opted out. (*Id.* at Article XV). The parties agreed the Plaintiffs' Counsel would work with an agreed upon Settlement Administrator who will provide notice to the settlement class by mail, remailing to all who do not respond, and locating new addresses for all notices returned as undeliverable. (*Id.* at § 9.1). The Settlement Administrator would collect, review and report on all claims forms returned, *Id.* at Article V, and would fund and administer a Settlement Escrow Account once the settlement funds are distributed by the City. *Id.* at § 5.7. If the available funds, after the deduction of approved incentive fees, attorney fees and costs and administrative costs, are insufficient to give each claimant the fair market value of their car, then each claimant will receive a *pro rata* share of the available funds. *Id.* at §§ 1.3, 1.26, 4.4. Any remainder will revert to the City of Chicago. *Id.* at § 4.5. The deadline for claims and objections to the proposed settlement is 119 days after the entry of the Preliminary Approval Order. The parties agreed that the City would fund the Settlement Escrow Account 126 days after the entry of the Preliminary Approval Order and subsequent City Council approval, and that payments to the claimants would be made 32 days after the entry of the Final Approval Order and Judgment becoming a final and non-appealable court order. *Id*. at §§ 5.2(b), 7.1.

The settlement agreement that the parties reached also provided that in the event that after payment of approved attorney's fees and costs, and the costs of administration, the remaining funds available are less than it would take to pay each and every class member who submitted a claim the full fair market value of their loss, then the class members will be paid a *pro rata* amount of the remaining funds. If a *pro rata* distribution is needed, then the full value of each claimant's loss will be percentagized against the available common fund and each claimant will receive that percentage of the available funds. (*Id.* at §§ 1.3 and 1.26). If, however, the total of the claimants' losses is less than the amount in escrow after the payment of approved fees and costs, and

administrative costs, then each claimant will receive the full value of their loss and the remainder, if any, will revert to the Defendant.

**D.      The Preliminary Approval and the Implementation of Notice Plan**

On June 9, 2020, after briefing and the submission of supporting evidence submitted by affidavit, this Court preliminarily approved the Settlement and the notice plan proposed by the Plaintiffs.  (Dkt. 172) ("Preliminary Approval Order").    The Settlement was contingent upon approval by the Chicago City Council, and that approval was issued on July 22, 2020.  (Dkt. 177). On the same day an order was entered to formally reflect the appointment of Edward R. Moor and Paul J. Lytle as Settlement Class Counsel, JND as "Claims Administrator," and Manuel Barrios, Savanah Washington and Brandon Fuller as class representatives (Dkt. 176), all pursuant to the Amended Motion for Preliminary Approval. (Dkt. 163 and 164).  In the Preliminary Approval Order the Court stated that "the Notice defined herein is the best notice practicable and shall constitute due and sufficient notice to all persons and entities entitled to receive such notice and fully satisfies the requirements of due process and of Rule 23(b)(3)." (Dkt. 172 at PageID # 2018, ¶¶ 13 and 14).

Prior to the approval issued by the City Council, Settlement Class Counsel provided JND with copies of the titles for 335 of the 356 impounded vehicles along with spreadsheets containing contact information for the Settlement Class Members culled from impound records for those members for which a title could not be located, so that JND had a last known mailing address for each potential class member. (Ex. A, Declaration of Jennifer Keogh, at ¶ 4).

After July 22, 2020, JND began implementing the Notice Plan.  Given that the City Council Approved the Settlement on July 22, 2020, the operative dates for the key events if the Notice Plan and Settlement Administration became:

| Action | Date | Section from Stipulation or Dkt. Entry |
|---|---|---|
| Preliminary Approval Order | June 9, 2020 | Dkt. 172 |
| City Council Approval | July 22, 2020 | Dkt. 177 |
| Mail Notice to Settlement Class Members | September 2, 2020 | Section 8.3(d) |
| Mail Proof of Claim Form to Settlement Class Members | September 2, 2020 | Section 9.1 |
| Publish Summary Notice to Settlement Class Members | September 2, 2020 | Section 9.2 |
| Seek Alternative Addresses for Notice to Settlement Class Members | September 30, 2020 | Section 8.3(e) |
| Mail Second Notice to Settlement Class Members | October 14, 2020 | Section 8.3(f) |
| Settlement Class Members must submit Proof of Claims Forms | November 18, 2020 | Section 5.2(b) |
| Settlement Class Members must submit written objections | November 18, 2020 | Section 8.3(l) |
| Settlement Class Members must submit request for exclusion | November 18, 2020 | Section 7.1 |
| Counsel to submit motion for final approval of class settlement and for attorneys' fees and costs | November 20, 2020 | Dkt. 171 |
| City to deposit $4.95 into Settlement Escrow Account | November 25, 2020 | Section 3.1 |
| Claims Administrator must notify Counsel of all requests for exclusion | December 2, 2020 | Section 7.2 |
| Claims Administrator or Settlement Class Counsel provides City with names of Settlement Class Member who have filed valid Proof of Claim forms | December 2, 2020 | Section 5.5 |
| Settlement Class Counsel and Claims Administrator shall file affidavit or declaration of mailing of Notice and publication of Summary Notice | December 4, 2020 | Section 8.3(i) |
| Settlement Class Members must submit adequate supporting documentation, if such documents are requested from the Claims Administrator | December 9, 2020 | Section 5.4 and Dkt. 178-179 |
| Settlement Class Members who want to contest determination by Claims Administrator shall file a written request for a hearing | December 16, 2020 | Section 5.4 and Dkt. 178-179 |
| Final Fairness Hearing | December 18, 2020 | Dkt. 179 |

JND first verified the mailing addresses for each class member by checking, and updating, the addresses of the class members by using the National Change of Address Database maintained by the United States Postal Service. (Ex. A, Keough, at ¶ 5).

11

On August 19, 2020 JND then mailed, by first-class regular mail, the Class Notice, the Proof of Claim Form prepopulated with the Class member's name, address, the VIN of their impounded vehicles, and the City of Chicago Police Department's inventory number, and an IRS Form W-9, all in English and Spanish, and a business reply envelope (together the "Notice Packet"). (Ex. A, Keough at ¶ 6 and exhibits attached thereto).

On September 2, 2020, JND published a half page Summary Notice of Proposed Class Action Settlement in the Chicago Sun-Times, a quarter page announcement of the Summary Notice in the Chicago Tribune, and on September 6, 2020 published a one-half page Summary Notice in Spanish in La Raza. (Ex. A, Keough at ¶ 7 and exhibits attached thereto).

On August 29, 2020, JND went live with a case-specific Settlement Website on which the Notice, Settlement Agreement, a downloadable Claim Form, and other important case documents were posted in English and Spanish. The URL was www.impoundclass.com. The website provides answers to frequently asked questions and include contact information for the Settlement Administrator. The website is still live and will contain a copy of this Petition when filed and will contain a copy of the Petition for Attorney's Fees, when filed. (Ex. A, Keough at ¶ 8).

By September 29, 2020, JND located new addresses using a skip trace service for the 102 Notice Packets returned from the August 19th mailing as undeliverable, and remailed Notice Packets to 66 Settlement Class Members based on the skip trace results. (Ex. A, Keogh, at ¶ 9).

On October 14, 2020, JND performed a second mailing of the Notice Packet to all class members that had not yet submitted a claim form, a re-mailing of 293 Notice Packets. (Ex. A, Keogh at ¶ 10). When 24 mailings from the October 14th mailing were returned as undeliverable, JND was able to locate new addresses for 16 of those 24 by using a skip trace service and remailed those 16 Notice Packets. (Ex. A, Keogh, at ¶ 10).

JND also created a toll-free phone number, 1-888-383-0341, which went live as of August 19, 2020, and which was staffed by JND and used to answer questions as they arose.

As a result of its researched mailings, JND was able to provide direct notice to 325 class members, or 91.29% of the Settlement Class, (Ex. A, Keogh, at ¶ 11), and was able to provide indirect notice through three major newspapers and a website.

The result of the mailings is that through the last date under the Preliminary Approval Order for a claim to be received, 126 claims were received and verified. Because the fair market value of each class member's automobile on the date it was impounded is also known, the value of the 126 claims totals $1,848,360.66 according to the list of value supplied by Class Counsel. (Ex. A, Keogh, at ¶ 12).

No class members opted out on or before November 18, 2020. No objections to the proposed settlement were received on or before November 18, 2020.

## III.   ARGUMENT

### A.   The Guidelines for the Final Approval of the Settlement

"Federal courts naturally favor the settlement of class action litigation." *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) (overruled on other grounds in *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). In "deciding whether to preliminarily approve a [class action] settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition

to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (citations omitted).

Rule 23(e) requires judicial approval of class actions settlements, and that approval requires the final certification of the class for settlement and a finding that the settlement is "fair, reasonable, and adequate." *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 214 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) (citations omitted). After a preliminary approval, members of the settlement class must have been given notice of the proposed settlement and the Court must conduct a fairness hearing, after which the Court must decide whether the proposed settlement is fair, reasonable, and adequate. *See Kaufman v. Am. Express Travel-Related Servs. Co.*, 877 F.3d 276, 284-85 (7th Cir. 2017); *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011); *Synfuel Technologies v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (2006); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

The Seventh Circuit has provided trial courts with direction on determining whether a settlement is fair, reasonable, and adequate:

> After notice and a public hearing, a court may approve a settlement if it determines the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)–(2). In making this determination, the Court must consider a variety of factors, including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong* [v/ Accretive Health, Inc.], 773 F.3d [859] at 863; *see* Fed. R. Civ. P. 23(e)(2) (listing factors). Such an analysis does "not focus on individual components of the settlements, but rather view[s] them in their entirety in evaluating their fairness." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (internal quotation marks omitted).

14

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019).

The Court should recognize "that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199; *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (*citing Isby*, 75 F.3d at 1199). The Court should "consider the facts in the light most favorable to the settlement." *Isby*, 75 F.3d at 1198-99. The Court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200.

**B.      The Settlement Agreement Satisfies the Criteria for Final Approval**

**1.      The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement**

A key question in assessing the strength of the Plaintiff's case balanced against the benefits offered in the settlement is the risks and costs that accompany continued litigation. *In re AT&T*, 270 F.R.D. at 347. Here, it is possible that if the litigation continues that the Plaintiffs and the proposed class would recover nothing, or, even if they win on liability, recover less than the proposed settlement affords.

First, and for example, while the Plaintiffs have alleged that the City contacted lienholders to allegedly coerce the repossession of cars impounded for drug use violations, the City was required to give notice of the impoundment by ordinance (MCC § 2-14-132) so that communication with the lienholder was not *per se* improper. The City could assert at trial that contents of the communication with the lienholder, centered around a "contract" which Plaintiffs allege was used to coerce the lienholder to repossess the car in question, was not actually coercive.

The language in the contract threatened civil forfeiture if the car was seized "again" and required the lienholder to waive the innocent owner defense if the car was seized "again." While Plaintiffs have an expert ready to testify that the language was highly unusual and did lead finance or leasing companies to repossess the vehicles in question, the City at trial could argue that nothing in the language suggests that the vehicle must have been repossessed from the impound lot during the current impoundment. Plaintiffs anticipate that should the case proceed, that the City would involve at least some of the lienholders who executed repossessions and secure "denials" that they felt coerced. The lienholders, amongst the paperwork involved in each of the questioned impoundments, signed hold harmless agreements with the City which may bias a lienholder's testimony. Naturally, this could and would be handled, if it occurred, by vigorous cross examination and with expert testimony, but the outcome of trials are often uncertain and the result is not certain. (Moor Dec. at ¶ 10).

Similarly, the City could examine individual finance contracts at trial which usually contain clauses defining engagement in criminal conduct with the vehicle as a breach giving rise to a right to terminate and repossess and argue, at least where the repossession occurred *after* the mailed notice of impoundment was received by a lienholder, that the lienholder often had a contractual basis to repossess without being coerced by the City and that this right explains the deprivations of which the Plaintiffs complain. (Moor Dec. at ¶ 10).

Second, the City could use the fact that Manual Barrios recovered his car to dispute the number of permanent deprivations, and conduct discovery among the putative class members and lienholders in an effort to shrink the number of owners subjected to the alleged due process violation. (Moor Dec. at ¶ 10).

Third, the City could contest the valuation method by claiming that a different Kelley

16

Bluebook value should have been used, or another metric entirely and trigger a potentially expansive battle of the experts on the issue of valuing "fair market value." (Moor Dec. at ¶ 10). The City could also appeal this issue following a trial, resulting in years of additional litigation.

As to costs, oral discovery, which was not commenced by the parties, on any of the issues above could be very expensive. The lienholders are located all over the country so depositions would proceed all over the country. Similarly, were the City to decide to search for weaknesses among the claims of the class members, they could attempt to depose a significant number of class members as their identity and addresses are known. Similarly, as suggested above, expert discovery could be expensive if the City challenged the Plaintiffs' interpretation of the "contract" and/or the Plaintiffs' valuation method with industry experts.

Each of these points are examples demonstrating that liability and damages in this case are not certain should the case proceed to trial, and that if it does there is a possibility of considerable expense. Therefore, the Settlement affords concrete, measurable relief to class members, and does so without need for a class trial on liability, proximate cause and damages or the inherent delay, cost, and uncertainty of such a trial. (Moor Dec. at ¶¶ 9-10). Under these circumstances, and by applying the "range of possible approval" standard, the Court should grant Plaintiffs' Uncontested Motion. *Kaufman v. Am. Express Travel Related Services Co., Inc.,* 877 F.3d 276, 284-85 (7th Cir. 2017).

## 2. The Complexity, Length and Expense of Continued Litigation Favors Settlement

The second factor calls upon the Court to evaluate the action's complexity, expense and time required to conclude the matter. In this instance, this factor favors preliminary approval. Not only are the legal issues unique, difficult and technical, the expert-driven testimony is expensive. (Moor Dec. at ¶ 10). If the case proceeds, Plaintiffs expect that the City would start

17

deposing lienholders, who are located all over the country. The City could also search the list of proposed class members for a member who did later recover their car. The fact that it has become clear that the challenged practice in the relevant period only applied to the owners of 356 automobiles could invite litigation, even in the confines of a class action, of each claimant's claim. Factors such as the temporal relation between the repossession and the lienholder's receipt of the notice required by the Municipal Code; the contents of the finance contract; the value of the vehicle for each of the 356 vehicles; and the permanency of the deprivation could present a lengthy and expensive oral fact and expert discovery process.

### 3.   Opposition to the Settlement

No objections have been asserted as to the settlement, to date, indeed none of the class members have even opted out.

### 4.   Plaintiffs' Counsel believes that the Settlement is Fair

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002).   A factor in this determination is the opinion of competent counsel.  *In re AT&T*, 270 F.R.D. at 350.

Plaintiffs' trial team is led by Edward R. Moor, a recognized and respected trial attorney. (Moor Dec. at ¶¶ 3-5).  Had the parties not reached a prospective settlement that offered meaningful relief in a relatively short time frame, Mr. Moor and Class Counsel would not have recommended settlement. (*Id.* at ¶ 6).  Had no settlement been reached, counsel was prepared to try the case.

Not only do Class Counsel agree that the Settlement is beneficial and in the best interest

of the Settlement Class, (Moor Dec. at ¶ 14; Lytle Dec. at ¶ 50), the manner in which it was achieved lends the Settlement additional credence. Specifically, United States Magistrate Judge Gabriel A. Fuentes served as a mediator. Judge Fuentes' efforts were extraordinary, diligent and fair, ensuring the parties' negotiations were at arms-length and in good faith. (Moor Dec. at ¶ 11).

A proposed settlement is presumed to be fair and reasonable when it resulted from arm's-length negotiations. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F. 2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D 369, 375-76 (D.D.C. 2002) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations") (internal quotation omitted); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal quotation omitted). The presumption applies here.

The parties negotiated over a three-year period about *who* was in the class, and sought Court intervention when they could not agree how to *value* each class member's loss. Nothing in this process speaks of anything other than arm's length negotiations.

In assessing *who* was in the class, there was no collusion. Instead, there was a labor-intensive process of examining the database of over a million documents that took years, multiple meetings to debate the parameters of making the determination and tests of various assumptions an assertions. (Lytle Dec. at ¶¶ 6-49; Moor Dec. at ¶ 7).

Even though the City indicated in 2016 that it wanted to settle the case, the City did try to minimize the recovery by claiming that the value of each impounded car should be limited to the

19

equity that the owner had in the car, which led to Plaintiffs' Counsel moving for summary judgment on the issue of the proper measure of damages. (Dkt. 109).

While Class Counsel did recover almost the entirety of the fair market value of each class members car, we did not recover interest as allowed at common law on the loss, a measure of damage found by the Court to be proper. (Dkt. 120 at PageID #637). While Plaintiffs did demand interest in negotiations, (Moor Dec. at ¶ 10), we could not obtain both fair market value as we measured it, and interest, a result which does not necessarily argue against preliminary approval as settlement is a compromise. The Court should "consider the facts in the light most favorable to the settlement." *Isby*, 75 F.3d at 1198-99. Further, the Court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200 *and see EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985).

The Preliminary Approval Order specifies that a motion for the approval of fees will be filed after this motion and before a motion for final approval is filed. Stipulation Exhibit E at § 12.3. (Dkt. 170). Thus, the Court will later decide what attorney's fees are appropriate in this matter, though the Stipulation and Agreement of Settlement reports that Plaintiff's Counsel will seek a fee of 33 and 1/3rd percent, a fee which is within the range of common in cases of this type. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005).

### 5. The Stage of the Proceedings and the Amount of Discovery Completed

The concern addressed by this prong is whether the settlement is premature or collusive. *In re AT&T*, 270 F.R.D. at 350. Here, the proposed settlement came after motions on the pleadings, and after the Court was asked to decide what the proper measure of damages were. In order to reach this stage, the parties engaged in extensive written discovery, document production and analysis. (Moor Dec. ¶¶ 7-9; Lytle Dec. at ¶¶ 9-38). It took almost five years to get to this

point. While it is true that no depositions proceeded, it cannot be said that the settlement is "premature" in the sense that the settlement is collusive or that Plaintiffs' Counsel is pushing a premature settlement at the expense of the class. *See Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987). The declarations of counsel, and the amount recovered, show that the substantial work went into recovering value for the owners of the 356 vehicles that define the class.

### C.     Certification of the Settlement Class is Appropriate

#### 1.     Rule 23 Prerequisites for Settlement-Class Certification are Satisfied

To effectuate the Settlement at issue now, the Court must certify a Settlement Class. The class are the named owners of 356 automobiles and are listed by name in Stipulation Exhibit A (Dkt. 170). The proposed class definition is:

> Named owners of 356 vehicles (estimated) that were impounded by the City of Chicago under Chicago Municipal Code § 7-24-225 for a State of Illinois drug related offense where the seizure did not result in forfeiture of the vehicle and the City of Chicago initiated contact with the lienholder of the vehicle and demanded that the lienholder take possession of the vehicle, during the period of March 28, 2013 through August 1, 2015, and as a result: (1) the vehicle owner was permanently deprived of his or her vehicle due to the lienholder taking possession of the vehicle, or (2) the vehicle owner was temporarily deprived of the use and possession of his or her vehicle.

The proposed Settlement Class satisfies Rule 23's requirements. Rule 23(a)(1)-(4) requires that any proposed class meet four (4) prerequisites: numerosity, commonality, typicality and adequacy of representation. Here, each element is satisfied.

#### a.     Numerosity—Rule 23(a)(1)

The Settlement Class Members are numerous rendering permissive joinder impracticable. "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *see also Muro v. Target Corp.*,

No. 04 C 6267, 2005 WL 1405828, at *13 (N.D. Ill. July 15, 2005) ("Although there is no 'magic number' for numerosity, 'permissive joinder is usually deemed impracticable where the class members number 40 or more.'") (citation omitted). Here, 405 people own the 356 automobiles at issue. Joinder is impractical and numerosity is clearly met.

> **b.    Commonality—Rule 23(a)(2)**

Commonality asks whether class members share at least one common question of law or fact. *Barragan v. Evanger's Dog & Cat Food Co*., 259 F.R.D. 330, 334 (N.D. Ill. 2009). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The element "does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs, so the 'low commonality hurdle is easily surmounted.'" *Kaufman v. American Express Travel Related Servs. Co*., 264 F.R.D. 438, 442 (N.D. Ill. 2009) (citation omitted).

The proposed Settlement Class satisfies the commonality requirement. Each member of the class suffered the same due process violation, so they share a question of law and fact. Further, based on expert work and analysis, the alleged damages suffered by the Class are well understood and have been addressed fairly in the  Settlement as explained above.

> **c.    Typicality—Rule 23(a)(3)**

The typicality requirement under Rule 23(a)(3) is "liberally construed" and easily satisfied. *Saltzman v. Pella Corp.,* 257 F.R.D. 471, 479 (N.D. Ill. 2009); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc*., 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete co-extensivity nor even substantial identity of claims"). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013,

1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, the Settlement Class' claims derive from the same overarching operative facts and bases for relief. This element is satisfied.

### d.   Adequate representation—Rule 23(a)(4)

Rule 23(a)(4) requires that the class representatives and class counsel "fairly and adequately protect the interests of the class." This element requires that the class representative (1) has a "sufficient interest in the outcome to ensure vigorous advocacy" and (2) does "not have interests that conflict with those of the class"; the element also requires that the class representative's lawyers be "qualified, experienced, and able to conduct the litigation." *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009), *affirmed on other grounds*, 728 F.3d 682 (7th Cir. 2013); *see also Rosario v. Livadtis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("[W]e have not previously interpreted Rule 23(a)(3) to require all class members suffer the same injury as the named class representative. Instead, we look to the defendant's conduct the plaintiff's legal theory to satisfy Rule 23(a)(3).") (citation omitted).

The adequacy requirement places only a "modest" burden on a class representative to demonstrate '[a]n understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'" *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 398 (N.D. Ill. 2006) (quoting and citing *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 287, 393-94 (N.D. Ill. 2006)).

The Named Plaintiffs' interests and claims are entirely consistent with those held by the Settlement Class they represent.  *See In re AT&T*, 270 F.R.D. at 343. As indicated by each of their declarations, attached to the Amended Memorandum of Law in Support of Plaintiffs'

Uncontested Motion for Preliminary Approval as Group Exhibit I, (Dkt. 164), the Named Plaintiffs fully understood and accepted their charge as class representatives to stay informed about the progress of the case and to confer with Class Counsel regarding developments, including court filings and discovery and, of course, the Settlement and its terms. Named Plaintiffs also fully understood and accepted their charge as class representatives of bringing suit on behalf of other people with similar concerns regarding impoundments and of their duty to act to protect the interests of other class members. *Id.* Further, since neither conflicting nor antagonistic claims exist among class members, there are no conflicts of interest, let alone disqualifying ones. *Rosario*, 963 F.2d at 1018.

Finally, Class Counsel are reputable and experienced litigators, having handled several complex class actions and other complex litigation. The motion practice in this case has been complex, and discovery has been very extensive and complex. Class Counsel have held their ground and prosecuted the claims with diligence and vigor. Plaintiffs and their attorneys have demonstrated they are fully capable of litigating this case and that the interests of the Settlement Class have been and will be fairly and adequately protected. (Moor Dec.; Lytle Dec.).

### 2.    Rule 23(b)(3)

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements.

### a.    Common Questions Predominate

The first part of Rule 23(b)(3) is satisfied when "common questions represent a significant

24

aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3rd ed. 2011)). "'Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality tends strongly to satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts.'" *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)).

Here, common questions that would be decided on a class-wide basis include whether each owner was not informed that the City approached their lienholder to coerce it to repossess the owner's car without notice and whether this conduct was a due process violation. These questions arose from a standard policy that allegedly existed in the City's police department for several years and was allegedly applied to certain drug-use impoundments where the owner of the vehicle was financing the purchase. The fact that each proposed class members' automobile has a different value, and may have been impounded on different dates, does not defeat the predominance of common questions given the ease of calculating damages using Kelley Blue Book's database. (Moor Dec. at ¶ 10; Lytle Dec. at ¶¶ 41-49).

> ### b.    A Class Action is the Superior Method for Adjudicating this Controversy

The second Rule 23(b) element—superiority of class adjudication—is easily established here. "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Butler v. Sears, Roebuck and Co.*, 702 F.3d 359, 362 (7th Cir. 2012). Rule-makers designed

the class action device for a case like this: a large number of claims many of which would be uneconomical to pursue on an individual basis. As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In this case, the potential number of Settlement Class Members is numerous, and many of the individual claims are too small for each individual Settlement Class Member to litigate in a separate action. The class action device is a viable vehicle by which persons injured by Defendants' allegedly wrongful conduct may obtain a remedy. A class action is the appropriate and superior method for adjudication of these claims, and as such, Rule 23(b)(3) is satisfied.

While some of the putative class members' vehicles were worth $60,000, others were only worth $1,500. It is not clear, given the complexity of the legal issues and valuation issues whether those members with $60,000 at issue could interest counsel in taking their case on a contingency basis. Certainly, members whose cars were worth less could not.

Lastly, given the common questions on liability and the Plaintiffs' method of valuing a vehicle's fair market value on the day of an impoundment, litigation of the class claim would be manageable.

### c. Consideration of the Factors in 23(b)(3)(A)-(D) Support Certification

Under 23(b)(3)(A), there is no reason to believe that individual class members have a substantial interest in prosecuting their own actions. Barrios is the only class member known to have filed any litigation as to the challenged practice, a *mandamus* action, and Plaintiffs' Counsel

can represent the class adequately as argued above. As to 23(b)(3)(B), there is no known existing litigation by or against class members other than this action: the lienholders obtained the car and had no reason to file, and Plaintiffs' counsel is not aware of any litigation by a putative class member for the same or similar relief, apart from Barrios. (Moor Dec. at ¶ 16). As to 23(b)(3)(C), the Northern District is the best forum as the deprivations all occurred in the District. As to 23(b)(3)(D) when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997). However, there would be none as argued above.

> **d.** **The Notice Plan as Implemented Provided Notice to the Vast Majority of the Class**

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). Courts have consistently recognized that Rule 23(e) and due process do not require that every class member receive actual notice, as long as the selected method will likely apprise interested parties. *Newberg on Class Actions* § 11.53 (4th ed. 2010); *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985) (notice must be reasonably calculated to reach most interested parties); *In re Prudential Ins. Co. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) (due process does not require perfection).

The Notice Plan was consistent with Rule 23 and Due Process. It included multiple direct mailings and the issuance of indirect notice in three major news publications, including a Spanish language publication. The Court previously approved this plan as sufficient and found that "the Notice defined herein is the best notice practicable and shall constitute due and sufficient notice to all persons and entities entitled to receive such notice and fully satisfies the

requirements of due process and of Rule 23(b)(3)." (Dkt. 172 at ¶ 13).

"Courts frequently look to the number of opt-outs or objectors as bearing on . . . the fairness of the settlement . . . The idea is that if few class members seek to exclude themselves after reviewing the terms of a proposed settlement, this tends to be a vote of confidence in the settlement by the parties most affected." T. Eisenberg and G. Miller, *The Role of Opt-Outs and Objections in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1537 (2004); see also *Synfuel*, 463 F.3d at 653 ("a district court must consider . . . an evaluation of the amount of opposition to settlement among affected parties); Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, 3rd Ed., Federal Judicial Center, 31-32 (2010).

Here, there have been no opt-outs or objections which may be construed as a vote of confidence and in indication of fairness. All indications are that the Notice Plan, as implemented, did accord with the requirements of due process and F.R.Civ.P. 23.

### D. Award of Attorney's Fees, Costs and Service Awards

The Plaintiffs rely on their Motion for Fees, Costs and Service Awards filed after this Motion for Final Approval.

## IV. CONCLUSION

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and adequate, falls within the range of what might ultimately be approved, and because the notice given of the settlement accords with the requirements of due process, Plaintiffs respectfully request that the Court enter the Final Judgment and Order attached as Exhibit 1 to the Motion for Final Approval.

WHEREFORE, Plaintiffs MANUEL BARRIOS, BRANDON FULLER, and SAVANNAH WASHINGTON, by counsel, respectfully request that this Court (1) approve the proposed settlement, (2) certify a settlement class, (3) approve the notice plan as administered by JND Legal Administration as the Claims Administrator, and (4) reaffirm the appointment of the named Plaintiffs as representatives of the proposed settlement class.  Plaintiffs further pray for any other relief that this Court deems just.

Respectfully submitted,

/s/ Edward R. Moor
Edward R. Moor, ARDC #6205169
Moor Law Office, P.C.
One North LaSalle Street, Suite 600
Chicago, Illinois 60602
erm@moorlaw.net

Paul J. Lytle, ARDC #6311194
The Lytle Law Group LLC
1431 Opus Place, Suite 110
Downers Grove, IL 60515
paul@lytlemilan.com

**Attorneys for Plaintiffs and the Class**

# EXHIBIT A –

## Keough Declaration on Notice Implementation

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Manuel Barrios, Brandon Fuller, and Savannah Washington, individually and as representatives of all similarly situated persons, | ) ) ) | No.: 15 cv 2648 |
| | ) | |
| Plaintiffs, | ) | The Honorable Joan B. Gottschall |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Chicago, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DECLARATION OF JENNIFER M. KEOUGH REGARDING
IMPLEMENTATION OF NOTICE PLAN</u>**

I, Jennifer M. Keough, declare and state as follows:

**<u>INTRODUCTION</u>**

1.     I am Chief Executive Officer of JND Holdings d/b/a JND Class Action Administration and JND Legal Administration ("JND"). This Declaration is based on my personal knowledge, as well as upon information provided to me by experienced JND employees and Counsel for the Plaintiffs ("Counsel"), and if called upon to do so, I could and would testify competently to the facts contained herein.

2.     On July 24, 2020, this Court appointed JND Legal Administration as "Claims Administrator" in response to the Plaintiff's Amended Motion for Preliminary Approval of the class action settlement.  I had executed an affidavit in support of that Motion which informed the Court of my qualifications and experience.  (Dkt. 164 at Exhibit H).

3.     I supervised the project managers and oversaw all aspect of the administrative services provided.  I submit this declaration regarding the Notice Program in this action.

**CLASS MEMBER DATA**

4.      Between June 5, 2020 and July 10, 2020, JND received from Settlement Class Counsel PDF documents containing copies of Certificates of Title of a Vehicle ("Certificates") for 335 of the 356 impounded vehicles along with spreadsheets containing contact information for the Settlement Class Members culled from impound records for those members for which a title could not be located. JND reviewed all of the documentation provided and collated contact data for the Settlement Class Members using the information contained in the Certificates and spreadsheets.  The Settlement Class Member data was promptly loaded into a secure database established for this administration, and JND certified the mailing data via the Coding Accuracy Support System ("CASS") in order to ensure the consistency of the contact information in the database.

5.      Prior to mailing notices to the owners of the 356 vehicles at issue in the Settlement Class, JND verified the mailing addresses through the National Change of Address ("NCOA") database[1] and identified updated addresses for 36 of the Class Members at issue.

**MAILED NOTICE**

6.      On August 19, 2020, JND caused the Class Notice, pre-populated Proof of Claim Forms, and an IRS Form W-9, in English and Spanish, and a business reply envelope (together the "Notice Packet") to be mailed via first-class regular mail using the United States Postal Service ("USPS") to the Settlement Class Members.  A sample of the bi-lingual mailed Notice Packet is attached hereto as Exhibit A.

---

[1] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained in the database for 48 months.

## REMAILING OF THE NOTICE

7.      As of September 29, 2020, JND had tracked 102 Notice Packets that had been returned as undeliverable and located an updated address for 66 of the 102 returned Notice Packets after using TransUnion's TLO service, which is an advanced skiptrace search service.  JND re-mailed the Notice Packet to those 66 Settlement Class Members for whom a new address was obtained.

8.      On October 14, 2020, JND mailed a second Notice Packet to 293 Settlement Class Members who had not yet submitted a completed Proof of Claim Form as provided in § 8.3(f) of the Stipulation and Settlement Agreement.  JND subsequently received 24 Notice Packets returned as undeliverable at addresses that had not previously been researched and then re-mailed Notice Packets to 16 of those 24 Settlement Class Members for whom an updated address was located using Transunion's TLO service.  JND also re-mailed Notice Packets to two Settlement Class Members whose Notice Packets were returned to JND with a new forwarding address.

9.      As of the date of this Declaration, JND has issued at least one Notice Packet to 325 Settlement Class Members that were not returned as undeliverable.  This represents a delivery rate of 91.29%.

## PUBLISHED NOTICE

10.     On September 2, 2020, JND caused to be published a half-page Summary Notice of Proposed Class Action Settlement in the *Chicago Sun-Times* and a quarter-page announcement of the Summary Notice in the *Chicago Tribune*. On September 6, 2020, JND caused to be published a one-half page Summary Notice in Spanish in *La Raza*.  Copies of the Summary Notices published in the *Sun-Times*, *Tribune* and *La Raza* are attached as Exhibit B.

**INDIRECT NOTICE**

11.    On August 19, 2020, JND established a case-specific Settlement Website (www.impoundclass.com) on which the Notice and a downloadable Claim Form were posted in English and Spanish, together with the Settlement Agreement and other important case documents. The website provides answers to frequently asked questions and contact information for the Settlement Administrator.

12.    As of the date of this Declaration, the Settlement Website has tracked 292 unique users with 922 page views.  The website is still live and will contain a copy of the Petition for Final Approval when filed on November 20, 2020, as well as a copy of the Petition for Attorney's Fees, when filed.

**TOLL-FREE NUMBER**

13.    On August 19, 2020, JND established a toll-free telephone number (1-888-383-0341) with an interactive voice recording (IVR) that Class Members can use to obtain more information about the Settlement or to speak to an associate if they have any further questions.  As of the date of this Declaration, JND has received a total of 132 telephone calls on the toll-free number and handled 92 live calls.

**CLAIMS RECEIVED**

14.    As of the date of this Declaration, JND has received 126 completed Proof of Claim Forms.  According to a list Settlement Class Counsel provided which lists a value for each VIN, the total value of the claims submitted is $1,848,360.66.  Since the claim submission deadline is a postmark deadline, JND may receive timely claim submissions after the deadline has passed.

15.     Although all of the Proof of Claim Forms submitted were determined to be valid, 57 claimants did not include a completed W9 with their claim submission.  At the request of Class Counsel, JND has mailed a W9 request to those claimants who did not provide a completed W9.

16.     As § 5.2 provides that the deadline for the submission of claims is 119 days after approval of the Settlement by the Chicago City Counsel, or November 18, 2020, given that the City Council approved the Settlement on July 22, 2020, there may be additional claims to report by the time of the Final Approval Hearing.

## OPT-OUT REQUESTS

17.     The Class Notice informed Settlement Class Members that any Settlement Class Member who wished to exclude themselves from the Settlement ("opt-out") had to mail a completed and signed opt-out notice to JND so that it is received by no later than November 18, 2020.

18.     As of the date of this Declaration, JND has received no opt-out requests.

## OBJECTIONS

19.     The Class Notice informed Settlement Class Members who wished to object to the proposed Settlement that they could do so by filing a written objection with the Court so that it is received by no later than November 18, 2020.

20.     As of the date of this Declaration, JND has not received, and is not aware of, any objections submitted by Settlement Class Members.

## SETTLEMENT ADMINISTRATION COSTS

21.     JND's actual costs incurred through October 31, 2020, for services in connection with the administration of this Settlement are $46,679.24.  As for the remaining costs for completion of the

administration, JND estimates that it will incur approximately an additional $13,464.00 for services in connection with the administration of this Settlement.

## DEPOSIT OF SETTLEMENT FUNDS

22.     On or before November 25, 2020, the Defendant will wire $4,950,000.00 to JND for deposit into a Settlement Escrow Account JND established in accordance with § 3.2 of the Second Amended Stipulation and Agreement of Settlement.  This money will be held until direction is given by the Court after the Final Fairness Hearing is conducted.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 17, 2020, at Seattle, Washington.


By: _____

     Jennifer M. Keough

# KEOUGH EXHIBIT A –

## The Notice Packet mailed in 15-cv-2648

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MANUEL BARRIOS, et al.,

*Plaintiffs,*

*v.*

THE CITY OF CHICAGO,

*Defendant.*

No. 1:15-cv-02648

Honorable Joan B. Gottschall

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
AND FINAL FAIRNESS HEARING**

**PLEASE READ THIS NOTICE CAREFULLY. THIS NOTICE IS TO INFORM YOU
OF A PROPOSED SETTLEMENT THAT MAY AFFECT YOUR RIGHTS.**

*A federal court authorized this notice.
This is not a solicitation from a lawyer or a notice of a lawsuit against you.*

**You may be entitled to a payment if you are a member of the Settlement Class that is
described in this Notice.** The proposed Settlement Agreement is with the City of Chicago, which
has agreed to create a Four Million Nine Hundred and Fifty Thousand Dollar and Zero Cents
($4,950,000.00) cash Settlement Fund from which 356 eligible individuals may receive cash
payments. If you are one of the persons who owned one of the 356 vehicles, the cash payment
you are presumably entitled to has been determined using data from Kelley Blue Book and by
considering the fair market value of your vehicle at the time it was seized.

You may be a member of the Settlement Class if you owned one of the 356 vehicles that were
impounded by the City of Chicago under Chicago Municipal Code § 7-24-225 for a State of Illinois
drug related offense where the seizure did not result in forfeiture of the vehicle and the City of
Chicago initiated contact with your finance company (lienholder) or lessor of the vehicle and
demanded that the company take possession of the vehicle, during the period of March 28, 2013
through August 1, 2015, and as a result: (1) you were permanently deprived of your vehicle due to
the lienholder taking possession of your vehicle; or (2) you were temporarily deprived of the use
and possession of your vehicle.

You can confirm that you are one of the persons eligible under the above definition by seeing if
your name appears on the list of "owners" at www.impoundclass.com/Owners.

## BASIC INFORMATION

| **Why Did I Get This Notice?** |
| --- |

You received this Notice either because: (i) you requested it; or (ii) City of Chicago records indicate that you may have been the owner of a vehicle impounded by the Chicago Police Department during the Settlement Class Period for a narcotics related offense. If you were the owner of such a vehicle, you may be a member of the Settlement Class.

| **What Is The Lawsuit About?** |
| --- |

The lawsuit claims that the Chicago Police Department wrongfully engaged in a purported policy, pattern and/or practice of depriving owners of vehicles seized for potential drug-related offenses by contacting the finance company (lienholder) or lessor of the vehicle and then transferring the vehicle to those companies without providing the owner of the vehicle with a forfeiture hearing or equal opportunity to recover their vehicle in violation of the owner's due process rights.

By agreeing to the proposed settlement described in this Notice, Defendant makes no admission as to the truth of these allegations, and it denies any and all wrongdoing.

| **What Is A "Lienholder"?** |
| --- |

A lienholder is a lender that legally has an interest in your property until you pay it off in full. The lender — which can be a bank, financial institution or private party — holds a lien, or legal claim, on the property because they lent you the money to purchase it.

| **How Do I Submit A Claim?** |
| --- |

Attached to this Notice is a Claim Form. YOU MUST FILL OUT AND SIGN THE CLAIM FORM AND SUBMIT IT TO THE CLAIMS ADMINISTRATOR, BY U.S. MAIL, FAX, HAND DELIVERY OR E-MAIL (IN PDF FORMAT):

**Barrios et al. v. City of Chicago**
**c/o JND Legal Administration**
**P.O. Box 91209**
**Seattle, Washington 98111**
**Toll Free: 1-888-383-0341**
**Email: info@impoundclass.com**
**Website: www.impoundclass.com**

**THE PROOF OF CLAIM FORM MUST BE <u>RECEIVED</u> ON OR BEFORE NOVEMBER 18, 2020. IF YOU DO NOT SUBMIT YOUR SIGNED CLAIM FORM BY THIS DEADLINE, YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO RECEIVE ANY PAYMENT FROM THE SETTLEMENT FUND.**

**You must complete the Proof of Claim Form in order to be eligible to receive any benefit from the Settlement, and the Claim Form must be received on time and in accordance with**

**this Notice**. Be advised that in some instances, the Claims Administrator may require you to submit written documentation supporting your Proof of Claim. If you are part of the Class and do nothing, you will not be paid anything and will lose your right to bring a separate lawsuit.

As a Settlement Class member, you will be bound by all proceedings, orders and judgments entered in connection with the proposed settlement and Settlement Agreement, including the release, covenant not to sue, and dismissal with prejudice described below.

| What If I Do Not Want To Be Part Of The Settlement? |
| --- |

If you do not want to be a member of the Settlement Class and participate in the proposed Settlement, then you must send a signed statement to that effect that includes your name, address, and telephone number, to the Claims Administrator identified above.

**TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT OUT OF THE SETTLEMENT, YOUR COMPLETED AND SIGNED OPT-OUT NOTICE MUST BE RECEIVED BY THE CLAIMS ADMINISTRATOR BY NO LATER THAN NOVEMBER 18, 2020. IF IT IS NOT _RECEIVED_ BY THE CLAIMS ADMINISTRATOR BY THAT DATE, YOUR RIGHT TO OPT OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.**

If you choose to opt out of the settlement and the Settlement Class, you will not receive any payment under the proposed settlement and your claims will not be released. You will also not be allowed to comment on or object to the proposed Settlement.

| Are There Any Limits On The Amount I Can Recover? |
| --- |

A Claims Administrator hired by Class Counsel will administer the settlement. The Claims Administrator will review all claims and determine whether they are valid.

Eligible individuals may receive a one-time payment of up to the fair market value of their vehicle when it was seized. The total amount of money available from the Settlement Fund for approved claims is limited to $4,950,000.00, minus Attorneys' Fees, incentive payments to the named Plaintiffs, and Administrative Expenses. If this limit is reached or exceeded, your claim will be pro-rated based on the number of Class Members who file valid and timely Proofs of Claim.

If the number of valid and timely claims submitted is less than the funds available for the payment of claims, then the difference between the total amount of approved claims and the Settlement Fund will be paid to the City of Chicago.

| How Is The Validity Of A Claim Determined? |
| --- |

A Claims Administrator will determine whether a claim is timely, valid and payable from the Settlement Fund based on information you provide on the Claim Form and supporting documentation that you provide, as well as information provided by the City. The Claims Administrator has complete and final authority to determine whether a claim shall be valid and paid, and its decision shall be final. In the event that your claim is denied, you will be granted an

additional seven (7) days to provide additional documentation to support your claim. The denial of a claim can be appealed to the District Court. If your claim is denied, the Claims Administrator will provide you with information regarding how to appeal that denial.

## Who Are The Attorneys Appointed To Represent The Settlement Class?

The Court has appointed the following attorneys as Class Counsel to represent the Settlement Class:

Edward R. Moor
Moor Law Office, P.C.
One North LaSalle Street, Suite 600
Chicago, Illinois 60602

Paul J. Lytle
Lytle & Milan, LLC
1142 W. Madison St., Suite 306
Chicago, Illinois 60607

## How Will The Lawyers Be Paid?

Since the lawsuit began on March 28, 2015, the attorneys representing the Settlement Class have devoted substantial resources and expenditures in pursing the claims raised in this litigation on behalf of Plaintiffs and the Settlement Class Members purely on a contingent fee basis, and these law firms have received no compensation for their services or reimbursement of their expenses. As part of the proposed Settlement, Class Counsel will ask the Court to approve an amount of attorneys' fees not to exceed 33% or $1,650,000.00 of the Settlement Fund and for reimbursement of expenses.

## Should I Get My Own Lawyer?

You do not need to hire your own lawyer, but you are free to do so. However, if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance. Hiring a lawyer to appear for you in the lawsuit will be at your own expense.

## COMMENTING ON THE PROPOSED SETTLEMENT

## Can I Comment On, Or Object To, The Proposed Settlement?

If you have comments about, or disagree with, any aspect of the Proposed Settlement, you may express your views to the Court in writing. The written response should include your name, address, telephone number and a brief explanation of your comment or reason for objection. Your written response must clearly identify any and all witnesses, along with their testimony, documents, and other evidence of any kind that you anticipate will be presented at the Final Approval Hearing. The document must be signed to ensure the Court's review. The response **must be _received_ on or before November 18, 2020**, and mailed to:

Clerk of Court
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

Your document must clearly state that it relates to Civil Action Number 15-cv-02648.

You must also send a copy of your comment or objection by first class mail to <u>one</u> of the attorneys for the Settlement Class listed above and to one of the attorneys for the Defendants listed below, not later than November 18, 2020:

Allan T. Slagel
Jonathan B. Amarilio
Anne L. Yonover
Taft Stettinius & Hollister LLP.
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601

## Dismissal With Prejudice, Approval Of The Proposed Settlement And Release Of Claims

If the Court approves the proposed Settlement, it will enter a judgment dismissing the litigation with prejudice as to all claims against Defendant. In addition, Defendant will receive from the Settlement Class (except for those persons that have timely opted out of the Settlement) a release and discharge of all claims, demands, actions, suits, and causes of action that have been brought or could have been brought, are currently pending or were pending, or are ever brought in the future, by any Settlement Class Member against any Defendant, in any forum, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, that relate in any way, directly or indirectly, to facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in any claim raised in the litigation.

This means that all Settlement Class Members who have not opted out of the settlement will be forever barred from bringing, continuing, or being part of any claim or lawsuit against the City of Chicago, or the Chicago Police Department or their employees, personnel, or representatives, relating to the impoundment of their vehicles. If you fall within the class definition and do not want to be prevented from bringing, continuing or being a part of such a lawsuit, you must exclude yourself from the Settlement Class and proposed Settlement as explained above.

## The Court's Final Approval Hearing

The U.S. District Court will hold a Final Approval Hearing on December 18, 2020, at 9:30 a.m. to consider whether the proposed Settlement is fair, reasonable, and adequate. The hearing will be conducted by teleconference. At the Hearing, the Court may decide whether to approve the proposed Settlement and the request for attorneys' fees and reimbursement of expenses. If comments or objections have been timely received, the Court will consider them at that time.

Note: The Hearing may be postponed to a different date without additional notice. Updated information will be posted on the settlement website, www.impoundclass.com.

| **Must I Attend The Final Approval Hearing?** |
|---|

Attendance is not required, even if you properly mailed a written response. If you or your personal attorney still wants to attend the Hearing, you may contact the Claims Administrator at 1-888-383-0341 or by email at info@impoundclass.com, or you may contact Class Counsel, to obtain the information necessary to attend by telephone. However, it is not necessary that either of you attend. As long as your comment or objection was received before the deadline, the Court will consider it.

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance should include the name and number of the lawsuit Civil Action Number: 15-cv-02648, and must state that you wish to enter an appearance at the Final Approval Hearing. It also must include your name, address, telephone number, and signature. Your Notice of Appearance **must be received on or before November 18, 2020**. You cannot speak at the Hearing if you ask to be excluded from the Proposed Settlement Class or are not submitting a Claim Form now.

The Notice of Appearance must be filed with the Court at the following address:

Clerk of Court
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

The Notice of Appearance must be filed using the following Civil Action Number: 15-cv-02648.

## GETTING MORE INFORMATION

| **Where Do I Obtain More Information?** |
|---|

You can look at and copy the legal documents filed with the Court at any time during regular business hours at the Office of the Clerk of Court, Clerk of Court Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Contact the Claims Administrator at: 1-888-383-0341 or by email at info@impoundclass.com.

- Visit the website at www.impoundclass.com.

## DO NOT CONTACT THE JUDGE OR HER STAFF.

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO NORTE DE ILLINOIS
DIVISIÓN ESTE**

MANUEL BARRIOS, et al.,

*Demandantes,*

*v.*

THE CITY OF CHICAGO,

*Demandada.*

N.° 1:15-cv-02648

Honorable Joan B. Gottschall

**AVISO DE PROPUESTA DE CONCILIACIÓN DE DEMANDA COLECTIVA
Y AUDIENCIA DE IMPARCIALIDAD DEFINITIVA**

**LEA CUIDADOSAMENTE ESTE AVISO. MEDIANTE ESTE AVISO SE LE INFORMA ACERCA
DE UNA PROPUESTA DE CONCILIACIÓN QUE PUEDE AFECTAR SUS DERECHOS.**

*Un tribunal federal autorizó este aviso.*
*Esto no es una oferta de representación por parte de un abogado o un aviso de demanda en su contra.*

**Usted podría tener derecho a un pago si es miembro del Grupo de la conciliación que se describe en este Aviso.** La propuesta de Acuerdo de conciliación se relaciona con la Ciudad de Chicago, la cual ha acordado crear un Fondo de conciliación en efectivo de cuatro millones novecientos cincuenta mil dólares con cero centavos ($4,950,000.00), del cual 356 individuos elegibles podrán recibir pagos en efectivo. Si usted es una de las personas que poseía uno de los 356 vehículos, el pago en efectivo al que presuntamente tendría derecho se determinó utilizando datos de Kelley Blue Book, teniendo en cuenta el valor justo de mercado de su vehículo al momento en que fue incautado.

Usted puede ser miembro del Grupo de la conciliación si era propietario de uno de los 356 vehículos que fueron incautados por la Ciudad de Chicago en virtud del art. 7-24-225 del Código Municipal de Chicago por un delito vinculado con drogas en el estado de Illinois, en cuyo caso, la retención no dio lugar al decomiso del vehículo y la Ciudad de Chicago inició un contacto con la compañía financiera (acreedor prendario) o el arrendador del vehículo y exigió a la compañía que tomara posesión del vehículo, durante el período comprendido entre el 28 de marzo de 2013 y el 1 de agosto de 2015 y, como consecuencia de ello: (1) se lo privó de forma permanente de su vehículo debido a que el acreedor prendario tomó posesión de su vehículo o (2) se lo privó de manera temporal del uso y de la posesión de su vehículo.

Puede confirmar si es una de las personas elegibles en virtud de la definición anterior al ver si su nombre aparece en la lista de "propietarios" en www.impoundclass.com/Owners.

<u>INFORMACIÓN BÁSICA</u>

**¿Por qué recibí este Aviso?**

Usted recibió este Aviso por alguno de los siguientes motivos: (i) porque lo solicitó; o (ii) porque los registros de la Ciudad de Chicago indican que usted puede haber sido el propietario de un vehículo incautado por el Departamento de Policía de Chicago durante el Período de la conciliación en la demanda colectiva por un delito relacionado con narcóticos. Si usted fuera el propietario de alguno de estos vehículos, podría ser miembro del Grupo de la conciliación.

**¿De qué trata la demanda?**

En la demanda, se alega que el Departamento de Policía de Chicago llevó a cabo injustamente una presunta política, patrón o práctica de privación a los propietarios de vehículos retenidos por posibles delitos vinculados con drogas, al ponerse en contacto con la compañía financiera (acreedor prendario) o el arrendador del vehículo y luego transferir el vehículo a dichas compañías sin proporcionar al propietario del vehículo una audiencia de decomiso o la oportunidad equitativa de recuperar su vehículo, lo cual infringió los derechos de debido proceso del propietario.

Al aceptar la propuesta de conciliación que se describe en este Aviso, la Demandada no admite de ninguna manera la verdad de estas acusaciones, y niega cualquier y todo acto ilícito.

**¿Qué es un "acreedor prendario"?**

Un acreedor prendario es un prestamista que legalmente tiene un derecho sobre uno de sus bienes hasta que usted cancele la deuda en su totalidad. El prestamista, que puede ser un banco, una institución financiera o una parte privada, tiene un gravamen, o un derecho legal, sobre el bien porque le prestó el dinero a usted para comprarlo.

**¿Cómo presento un reclamo?**

Se adjunta a este Aviso un Formulario de reclamo. DEBE COMPLETAR Y FIRMAR EL FORMULARIO DE RECLAMO Y ENVIARLO AL ADMINISTRADOR DE RECLAMOS, POR CORREO POSTAL DE LOS EE. UU., FAX, ENTREGA EN MANO O CORREO ELECTRÓNICO (EN FORMATO PDF):

**Barrios et al. v. City of Chicago**
**c/o JND Legal Administration**
**P.O. Box 91209**
**Seattle, Washington 98111**
**Llamada gratuita: 1-888-383-0341**
**Correo electrónico: info@impoundclass.com**
**Sitio web: www.impoundclass.com**

**EL FORMULARIO DE COMPROBANTE DE RECLAMO DEBE <u>RECIBIRSE</u> A MÁS TARDAR EL 18 DE NOVIEMBRE DE 2020. SI NO PRESENTA SU FORMULARIO DE RECLAMO FIRMADO DENTRO DE DICHO PLAZO, SE CONSIDERARÁ QUE HA RENUNCIADO A SU DERECHO DE RECIBIR UN PAGO DEL FONDO DE CONCILIACIÓN.**

**Debe completar el Formulario de comprobante de reclamación para ser elegible para recibir cualquier tipo de beneficio de la Conciliación, y el Formulario de reclamo debe recibirse a tiempo y conforme a este Aviso**. Tenga en cuenta que, en algunos casos, el Administrador de reclamos podrá requerirle que envíe documentación escrita que respalde su Comprobante de reclamo. Si usted es parte del Grupo y no hace nada, no se le pagará nada y perderá su derecho a presentar una demanda separada.

Como miembro del Grupo de la conciliación, usted quedará obligado por todos los procedimientos, resoluciones y sentencias que se emitan en relación con la propuesta de conciliación y el Acuerdo de conciliación, lo que incluye la exoneración, el pacto de no demandar y la desestimación sin derecho a reclamar nuevamente que se describen a continuación.

## ¿Qué sucede si no deseo participar de la conciliación?

Si no desea ser miembro del Grupo de la conciliación y participar en la propuesta de Conciliación, debe enviar una declaración firmada a tal efecto, en donde incluya su nombre, dirección y número de teléfono, al Administrador de reclamos identificado anteriormente.

**PARA QUE SU PRESENTACIÓN SE CONSIDERE OPORTUNA Y USTED PUEDA EXCLUIRSE EFECTIVAMENTE DE LA CONCILIACIÓN, EL ADMINISTRADOR DE RECLAMOS DEBE RECIBIR SU AVISO DE EXCLUSIÓN COMPLETADO Y FIRMADO A MÁS TARDAR EL 18 DE NOVIEMBRE DE 2020. SI EL ADMINISTRADOR DE RECLAMOS NO RECIBE EL AVISO DENTRO DE ESE PLAZO, SE CONSIDERARÁ QUE RENUNCIÓ A SU DERECHO DE EXCLUIRSE Y QUEDARÁ OBLIGADO POR TODAS LAS RESOLUCIONES Y SENTENCIAS DICTADAS EN RELACIÓN CON LA CONCILIACIÓN.**

Si decide excluirse de la conciliación y del Grupo de la conciliación, no recibirá ningún pago según la propuesta de conciliación y no tendrá lugar la exoneración de sus reclamos. Tampoco tendrá derecho a realizar comentarios ni formular objeciones respecto de la propuesta de Conciliación.

## ¿Hay algún límite en la cantidad que puedo cobrar?

Un Administrador de reclamos contratado por los Abogados del grupo administrará la conciliación. El Administrador de reclamos analizará todos los reclamos y determinará si son válidos.

Las personas elegibles podrán recibir un pago único que puede llegar, como máximo, al valor justo de mercado de su vehículo al momento en que se retuvo. La cantidad total de dinero disponible del Fondo de la conciliación para reclamos aprobados está limitada a $4,950,000.00, menos los honorarios de abogados, pagos de incentivo a los Demandantes nombrados y Gastos administrativos. Si se alcanza o se supera ese límite, su reclamo se prorrateará en función de la cantidad de Miembros del grupo que presenten Comprobantes de reclamo válidos y oportunos.

Si la cantidad de reclamos válidos y oportunos presentados es menor que los fondos disponibles para el pago de reclamos, entonces la diferencia entre el monto total de reclamos aprobados y el Fondo de la conciliación se pagará a la Ciudad de Chicago.

## ¿Cómo se determina la validez de un reclamo?

Un Administrador de reclamos determinará si un reclamo es oportuno, válido y pagadero del Fondo de la conciliación a partir de la información que usted brinde en el Formulario de reclamo y la documentación de respaldo que usted proporcione, así como la información proporcionada por la Ciudad. El Administrador de reclamos tiene autoridad plena y final para determinar si un reclamo debe considerarse válido y pagarse, y su

decisión será definitiva. En caso de que se deniegue su reclamo, se le concederán siete (7) días adicionales para proporcionar documentación adicional que respalde su reclamo. La denegación del reclamo puede ser apelada ante el Tribunal de Distrito. Si su reclamo es denegado, el Administrador de reclamos le proporcionará información sobre cómo apelar la decisión negativa.

**¿Quiénes son los abogados designados para representar al Grupo de la conciliación?**

El Tribunal ha designado a los siguientes letrados como Abogados del grupo para representar al Grupo de la conciliación:

Edward R. Moor
Moor Law Office, P.C.
One North LaSalle Street, Suite 600
Chicago, Illinois 60602

Paul J. Lytle
Lytle & Milan, LLC
1142 W. Madison St., Suite 306
Chicago, Illinois 60607

**¿Cómo se les pagará a los abogados?**

Desde que se inició la demanda, el 28 de marzo de 2015, los abogados que representan al Grupo de la conciliación han dedicado recursos y efectuado gastos sustanciales en la consecución de los reclamos planteados en este litigio en nombre de los Demandantes y los Miembros del grupo de la conciliación, sobre la base de honorarios puramente contingentes, y estos bufetes no han recibido ninguna compensación por sus servicios o el reembolso de sus gastos. Como parte de la propuesta de Conciliación, los Abogados del grupo le pedirán al Tribunal que apruebe honorarios de abogados por un monto que no exceda el 33% o $1,650,000.00 del Fondo de la conciliación y para el reembolso de los gastos.

**¿Debo contratar a mi propio abogado?**

No es necesario que contrate a su propio abogado, pero puede hacerlo. Sin embargo, si desea que su propio abogado hable por usted o comparezca ante el Tribunal, debe presentar un Aviso de comparecencia. La contratación de un abogado que comparezca en su representación en la demanda será a su propio costo.

COMENTARIOS SOBRE LA PROPUESTA DE CONCILIACIÓN

**¿Puedo hacer comentarios u objeciones respecto de la propuesta de Conciliación?**

Si tiene algún comentario o está en desacuerdo en relación con algún aspecto de la propuesta de Conciliación, puede expresar su opinión al Tribunal por escrito. La respuesta escrita debe incluir su nombre, dirección, número de teléfono y una breve explicación del comentario o del motivo de objeción. Su respuesta escrita debe identificar claramente a todos y cada uno de los testigos, junto con sus testimonios, documentos y pruebas de cualquier otro tipo que usted anticipe que se presentarán en la Audiencia de aprobación definitiva. El documento debe estar firmado para garantizar que el Tribunal lo analice. La respuesta **debe recibirse a más tardar el 18 de noviembre de 2020**, y enviarse por correo postal a:

Clerk of Court
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

Su documento debe indicar claramente que se relaciona con el número de acción civil 15-cv-02648.

También debe enviar una copia de su comentario u objeción por correo de primera clase a <u>uno</u> de los abogados del Grupo de la conciliación indicados anteriormente y a uno de los abogados de la Demandada indicados a continuación, a más tardar el 18 de noviembre de 2020:

Allan T. Slagel
Jonathan B. Amarilio
Anne L. Yonover
Taft Stettinius & Hollister LLP.
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601

## Desestimación sin derecho a reclamar nuevamente, aprobación de la Propuesta de conciliación y exoneración de reclamos

Si el Tribunal aprueba la propuesta de Conciliación, dictará una sentencia en la cual desestime el litigio sin posibilidad de invocar nuevamente ninguno de los reclamos contra la Demandada. Además, la Demandada recibirá, del Grupo de la conciliación (excepto quienes hayan optado oportunamente por excluirse de la Conciliación), una exoneración y liberación de todos los reclamos, intimaciones, acciones, demandas y fundamentos de demanda que uno de los Miembros del grupo de la conciliación hubiera o pudiera haber presentado, que tenga actualmente o pueda haber tenido en trámite, o que en algún momento futuro pueda iniciar contra alguna de las Demandadas, en cualquier foro, ya sean conocidos o desconocidos, invocados o no, en virtud de cualquier ley, disposición, régimen de derecho común o equidad, que se relacionen de cualquier manera, directa o indirectamente, con los hechos, actos, eventos, transacciones, acontecimientos, conductas, declaraciones, omisiones, circunstancias u otros asuntos a los que se haga referencia en cualquier reclamo planteado en el litigio.

Esto significa que los Miembros del grupo de la conciliación que no hayan optado por excluirse de la conciliación no podrán nunca más iniciar, continuar o ser parte de ningún reclamo o demanda contra la Ciudad de Chicago, o el Departamento de Policía de Chicago o sus empleados, personal o representantes, en relación con la incautación de sus vehículos. Si usted entra dentro de la definición de grupo y no desea que se le impida iniciar, continuar o ser parte de dicha demanda, debe excluirse del Grupo de la conciliación y de la propuesta de Conciliación como se explicó anteriormente.

## Audiencia de aprobación definitiva del Tribunal

El Tribunal de Distrito de EE. UU. llevará a cabo una Audiencia de aprobación definitiva el 18 de diciembre de 2020 a las 9:30 a. m. para analizar si la propuesta de Conciliación resulta justa, razonable y adecuada. La audiencia se llevará a cabo por teleconferencia. En la Audiencia, el Tribunal podrá decidir si aprueba la propuesta de Conciliación y la solicitud de honorarios de abogados y el reembolso de gastos. Si se hubieran recibido comentarios u objeciones oportunamente, el Tribunal los considerará en ese momento.

Nota: La Audiencia podrá postergarse a una fecha u hora diferentes sin aviso adicional. La información actualizada se publicará en el sitio web de la conciliación, www.impoundclass.com.

## ¿Debo asistir a la audiencia de aprobación definitiva?

No es necesario que asista, incluso si envió correctamente una respuesta escrita por correo postal. Si usted o su abogado personal aun así desean asistir a la Audiencia, puede comunicarse con el Administrador de reclamos al 1-888-383-0341 o por correo electrónico a info@impoundclass.com, o puede comunicarse con los Abogados del grupo, para obtener la información necesaria para asistir por teléfono. Sin embargo, no es necesario que ninguno de los dos asista. Siempre y cuando su comentario u objeción hayan sido recibidos dentro del plazo, el Tribunal lo considerará.

Si desea que su propio abogado en lugar de los Abogados del grupo hable en la Audiencia de aprobación definitiva, debe entregar al Tribunal un documento que se llama "Aviso de comparecencia". El Aviso de comparecencia debe incluir el nombre y el número de la demanda, Número de acción civil: 15-cv-02648, y debe indicar que desea registrar una comparecencia a la Audiencia de aprobación definitiva. También debe incluir su nombre, dirección, número de teléfono y firma. Su Aviso de comparecencia **debe ser <u>recibido</u> a más tardar el 18 de noviembre de 2020**. Usted no podrá hablar en la Audiencia si solicita ser excluido del Grupo de la propuesta de conciliación o si no presenta un Formulario de reclamo ahora.

El Aviso de comparecencia debe presentarse ante el Tribunal en la siguiente dirección:

Clerk of Court<br>
Everett McKinley Dirksen United States Courthouse<br>
219 South Dearborn Street<br>
Chicago, Illinois 60604

El Aviso de comparecencia debe presentarse utilizando el siguiente Número de acción civil: 15-cv-02648.

### OBTENER MÁS INFORMACIÓN

## ¿Dónde puedo obtener más información?

Puede examinar y copiar los documentos legales presentados ante el Tribunal en cualquier momento durante el horario de atención regular en la Secretaría del Tribunal: Clerk of Court Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604.

Además, si tiene alguna pregunta sobre la demanda o este Aviso, puede:

- Comunicarse con el Administrador de reclamos al: 1-888-383-0341 o por correo electrónico a info@impoundclass.com.

- Visite el sitio web: www.impoundclass.com.

# NO SE COMUNIQUE CON LA JUEZA O SU PERSONAL.

# PROOF OF CLAIM FORM

*Barrios, et al., v. The City of Chicago*, Case No. 15-cv-2648 (N.D. Ill.) (J. Gottschall)

| | |
|---|---|
| Inventory No.: <<InventoryNumber>><br><br>VIN: <<VIN>><br><br>Date Towed: <<TowedDate>><br><br><br>  <<Barcode>><br>  <<UniqueID>><br><br>  <<Namea>><br>  <<Name2>><br>  <<Address1>><br>  <<Address2>><br>  <<City>>, <<ST>> <Zip>> | If you are a member of the Settlement Class, as defined below, then in order to receive any money from the settlement fund, you must return this form, **received no later than November 18, 2020,** to the following address:<br><br>**Barrios, et al. v. City of Chicago**<br>**c/o JND Legal Administration**<br>**P.O. Box 91209**<br>**Seattle, Washington 98111**<br><br>Toll Free: **1-888-383-0341**<br>Email: **info@impoundclass.com** |

### DO NOT SUBMIT YOUR CLAIM FORM TO THE COURT

 Pursuant to Court Order, this is a Proof of Claim Form, which must be properly and timely filled out, signed and returned in order for you to receive any payment as a result of the Settlement of *Barrios, et al., v. The City of Chicago*. Pursuant to the Settlement, members of the Settlement Class are entitled to receive a payment. The Settlement Class consists of:

 Named owners of 356 vehicles (estimated) that were impounded by the City of Chicago under Chicago Municipal Code § 7-24-225 for a State of Illinois drug related offense where the seizure did not result in forfeiture of the vehicle and the City of Chicago initiated contact with the lienholder of the vehicle and demanded that the lienholder take possession of the vehicle, during the period of March 28, 2013 through August 1, 2015, and as a result: (1) the vehicle owner was permanently deprived of his or her vehicle due to the lienholder taking possession of the vehicle; or (2) the vehicle owner was temporarily deprived of the use and possession of his or her vehicle.

 You can determine if you are one of the persons eligible under the above definition by seeing if your name appears on the list of "owners" at www.impoundclass.com/Owners. The completed Claim Form and any information submitted with it are confidential and will be used only for the purposes of administering the Settlement. No other Class Member will see this information.

### CLAIMANT INFORMATION

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | | |
| Class Member's Name (if different from above) | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| Street Address (if different from above) | | | | | | | | | | | | | | | | | | | Floor/Suite | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| City | | | | | | | | | | | | State | | | | Zip Code | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| Telephone Number and/or E-Mail Address (if available) | | | | | | | | | | | | | | | | | | | | | | |

 I hereby affirm and attest under penalty of perjury that I was the registered owner of the above-referenced vehicle at the time that it was towed or impounded by the Chicago Police Department, and that the tow or impound occurred between March 28, 2013 and August 1, 2015. I further affirm and attest under penalty of perjury that I was unable to redeem my vehicle and that the VIN number, Inventory number, and date towed listed at the top of this Proof of Claim form are accurate.

 As a member of the Settlement Class, I will be subject to and bound by the terms of the Release contained in the Settlement Agreement and Final Judgment Order, which provides that:

 Upon entry of the Final Judgment and Order, each Released Party individually, completely, voluntarily, knowingly, unconditionally, and forever releases and discharges Settlement Class Members and Settlement Class Counsel from any and all claims, whether such claims are direct or derivative, arising under federal, state or other law, known or unknown, accrued or unaccrued related to the Settled Claims., defined above as those claims that arise out of, or in connection with the towing, ticketing, impoundment, temporary deprivation, or release of, or loss or damage to, the Releasing Party's vehicle by the City from March 28, 2013 through August 2, 2015.

 I acknowledge reading the release above and certify under penalty of perjury that the information provided above is true and correct and that the submission of false information may subject me to civil and/or criminal penalties.

Signature: _____   Date: _____

# FORMULARIO COMPROBANTE DE RECLAMACIÓN

*Barrios, et al., v. The City of Chicago*, caso n.º 15-cv-2648 (N.D. Ill.) (J. Gottschall)

<table>
<tr>
<td>

Inventario n.º: <u><<InventoryNumber>></u>

VIN: <u><<VIN>></u>

Fecha de remolque: <u><<TowedDate>></u>

     <<Barcode>>
     <<UniqueID>>

     <<Namea>>
     <<Name2>>
     <<Address1>>
     <<Address2>>
     <<City>>, <<ST>> <Zip>>

</td>
<td>

Si es miembro del Grupo de la conciliación, conforme se define más adelante y deseara recibir algún dinero del fondo de conciliación, deberá devolver este formulario, el cual **debe recibirse a más tardar el 18 de noviembre de 2020.** a la dirección siguiente:

**Barrios, et al. v. City of Chicago**
**c/o JND Legal Administration**
**P.O. Box 91209**
**Seattle, Washington 98111**

Llamada gratuita: **1-888-383-0341**
Correo electrónico: **info@impoundclass.com**

</td>
</tr>
</table>

## NO ENVÍE SU FORMULARIO DE RECLAMO AL TRIBUNAL.

De conformidad con la orden judicial correspondiente, este es un Formulario de comprobante de reclamo, el cual debe completar, firmar y devolver de forma adecuada y en el tiempo establecido para poder recibir cualquier pago emitido como consecuencia de la Conciliación del caso *Barrios, et al., v. The City of Chicago*. De conformidad con la Conciliación, los miembros del Grupo de la conciliación tienen derecho a recibir un pago. El Grupo de la conciliación está conformado por los integrantes siguientes:

propietarios específicos de los 356 vehículos (aproximadamente) que fueron objeto de retención por la Ciudad de Chicago en virtud del art. 7-24-225 del Código municipal de Chicago por un delito vinculado con drogas en el estado de Illinois, en cuyo caso la retención no dio lugar al decomiso del vehículo y la Ciudad de Chicago inició un contacto con el acreedor prendario del vehículo y exigió al acreedor prendario que tomara posesión del vehículo, durante el período comprendido entre el 28 de marzo de 2013 y el 1 de agosto de 2015 y, como consecuencia de ello: (1) se privó al propietario del vehículo de forma permanente de su vehículo debido a que el acreedor prendario tomó posesión del vehículo o (2) se privó al propietario del vehículo en forma temporal del uso y de la posesión del vehículo.

Usted puede determinar si es una de las personas elegibles en virtud de la definición anterior al ver si su nombre aparece en la lista de "propietarios" en www.impoundclass.com/Owners. El Formulario de reclamo completado y cualquier información que se envíe con él son confidenciales y solo se utilizarán con el propósito de administrar la Conciliación. Ningún otro Miembro del grupo verá esta información.

## INFORMACIÓN DEL RECLAMANTE

<table>
<tr><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

Nombre del Miembro del grupo (si fuese diferente al anterior)

<table>
<tr><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

Dirección física (si fuese diferente a la anterior)                                      piso/suite

<table>
<tr><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

Ciudad                                           Estado                    Código postal

<table>
<tr><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

Número de teléfono o correo electrónico (si tuviese)

Por medio de este documento afirmo y declaro bajo pena de perjurio que era el propietario registrado del vehículo mencionado con anterioridad al momento en que fue remolcado o incautado por el Departamento de Policía de Chicago y que el remolque o la incautación ocurrieron entre el 28 de marzo de 2013 y el 1 de agosto de 2015. Asimismo, afirmo y declaro bajo pena de perjurio que no pude recuperar mi vehículo y que el número de identificación de vehículo (vehicle identification number, VIN), el número de Inventario y la fecha de remolque que se indican al principio de este formulario de Comprobante de reclamo son precisos.

Como miembro del Grupo de la conciliación, se me someterá y quedaré vinculado a las disposiciones de la Exoneración de responsabilidades incluida en el Acuerdo de conciliación y la orden de sentencia definitiva, que dispone lo siguiente:

Tras el registro de la Sentencia y la orden definitiva, cada Parte exonerada de forma individual, completa, voluntaria, consciente, incondicional y perpetua libera y exime para siempre a los Miembros del Grupo de la Conciliación y a los Abogados del Grupo de la Conciliación de todos los reclamos, independientemente de que dichos reclamos fuesen directos o derivados, que surjan en virtud de la legislación federal, estatal o de otro orden, ya fuesen conocidos o desconocidos, acumulados o no acumulados, en relación con los Reclamos conciliados. Estos últimos se definieron con anterioridad como aquellos reclamos que surgen o se relacionan con el remolque, la imposición de multas, el embargo, la privación temporal de uso o la liberación, la pérdida o los daños del vehículo de la Parte exoneradora por parte de la Ciudad durante el período comprendido entre el 28 de marzo de 2013 y el 2 de agosto de 2015.

Reconozco haber leído la exoneración anterior y certifico bajo pena de perjurio que la información suministrada con anterioridad es veraz y correcta y que la entrega de información falsa puede someterme a sanciones civiles o penales.

Firma: _____      Fecha: _____

¿Tiene preguntas? Llame al 1-888-383-0341 o visite www.impoundclass.com
Para ver la política de privacidad de JND, visite https://www.jndla.com/privacy-policy.

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send it to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

**6** City, state, and ZIP code

Requester's name and address (optional)

**7** List account number(s) here (optional)

**Print or type.**
**See Specific Instructions on page 3.**

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN,* later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

**or**

**Employer identification number**

| | | – | | | | | | |
|---|---|---|---|---|---|---|---|---|

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**  Signature of U.S. person ▶          Date ▶

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Form. **W-9(SP)**
(Rev. octubre de 2018)
Department of the Treasury
Internal Revenue Service

# Solicitud y Certificación del Número de Identificación del Contribuyente

▶ Visite *www.irs.gov/FormW9SP* para obtener las instrucciones y la información más reciente.

**Entregue el formulario al solicitante. No lo envíe al IRS.**

*Escriba en letra de molde o a máquina.*
*Vea las Instrucciones Específicas en la página 3.*

**1** Nombre (tal como aparece en su declaración de impuestos sobre el ingreso). Se le requiere anotar un nombre en esta línea; no deje esta línea en blanco.

**2** Nombre del negocio/Nombre de la entidad no considerada como separada de su dueño, si es diferente al de arriba.

**3** Marque el encasillado correspondiente para la clasificación tributaria federal de la persona cuyo nombre se indica en la línea **1**. Marque solo **uno** de los siguientes **7** encasillados:

☐ Individuo/empresario por cuenta propia o *LLC* de un solo miembro  ☐ Sociedad anónima tipo C

☐ Sociedad anónima tipo S  ☐ Sociedad colectiva  ☐ Fideicomiso/caudal hereditario

☐ Cía. de responsabilidad limitada (*LLC*). Anote la clasificación tributaria (C=Soc. anónima tipo C, S=Soc. anónima tipo S, P=Soc. colectiva) ▶

**Nota:** Marque el encasillado correspondiente en la línea anterior de la clasificación tributaria de la *LLC* de un solo miembro. No marque *LLC* si la *LLC* está clasificada como una de un solo miembro que no es considerada separada de su dueño, a menos que el dueño sea otra *LLC* que **no** es considerada separada de su dueño para propósitos tributarios federales estadounidenses. De lo contrario, vea las instrucciones en la página **3**.

☐ Otro (vea las instrucciones) ▶

**4** Exenciones (los códigos aplican solo a ciertas entidades, no a individuos; vea las instrucciones en la página **4**):

Código de beneficiario exento (si alguno)

Código para la exención de la declaración conforme a *FATCA* (si alguno)

*(aplica a las cuentas mantenidas fuera de los EE.UU.)*

**5** Dirección (número, calle y número de apartamento o de suite). Vea las instrucciones.

**6** Ciudad, estado y código postal (*ZIP*)

Nombre y dirección del solicitante (opcional)

**7** Anote el (los) número(s) de cuenta(s) aquí (opcional)

## Parte I  Número de identificación del contribuyente (TIN)

Anote su número de identificación del contribuyente (*TIN*, por sus siglas en inglés) en el encasillado correspondiente. El *TIN* tiene que concordar con el nombre provisto en la línea **1** para evitar la retención adicional del impuesto. Para los individuos, este es, por lo general, su número de Seguro Social (*SSN*, por sus siglas en inglés). Sin embargo, para un extranjero residente, empresario por cuenta propia o entidad no considerada como separada de su dueño, vea las instrucciones para la Parte I, más adelante. Para otras entidades, es su número de identificación del empleador (*EIN*, por sus siglas en inglés). Si no tiene un número, vea **Cómo obtener un TIN**, más adelante.
**Nota:** Si la cuenta está a nombre de más de una persona, vea las instrucciones para la línea **1**. Vea también **Nombre y número que se le debe dar al solicitante** para recibir asesoramiento sobre cuál número debe anotar.

**Número de Seguro Social**

☐☐☐ – ☐☐ – ☐☐☐☐

o

**Número de identificación del empleador**

☐☐ – ☐☐☐☐☐☐☐

## Parte II  Certificación

Bajo pena de perjurio, yo declaro que:

1. El número que aparece en este formulario es mi número de identificación de contribuyente correcto (o estoy esperando que me asignen un número) y

2. No estoy sujeto a la retención adicional de impuestos porque: (a) estoy exento de la retención adicional o (b) no he sido notificado por el Servicio de Impuestos Internos (*IRS*, por sus siglas en inglés) de que estoy sujeto a la retención adicional de impuestos como resultado de no declarar todos los intereses o dividendos o (c) el *IRS* me ha notificado que ya no estoy sujeto a la retención adicional y

3. Soy ciudadano de los EE.UU. u otra persona de los EE.UU. (definido después) y

4. El (Los) código(s) de la *Foreign Account Tax Compliance Act* (Ley de Cumplimiento Tributario para Cuentas Extranjeras o *FATCA*, por sus siglas en inglés) anotado(s) en este formulario (si alguno) indicando que estoy exento de declarar conforme a *FATCA* es el (son los) correcto(s).

**Instrucciones para la certificación.** Tiene que tachar la partida **2** anterior si el *IRS* le ha notificado que usted en estos momentos está sujeto a la retención adicional de impuestos porque no declaró todos los intereses y dividendos en su declaración de impuestos. Para las transacciones de bienes inmuebles, la partida **2** no aplica. Para los intereses hipotecarios pagados, la adquisición o abandono de bienes asegurados, la cancelación de deudas, las contribuciones a un arreglo de jubilación individual (*IRA*, por sus siglas en inglés) y, por lo general, los pagos que no sean intereses y dividendos, no se le require firmar la certificación pero tiene que proveer su *TIN* correcto. Vea las instrucciones para la Parte II, más adelante.

**Firme Aquí**

Firma de la persona de los EE.UU. ▶

Fecha ▶

# Instrucciones Generales

Las secciones a las cuales se hace referencia son del Código Federal de Impuestos Internos, a menos que se indique de otra manera.

**Acontecimientos futuros.** Si desea obtener información sobre más recientes acontecimientos que afectan al Formulario W-9(SP) y sus instrucciones, tales como legislación promulgada después de que estos se han publicado, visite *www.irs.gov/FormW9SP*.

## Propósito del formulario

Una persona o entidad (nombrada en el Formulario W-9(SP)) a quien se le require presentar una declaración informativa ante el *IRS* tiene que obtener su *TIN* correcto, el cual puede ser su *SSN*, número de identificación del contribuyente (*ITIN*, por sus siglas en inglés), número de identificación del contribuyente para adopción (*ATIN*, por sus siglas en inglés) o *EIN*, para declarar en una declaración informativa la cantidad pagada a usted u otra cantidad declarada en una declaración informativa. Ejemplos de declaraciones informativas incluyen, pero no se limitan a, los siguientes:

Decoded IMb : 00708206150000000000098111 9845

Do not modify the size or change the placement of either the FIM or IMb.

QBRM pieces that are non-automation compatible and/or contain the incorrect ZIP+4 code are

ineligible for QBRM prices and will be charged the non-QBRM High Volume postage and fees.

Mailpiece Size : (#9) 3-7/8x8-7/8 Letter



# BUSINESS REPLY MAIL

FIRST-CLASS MAIL    PERMIT NO. 985    SEATTLE, WA

POSTAGE WILL BE PAID BY ADDRESSEE

BARRIOS ET AL. V. CITY OF CHICAGO

C/O JND LEGAL ADMINISTRATION

P.O. BOX 91209

SEATTLE WA 98111-9845



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

# KEOUGH EXHIBIT B –

## Published Notices in 15-cv-2648

Case: 1:15-cv-02648 Document #: 184-2 Filed: 11/19/20 Page 62 of 64 PageID #:2435

**LEGAL NOTICE**

# SUMMARY NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

## *Barrios, et al. v. The City of Chicago*

Case No. 15-cv-2648 (N.D. Ill.) (J. Gottschall)

You may be a member of the Settlement Class if you owned one of the 356 vehicles that were impounded by the City of Chicago under Chicago Municipal Code § 7-24-225 for a State of Illinois drug related offense where the seizure did not result in forfeiture of the vehicle and the City of Chicago initiated contact with your finance company (lienholder) or lessor of the vehicle and demanded that the company take possession of the vehicle, during the period of March 28, 2013 through August 1, 2015, and as a result: (1) you were permanently deprived of your vehicle due to the lienholder taking possession of your vehicle; or (2) you were temporarily deprived of the use and possession of your vehicle. As a member of the settlement class, you may be entitled to a payment up to the fair market value of your vehicle at the time it was seized, provided you file a timely claim in accordance with this notice.

You can determine if you are one of the persons eligible under the above definition by seeing if your name appears on the list of "owners" at www.impoundclass.com/Owners.

PLEASE READ THIS NOTICE. IT DESCRIBES YOUR RIGHTS WITH RESPECT TO THE SETTLEMENT OF A LAWSUIT.

If you are a class member, you can: (1) participate in the settlement; (2) exclude yourself from the settlement; (3) object to the settlement; or (4) enter an appearance in the lawsuit, either by yourself or through a lawyer. To exercise any of these options, you must take certain actions immediately.

To participate in the settlement, you must submit a claim form, which you can obtain by requesting one from JND Legal Administration. You must completely fill out the claim form, which is subject to verification, and affirm under penalty of perjury that you are a class member who is entitled to take part in the settlement. In some instances, you may be required to supply supporting documentation. Claim forms must be mailed to the address listed on the form and received by the Claims Administrator no later than November 18, 2020. A claim that is not received by November 18, 2020 will not be considered. Each class member may submit only one claim form.

If you want to be excluded from the settlement, object to the settlement or enter an appearance in the lawsuit, you can obtain the instructions for doing so from the Settlement Claims Administrator, and must comply with the instructions on or before November 18, 2020. You must request exclusion from the class, file your objection to the settlement or have your attorney file an appearance in the case no later than November 18, 2020. All documents are considered filed when they are received by the Claims Administrator or the Clerk of the Court. Requests for exclusion that are received after November 18, 2020 will not be considered.

If you do nothing, you cannot participate in the settlement or sue Defendant on your own.

A hearing on the fairness of the settlement is set for December 18, 2020, at 9:30 a.m. You may attend the hearing by telephone, but are not required to do so to participate in the settlement.

You can obtain a more complete description of the settlement by reviewing the file for this case at the Office of the Clerk of the Court, Dirksen Federal Courthouse, 219 South Dearborn Street, 20th Floor, Chicago, Illinois or by contacting class counsel. Further information is also located at the following website: www.impoundclass.com. DO NOT CONTACT THE JUDGE OR HER STAFF.

**www.ImpoundClass.com**

## Storage - Legal

Extra Space Storage will hold a public auction to sell personal property belonging to those individuals listed below at the location indicated:

**#0719 3481 Mall Loop Dr, Joliet, IL 60431 (815)641-7469 on September 10, 2020 at 10:00am:** Melissa Rehbock 313; Paulene Reese 60.
**#1104 175 W 162nd St, South Holland, IL 60473 (708)921-8340 on September 10, 2020 at 10:30am:** Naiquille Eady 19; Dominique Adams 213; Tenika Sturkey 270; Ciara Skinner 365; Dominque Cunningham 466; Tiffani Knight 484; William Tyler Jr 512; Delisa Collins 76.
**#1108 1812 N. Larkin Ave., Crest Hill, IL 60403 (815)725-1105 on September 10, 2020 at 11:00am:** Oscar Miranda 257; Cesar Valle 260; James Law 498; Kelly Schmidt 583.
**#1811 16869 Kilbourne St, Country Club Hills, IL 60478 (312)505-9095 on September 10, 2020 at 1:00pm:** Corey C Klip 337.
**#7082 3940 E 106th St, Chicago, IL 60617 (773)966-0784 on September 10, 2020 at 1:30pm:** Beatrice Johnson 1132; Juan Laureano Medina 3144.
**#8731 3657 147th St, Midlothian, IL 60445 (708)446-9341 on September 10, 2020 at 3:00pm:** Armelda E Byrd 1080; Latonya Wright 3121; Christina Broughton 4001; Richard A Leggett 4157.
**#8819 3914 W 111th St, Chicago, IL 60655 (708)300-9509 on September 10, 2020 at 4:00pm:** Nisha Sanders 1073; Kimberly Kilpatrick 2034; Arianna Cunningham 2079.
**#8969 515 W Lincoln Hwy, Chicago Heights, IL 60411 (708)733-5070 on September 10, 2020 at 5:00pm:** Joseph Brown 3163; Eric MCgrew (Eric McGrew) 4027; Theresa Book-er 5015; Atlas Brown 7043; Maya Romine 7057; William Hunt 8044; Buhika Kayengo 8075.

The auction will be listed and advertised on www. storagetreasures.com. Purchases must be made with cash only and paid at the above referenced facility in order to complete the transaction.? Extra Space Storage may refuse any bid and may rescind any purchase up until the winning bidder takes possession of the personal property.
8/26, 9/2/2020   #1112684

---

Extra Space Storage will hold a public auction to sell personal property belonging to those individuals listed below at the location indicated:

**#1809 7125 W Gunnison St. Harwood Heights, IL 60706 (773)318-3512 on September 17, 2020 at 10:00am:** Christina Fejedelem 1233; Alize Aviles 1678.
**#8381 4995 N. Elston Ave, Chicago, IL 60630 (773)481-2630 on September 17, 2020 at 10:30am:** Michael A Herrera 2175; Bran Reyes Baltazar 2198.
**#8521 6500 W Dakin St. Chicago, IL 60634 (708)215-0279 on September 17, 2020 at 11:00am:** Martha Hoyos B2145; Jan Ulery A2190.
**#8710 1944 N Narragansett Ave. Chicago, IL 60639 (312)720-3702 on September 17, 2020 at 12:00pm:** Sean Davis 1281; Lisa Jackson 2220.
**#8829 1400 N Cicero Ave Chicago, IL 60651 (773)832-7809 on September 17, 2020 at 12:30pm:** Voella Campbell 1002; Jose M. Carrasquillo 1169; Algea Purches 1194; Evelynn Diming 1215; Linda Ann Johnson 1334; Victoria L House 1425; Johnica N. Jones 2082; Jimmydale Cole 5011.
**#1873 160 W Industrial Dr Elmhurst, IL 60126 (331)303-8282 on September 17, 2020 at 1:00pm:** Sharon Venzor 1256.
**#0685 2100 W Fullerton Ave Chicago, IL 60647 (773)326-7349 on September 17, 2020 at 2:00pm:** Fadila Njoya 352; Jacob Futran 511.
**#0728 4400 W Addison St Chicago, IL 60641 (773)326-9090 on September 17, 2020 at 2:30pm:** Jose A Chavarin 435; Omar Valenzuela 453; Patricia S Renteria 475; Gerald Beno II 701; Damaris Osuna 721; Javier Cambray 742; James E Kline 774; Cynthia Helene Harkala 913; Kevin Joseph Bourke 971.
**#1229 4455 W Montrose Ave Chicago, IL 60641 (773)256-7032 on September 17, 2020 at 3:00pm:** Carlos Monzon 4056.
**#7011 1840 N Clybourn Ave Chicago, IL 60614 (773)832-7779 on September 17, 2020 at 4:00pm:** Robert P Crisp 3211; Patagonia Brooks Scott 3334; Erica Hughes 3700A; Charles Whittaker 4243; Charles Whittaker 4454.
**#7012 1030 W North Ave Chicago, IL 60642 (773)453-6555 on September 17, 2020 at 4:30pm:** Robert Woolridge 0209; B Gary Corbin 1164; B Gary Corbin 1214; Lashondrea Arnold 4171; Cary Northup 4206.

The auction will be listed and advertised on www. storagetreasures.com. Purchases must be made with cash only and paid at the above referenced facility in order to complete the transaction. Extra Space Storage may refuse any bid and may rescind any purchase up until the winning bidder takes possession of the personal property.
9/2, 9/9/2020   #1112986



# YOUR CAR DESERVES A GREAT NEW HOME.

## SAVE 20% ON YOUR CAR SALES ADS WHEN YOU LIST YOUR VEHICLE TODAY.

Learn more and book your spot by contacting callcenter@ suntimes.com or 312-321-2345.

CS*T

please recycle this paper

**Russo, Patricia A.**

Patricia A. Russo, nee Klein, age 85, beloved wife of the late Raymond, Sr.; loving mother of Patricia (Keith) Kolar, Cynthia (David) Quinn and the late Raymond, Jr.; cherished grandmother of Jeff (Megan Taylor Noe ) Kolar and Jon and Matthew Quinn; dear sister of Paul (Sharon) Klein and the late Joyce Martens; also nieces and nephews. In lieu flowers donation to the Alzheimer's Association Appreciated. Int. Private. Arrangements by **Modell Funeral Home**, Darien.



*Sign Guestbook at chicagotribune.com/obituaries*

**Tobin S.J., Rev.Thomas H**



Fr. Thomas H. Tobin, S.J., 74, of Chicago, IL, passed away on Sunday, August 30th after a brief illness. Tom was born on November 8, 1945 in Evanston, Illinois. Before entering the Jesuits, he graduated from Quigley Seminary South in Chicago and studied for two years at Niles College Seminary. Tom entered the Society of Jesus on August 12, 1964 at Milford, Ohio, was ordained a priest on June 7, 1973, and professed final vows on November 1, 1992. Tom earned a BLitt in classical languages and English literature from Xavier University (1967); an MA in theology from Loyola University Chicago (1973); and a PhD in New Testament and Christian Origins from Harvard University (1980). After earning his PhD, Tom spent forty years teaching theology (including New Testament and Early Christianity) at Loyola University Chicago. In Spring 2020, Tom retired from Loyola University to devote more of his time to research and writing. The visitation will take place at Madonna della Strada Chapel at Loyola University Chicago on September 3 from 3 – 4 pm and, besides masks and social-distancing, pre-registration is required. (https://signup.com/client/invitation2/secure/1107019586618230031/false#/invitation). Due to Covid-19 restrictions, the Mass of Christian Burial will not be open to the public but will be livestreamed on September 3 at 5 pm at https://youtu.be/9rLDdSuPOOE.



*Sign Guestbook at chicagotribune.com/obituaries*

**Veneris, Una**

Una Veneris, nee Stockman, age 97, passed away peacefully at home September 1, 2020 surrounded by her daughters. Beloved wife for 37 years to the late Nick Veneris (1984). Loving mother of Diane Wiegman, Barbara (John) Stewart, Susan (John) Woodyatt and the late John (Dee) Veneris. Cherished grandmother of Eric (Amy), Andrew (Rebecca) and Matthew (Rachel) Wiegman; David (Karen) Stewart and Joy (Eric Anderson); Andrea (John Paul) Uranowski, John Woodyatt and Bethany (Mike) Dombrow; Nicholas (Dr. Jennifer) and Anthony (Amanda) Veneris. Dearest great-grandmother of nine and great-great-grandmother of three. Dear sister of the late Dorothy Stockman and Gordon (late Carolyn) Stockman. Graduate of Chicago Teachers College. Una worked many years at Oak Lawn Public Library and was an avid reader. She also volunteered at Christ Hospital. Long-time member of Elim Baptist Church and member of Calvary Church of Orland Park, IL. Visitation Friday, September 4, 2020 at **Colonial Chapel**, 15525 S. 73rd Ave. (155th/Wheeler Dr. & Harlem) Orland Park, IL from 9:30 a.m. - 11:00 a.m. with a Funeral Service to follow at 11:00 a.m. To uphold safety guidelines, all guests are asked to wear a mask and respect social distancing requirements. Interment Oak Hill Cemetery, Chicago, IL. In lieu of flowers, memorials to Calvary Church of Orland Park, 16100 104th Ave., Orland Park, IL 60467 are appreciated. Express your thoughts and condolences at colonialchapel.com 708-532-5400



**COLONIAL CHAPEL**
FAMILY OWNED FUNERAL HOME
PRIVATE ON-SITE CREMATORY

*Sign Guestbook at chicagotribune.com/obituaries*



**Every life story deserves to be told.**

Share your loved one's story at
placeanad.chicagotribune.com

**Chicago Tribune**
Brought to you by Legacy.com®



**Send Sympathy**

**Phillip's**
FLOWERS · GIFTS

Phillips
Flowers.com

Call 1.800.356.7257
Chicagowide & Nationwide Delivery



**Every life story deserves to be told.**

Share your loved one's story at
placeanad.chicagotribune.com

**Chicago Tribune**

Brought to you by Legacy.com®

---

**LEGAL NOTICE**

## SUMMARY NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Barrios, et al. v. The City of Chicago*
Case No. 15-cv-2648 (N.D. Ill.) (J. Gottschall)

You may be a member of the Settlement Class if you owned one of the 356 vehicles that were impounded by the City of Chicago under Chicago Municipal Code § 7-24-225 for a State of Illinois drug related offense where the seizure did not result in forfeiture of the vehicle and the City of Chicago initiated contact with your finance company (lienholder) or lessor of the vehicle and demanded that the company take possession of the vehicle, during the period of March 28, 2013 through August 1, 2015, and as a result: (1) you were permanently deprived of your vehicle due to the lienholder taking possession of your vehicle; or (2) you were temporarily deprived of the use and possession of your vehicle. As a member of the settlement class, you may be entitled to a payment up to the fair market value of your vehicle at the time it was seized, provided you file a timely claim in accordance with this notice.

You can determine if you are one of the persons eligible under the above definition by seeing if your name appears on the list of "owners" at www.impoundclass.com/Owners.

**PLEASE READ THIS NOTICE. IT DESCRIBES YOUR RIGHTS WITH RESPECT TO THE SETTLEMENT OF A LAWSUIT.**

If you are a class member, you can: (1) participate in the settlement; (2) exclude yourself from the settlement; (3) object to the settlement; or (4) enter an appearance in the lawsuit, either by yourself or through a lawyer. To exercise any of these options, you must take certain actions immediately.

To participate in the settlement, you must submit a claim form, which you can obtain by requesting one from JND Legal Administration. You must completely fill out the claim form, which is subject to verification, and affirm under penalty of perjury that you are a class member who is entitled to take part in the settlement. In some instances, you may be required to supply supporting documentation. Claim forms must be mailed to the address listed on the form and received by the Claims Administrator no later than November 18, 2020. A claim that is not received by November 18, 2020 will not be considered. Each class member may submit only one claim form.

If you want to be excluded from the settlement, object to the settlement or enter an appearance in the lawsuit, you can obtain the instructions for doing so from the Settlement Claims Administrator, and must comply with the instructions on or before November 18, 2020. You must request exclusion from the class, file your objection to the settlement or have your attorney file an appearance in the case no later than November 18, 2020. All documents are considered filed when they are received by the Claims Administrator or the Clerk of the Court. Requests for exclusion that are received after November 18, 2020 will not be considered.

If you do nothing, you cannot participate in the settlement or sue Defendant on your own.

A hearing on the fairness of the settlement is set for December 18, 2020, at 9:30 a.m. You may attend the hearing by telephone, but are not required to do so to participate in the settlement.

You can obtain a more complete description of the settlement by reviewing the file for this case at the Office of the Clerk of the Court, Dirksen Federal Courthouse, 219 South Dearborn Street, 20th Floor, Chicago, Illinois or by contacting class counsel. Further information is also located at the following website: www.impoundclass.com. **DO NOT CONTACT THE JUDGE OR HER STAFF.**

**www.ImpoundClass.com**



tribune publishing
recruitment services

# YOUR PERFECT JOB IS WAITING

Stop wasting time searching for jobs. Find the right jobs with tribune publishing recruitment services.

We work hard to make your job search easy. With our expansive network of distinguished employers from coast to coast and advanced job matching technology, you'll find opportunities that match your skills, your personality and your life.

**Search jobs. Post your resume. Stand out from the crowd.**

**chicagotribune.com/jobs**





DOMINGO 6 DE SEPTIEMBRE DE 2020 **La Raza** | 9

## AVISO LEGAL

### AVISO RESUMIDO DE PROPUESTA DE CONCILIACIÓN DE DEMANDA COLECTIVA

#### *Barrios, et al. v. The City of Chicago*
Caso n.º 15-cv-2648 (N.D. Ill.) (J. Gottschall)

Usted puede ser miembro del Grupo de la conciliación si era propietario de uno de los 356 vehículos que fueron incautados por la Ciudad de Chicago en virtud del art. 7-24-225 del Código Municipal de Chicago por un delito vinculado con drogas en el estado de Illinois, en cuyo caso, la retención no dio lugar al decomiso del vehículo y la Ciudad de Chicago inició un contacto con la compañía financiera (acreedor prendario) o el arrendador del vehículo y exigió a la compañía que tomara posesión del vehículo, durante el período comprendido entre el 28 de marzo de 2013 y el 1 de agosto de 2015 y, como consecuencia de ello: (1) se lo privó de forma permanente de su vehículo debido a que el acreedor prendario tomó posesión de su vehículo o (2) se lo privó de manera temporal del uso y de la posesión de su vehículo. Como miembro del Grupo de la conciliación, es posible que tenga derecho a recibir un pago que podría llegar, como máximo, al valor de mercado justo de su vehículo al momento en que se retuvo, siempre que presente su reclamo oportuno de conformidad con este aviso.

**Usted puede determinar si es una de las personas elegibles en virtud de la definición anterior al ver si su nombre aparece en la lista de "propietarios" en www.impoundclass.com/Owners.**

**SÍRVASE LEER ESTE AVISO. ESTE DESCRIBE SUS DERECHOS CON RESPECTO A LA CONCILIACIÓN DE UNA DEMANDA.**

Si fuese miembro del grupo, puede hacer lo siguiente: (1) participar en la conciliación; (2) excluirse de la conciliación; (3) objetar la conciliación o (4) registrar su comparecencia en el litigio, ya sea por sí mismo o a través de un abogado. **Para ejercer cualquiera de estas opciones, debe tomar algunas medidas de inmediato.**

Para participar en la conciliación debe enviar un formulario de reclamo, el cual puede obtener al solicitarlo a JND Legal Administration. Debe completar en su totalidad el formulario de reclamo, que está sujeto a verificación, y afirmar bajo pena de perjurio que es miembro del grupo y que tiene derecho a formar parte de la conciliación. En algunos casos, es posible que deba suministrar documentación de respaldo. Los formularios de reclamo deben enviarse por correo a la dirección indicada en el formulario y ser recibido por el Administrador de reclamos a más tardar el 18 de noviembre de 2020. Los reclamos que no se reciban a más tardar el 18 de noviembre de 2020 no se considerarán. Cada miembro del grupo solo puede enviar un formulario de reclamo.

Si desea que se le excluya de la conciliación, objetar la conciliación o registrar una comparecencia en el litigio, puede solicitar las instrucciones para hacerlo al Administrador de reclamos de la conciliación y debe cumplir con las instrucciones a más tardar el 18 de noviembre de 2020. Debe solicitar la exclusión del grupo, registrar su objeción a la conciliación o pedir a su abogado que registre una comparecencia en el caso a más tardar el 18 de noviembre de 2020. Se considerará que los documentos se han registrado cuando el Administrador de reclamos o el Secretario del tribunal los hayan recibido. Las solicitudes de exclusión que se reciban después del 18 de noviembre de 2020 no se considerarán.

Si no hiciera nada, no podrá participar en la conciliación ni demandar a la parte Demandada por su propia cuenta.

Se fijó una audiencia sobre la imparcialidad de la conciliación a realizarse el 18 de diciembre de 2020 a las 9:30 a. m. Puede asistir a la audiencia por teléfono, pero no está obligado a hacerlo para participar en la conciliación.

Puede obtener una descripción más completa de la conciliación al revisar el expediente para este caso en el despacho del Secretario del Tribunal ubicado en Dirksen Federal Courthouse, 219 South Dearborn Street, 20th Floor, Chicago, Illinois o al comunicarse con los abogados del grupo. En el siguiente sitio web encontrará más información: www.impoundclass.com. **NO SE COMUNIQUE CON LA JUEZA O SU PERSONAL.**

714-88818-1

### www.ImpoundClass.com

