**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Manuel Barrios, Brandon Fuller, and | ) | |
| Savannah Washington individually and as | ) | No.: 15 cv 2648 |
| representatives of all similarly situated persons, | ) | |
| | ) | The Honorable Joan B. Gottschall |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Chicago, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR ATTORNEY'S FEES, COSTS AND SERVICE AWARDS**

Plaintiffs and Named Class Representatives, MANUEL BARRIOS, BRANDON

FULLER, and SAVANNAH WASHINGTON, by counsel, Edward R. Moor and Paul J. Lytle,

respectfully state in support of their Motion for an award of attorney's fees, costs and service

awards as follows:

**I.     INTRODUCTION**

On June 9, 2020, this Court entered an order granting preliminary approval to the proposed

settlement of this class action. (Dkt. 172).   The settlement creates a $4,950,000.00 common fund

for the benefit of the settlement class.  The Defendant has deposited that full amount in an escrow

account.  The share of the fund that each class member is entitled to claim has been calculated with

precision using historical Kelley Blue Book data to determine the fair market value of their vehicle

on the date of each relevant impoundment, and those values have been supplied to the Claims

Administrator.  In order to claim their designated share of the common fund the class members

need only verify their identity on a claim form prepopulated with their name, address, and the

vehicle identification number ("VIN") of the automobile at issue, and confirm that they owned the

car identified by VIN, confirm that it was towed or impounded, confirm that they were unable to recover it, and confirm that they agree to release their claims. If the information on the prepopulated claim form is accurate, in other words, all a claimant needs to do to receive funds is list their name and address, sign the claim form, and return it.

Edward R. Moor and Paul J. Lytle were appointed as Settlement Class Counsel, and have handled the case since it was filed over five years ago. Counsel worked diligently to secure full relief from the Defendant. Counsel defended a motion to dismiss, issued discovery, and then worked for three years reviewing a mammoth production to determine which of 22,000 potential class members were subject to the due process violation that Plaintiffs put at issue in the suit. Though the Defendant had indicated that it wanted to settle after the motion to dismiss was determined, the process of determining who was in the class was extensively negotiated over many conferences that followed Plaintiffs' counsel's own extensive analysis of the documents. Further, though the Defendant's insistence that compensation be limited to persons who actually appeared to have suffered the due process violation in the relevant time period was reasonable, even though it triggered years of intense work, the Defendant's proposal as to what the class members should receive in compensation was not reasonable. The Defendant insisted that because the due process violation occurred in the context of automobiles that had been financed and were still under contract with a bank or finance company when impounded that each class member should therefore receive only the equity that they had in their vehicle as of the date of impoundment. Plaintiffs refused to agree, and when negotiations and the exchange of authority between the opposing sides did not work, Plaintiffs' counsel brought and prevailed on a motion for partial summary judgment. This Court ruled that the measure of compensation was not limited to the amount of equity that each class member had in their vehicle on the date of the impoundment and that, instead, they were

entitled to the fair market value of their vehicle on the date of the impoundment.  Then, in the settlement negotiations it was Plaintiffs' counsel, not the Defendant, that proposed, defended, and explained the proper measure of valuation, a measure that will give claimants a sum that reliably represents the fair market value of their vehicle in the Chicago area in the week of the impoundment.   Lastly, in the settlement negotiations, Plaintiffs' counsel obtained $4,950,000 which is an amount that represents 99.5% of the sum of the Kelley Blue Book "Fair Purchase Price" for the 356 vehicles in the Settlement Class.  This is a fair settlement, obtained after much effort, and obtained through arm's length negotiations.

Manual Barrios, Savannah Washington and Brandon Fuller were appointed as Class Representatives, have been the named Plaintiffs since the inception of the case, and have fulfilled the duties as Class Representatives.

Plaintiffs' Counsel now seeks an order approving the award of attorney's fees, costs, and service awards for the Class Representatives.   Plaintiffs' counsel seek 33.3% of the settlement fund after administration costs and the incentive awards are subtracted, seek $5,000 incentive payments to each named Plaintiff, and seek $34,454.82 in costs advanced to pursue the litigation.

## II.    PROCEDURAL HISTORY

This case, filed on March 28, 2015, resulted in the cessation by August 2015 of the challenged practice wherein the City of Chicago Police Department was alleged to have circumvented the statutory and municipal regulatory framework and, without notice, contacted the lienholders of various cars impounded under a drug-use related ordinance to coerce lienholders into repossessing vehicles.

After the complaint was filed, Plaintiffs' counsel defended a motion to dismiss which was denied and granted in part, and Plaintiffs repleaded.  When the Defendant then indicated that it

was interested in settling the case, the parties then began to engage in an extremely intensive discovery process that took over three years and involved the production and examination of over a million pages of documents in order to determine who was in the class. This discovery was necessary because the Defendant insisted upon only compensating persons who were subjected to the challenged practice. Plaintiffs loaded the data onto an ediscovery platform at their expense and worked diligently to identify all cases where the Defendant contacted the lienholder without notice to the vehicle owner and appeared to coerce the repossession of the drug-use related impounded vehicle. Plaintiffs' counsel spent many hours meeting with Defense counsel to review the documents and electronic summaries of the impoundments. Plaintiffs' counsel spent many hours testing the representations made about class size by analyzing sampling beyond the pool of VINs thought to have been exposed to the challenged practice and verified that after extensive investigation 356 automobiles had been subjected to the challenged practice between March 28, 2013 and August 1, 2015. (*See* Declaration of Paul J. Lytle in support of Motion for Preliminary Approval (Dkt. 164 at Page ID# 1541-1556 at ¶¶ 15-16 ("Lytle Dec."), and Declaration of Edward R. Moor in support of Motion for Preliminary Approval (Dkt. 164 at Page ID #1558-1564 at ¶¶ 7-8) ("Moor Dec.")).

Plaintiffs' counsel moved for partial summary judgment when the Defendant insisted that the extent of each class members' recovery should be limited to the equity that they had in their financed car, a position that would have greatly reduced the recovery of each class member, and obtained a ruling from this Court that each class member was entitled to the fair market value of their car on the date of the impoundment, plus interest. (Dkt. 120).

Plaintiffs' counsel retained an expert in automobile finance who was able to help Plaintiffs value each of the vehicles at issue in the week that they were impounded. Plaintiffs' counsel

worked with the expert extensively to determine the most reliable data source and method for valuing the fair market value of automobiles in the Chicago area on a specific date between March 28, 2013 and August 1, 2015. Counsel also worked with the expert to value the temporary deprivation that Manuel Barrios suffered. (*See* Lytle Dec. at ¶¶ 41-49; Moor Dec. at ¶ 10; and Declaration of Randall McCathren in support of Motion for Preliminary Approval (Dkt. 164 at Page ID# 1566-1573).

Plaintiffs then engaged in negotiation with the Defendants, including before Magistrate Judge Fuentes. While the Defendant refused to pay interest, and while the Defendant claimed that a result of the City's poor finances it had to insist that any unclaimed funds revert to the general treasury of the City of Chicago, Plaintiff's counsel did secure a settlement that amounted to 99.5% of the fair market value of the 356 impounded automobiles as of the date that each was impounded. 4,950,000 ÷ 4,973,946.80 is 99.5%. (*And see* Lytle Dec. at ¶ 49; and Dkt. 164 at Ex. F, Page ID #1574-1581).

The history of Settlement Class Counsel's work on this case is more fully set forth in the Motion for Preliminary Approval and the memorandum filed in support of that motion. (Dkt. 163 and 164).

### A. The Proposed Settlement

The proposed settlement is contained in the Second Amended Stipulation and Settlement Agreement. (Dkt. 170). The parties agreed that each member of the class must submit a claim form verifying their identity. (Dkt. 170, Second Amended Stipulation at § 5.2 and Stipulation Exhibit D, the Proposed Proof of Claim Form). The parties agreed that all fees, costs, administration costs and incentive payments would be deducted from the $4,950,000 settlement figure. (Dkt. 170, Second Amended Stipulation at Articles IV and XII). The parties agreed that

Plaintiffs' counsel would seek a fee of 33.3% plus costs from the common fund. *Id.* at Article XII. The settlement class is an opt out class (*Id.* at §§ 2.2 and 7.1) and the parties agreed that the City could terminate, at its discretion, the settlement if more than 5% of the class opted out. (*Id.* at Article XV). The parties agreed the Plaintiffs' Counsel would work with an agreed upon Settlement Administrator who will provide notice to the settlement class by mail, remailing to all who do not respond, and locating new addresses for all notices returned as undeliverable. (*Id.* at § 9.1). The Settlement Administrator was tasked with collecting, reviewing and reporting on all claims forms returned, *Id.* at Article V, and would fund and administer a Settlement Escrow Account once the settlement funds are distributed by the City. *Id.* at § 5.7. If the available funds, after the deduction of approved incentive fees, attorney fees and costs and administrative costs, are insufficient to give each claimant the fair market value of their car, then each claimant will receive a *pro rata* share of the available funds. *Id.* at §§ 1.3, 1.26, 4.4. Any remainder will revert to the City of Chicago. *Id.* at § 4.5. The deadline for claims and objections to the proposed settlement is 119 days after the entry of the Preliminary Approval Order, which equate to November 18, 2020 given that the City Council approved the settlement on July 22, 2020. The City will fund the Settlement Escrow Account 126 days after the entry of the Preliminary Approval Order, or on November 25, 2020, and payments to the claimants will be made 32 days after the entry of the Final Approval Order. *Id*. at §§ 5.2(b), 7.1.

The settlement agreement provides that in the event that after payment of approved attorney's fees and costs, and the costs of administration, the remaining funds available are less than it would take to pay each and every class member who submitted a claim the full fair market value of their loss, then the class members will be paid a *pro rata* amount of the remaining funds. If a *pro rata* distribution is needed, then the full value of each claimant's loss will be percentagized

6

against the available common fund and each claimant will receive that percentage of the available funds. (*Id.* at §§ 1.3 and 1.26). If, however, the total of the claimants' losses is less than the amount in escrow after the payment of approved fees and costs, and administrative costs, then each claimant will receive the full value of their loss and the remainder, if any, will revert to the Defendant.

This Court reviewed these terms and preliminarily approved them on June 29, 2020. (Dkt. 172).

### B.  Status of Claims Process

The Claims Administrator mailed notice, established the settlement website, published notice, and established a toll free phone number as directed by the Court. Plaintiff's counsel worked with the Claims Administrator before the Notice Packet was mailed to correct certain deficiencies. After the initial mailing, after the Claims Administrator remailed for Notice Packets returned as undeliverable, after a second mass mailing and the posting of the website, to date, 126 claims have been received, reviewed and accepted by the Claims Administrator. The work performed by Claims Administrator is described in Ex. A to the Memorandum in Support of the Motion for Final Approval, Keough Declaration. (Dkt. 182-2 at Page ID# 2108-2135) ("Keough Dec.").

## III.  ARGUMENT

### A.  Attorneys' Fee

F.R.Civ.P. 23(h) allows this Court to award a reasonable attorney's fee and nontaxable costs to class counsel, as authorized by law. While the Court has the discretion to use either the lode star method or the percentage of recovery method, *Leung v. XPO Logistics, Inc.* 326 F.R.D. 185, 199 (N.D. Ill. 2018) (*citing Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir.

1994)), the Seventh Circuit favors the percentage of the fee approach: "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).  Using the percentage of the fee approach is preferable to the lodestar method and "[c]ourts have noted the difficulties of applying a lodestar to class actions, where the normal practice is to 'negotiate [ ] a fee arrangement based on a percentage of the recovery." *Leung*, 326 F.R.D. at 199 (*quoting In re Capital One Tel. Consumer Prot. Act Litigation*, 80 F.Supp.3d 781, 795 (N.D. Ill. 2015)).  Further, "the use of a lodestar cross-check is no longer recommended in the Seventh Circuit" nor required. *Bell v. Pension Comm. of ATH Holding Co., LLC*, 115CV02062TWPMPB, 2019 WL 4193376, at *5 (S.D. Ind. Sept. 4, 2019) and *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015).

The Court is tasked with recreating the market rate to approximate the fees that the class members would have agreed to with counsel if negotiation has been feasible. *Leung*, 326 F.R.D. at 199.  One consideration is what the Named Plaintiffs agreed to at the initiation of the suit.  Here, the named Plaintiffs agreed to pay counsel one-third of the recovery plus costs.  (Group Exhibit A, contingency contract between Plaintiffs' counsel and Manual, Washington and Fuller).  Contingent fees in civil rights litigation are common for obvious reasons: civil rights litigants cannot often afford to pay an hourly fee.  Another consideration is what fees are awarded in similar cases.  A fee of 33 and 1/3rd percent is within the range of common fees in cases of this type.  *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005).   The median fee award in civil rights class actions was 30.3% between 2005 and 2007.  Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 811, 835 (2010) (*citied in Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013)).   Class

action fee awards of 33 and 1/3rd are common in the Seventh Circuit and Northern District as "[a] number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) *and Leung*, 326 F.R.D. at 201-202.

Here, there is a common fund: the Defendant agreed to pay $4,950,000, and it will pay that amount into an escrow account on November 25, 2020. (Dkt. 170 at § 3.1). Each class member's claim is known to the penny, and to claim the funds allocated to them all they need to do is verify their identity and that they owned the automobile described on the claim form by VIN, that it was impounded and that they did not recover it. (*See* Dkt. 164 at Ex. F PageID #1574, and Dkt. 170 at Ex. D PageID #:1992). In such a case, it is proper to calculate the attorney's fee on the total recovered even if not all class members claim their share. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745 (1980). In *Boeing*, the Supreme Court held that where a common fund was created in which each member of the class had an undisputed and mathematically ascertainable claim, that attorney's fees should be awarded on the entire recovery, even if less than all class members exercised their right to claim their share of the recovery and even if the unclaimed money was subject to a later (reversionary) claim by defendant Boeing. *Boeing*, 444 U.S. at 476-477 and 479-480, 100 S.Ct. at 748 and 749-750. Here, an award of attorney's fees on the total fund (minus administration costs as argued below) is appropriate, just as it was in *Boeing* and in *Cancel et al. v. City of Chicago, et al.*, 08-cv-951. (Ex. B, Final Judgment and Order, attached) (reversionary class action settlement with the City of Chicago in which a third of the gross settlement was awarded as an attorney's fee). This is true because here there is a true common fund. Defendant has not merely promised to pay up to a certain amount. It has agreed to deposit $4,950,000 in escrow before the Final Fairness Hearing, the class members are entitled

to their share, and the amount of each share is known with certainty. This case is similar to *Boeing* and the fee should be calculated on the gross settlement fund.

The gross settlement fund, however, should be reduced by administrative costs and incentive payments before the fee is calculated. *Leung*, 326 F.R.D. at 199 (*citing Redman* v. *Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Here, the Claims Administrator's administration costs are $46,679.24 to date and JND estimates that it will incur approximately an additional $13,464.00 through completion, so the administrative costs are likely to total $60,143.24. The incentive fees here, if awarded, total $15,000. (Keough Dec. at ¶ 21). Therefore, under *Pearson*, the ratio relevant to assessing the reasonableness of fees, Plaintiffs submit, is a third of $4,950,000 after the administrative costs and incentive fees are subtracted. This yields a net attorneys' fee in this case of $1,624,789.76 (.3333 * 4,874,856.76[1]) instead of a third of the gross settlement, which would have been $1,649,835.00 (.3333 * 4,950,000).

The payment of a third of the settlement proceeds was disclosed in the Motion for Preliminary Approval, and it was disclosed in the Notice of Proposed Settlement mailed to all class members. (*See* Keough Dec. at Ex. A, page 4 of the Notice). After that disclosure to all class members, no class member has yet objected to Class Counsel's request for a percentage fee award of 33.3%. (Keough Dec. at ¶ 20). The requested fee award therefore was approved by the named Class Representatives, preliminarily approved by this Court, and tacitly approved by all responding class members who have submitted claims. That is not surprising, since the fee award does not diminish payment to any class member. Because notice to the class was comprehensive and effective, a substantial number of class members filed timely claims. However, as with all

---

[1] Subtracting $15,000 in incentive fees and administration costs of $60,143.24 from $4,950,000 yields $4,874,856.76.

class actions, many class members did not file claims so the settlement fund will not be fully depleted. Money will remain in the settlement fund after all known claims are paid, as well as all fees and costs. That remainder reverts to the City. No class member is harmed by the reversion because the reversion funds are limited to what is left of the settlement fund, after every class member who made a claim is paid, after every cost is paid, and after every penny of the attorneys' fees are paid. The absence of any objection to the fee award is significant: "[t]he absence of meaningful class member objection to the proposed fee ordinarily supports the reasonableness of the request." Joseph P. Mclaughlin, *Mclaughlin On Class Actions: Law And Practice* § 6.23 at 107 (6th Ed. 2010) (*citing In re AT&T Corp*., 455 F.3d 160 (3rd Cir. 2006)).

The settlement was negotiated by experienced attorneys who took into account all of the vagaries of litigation and concluded that a 33.3% award was entirely reasonable. Counsel bore the risk of loss. The negotiations were conducted at arm's length: both the very lengthy negotiations over who was in the class, the negotiations over how to value the loss (which resulted in Plaintiffs moving for partial summary judgment rather than agreeing with the Defendant), and in the negotiations over the settlement amount. Plaintiffs' refer the Court to the Declarations counsel submitted in support of the Motion for Preliminary Approval where the qualifications of counsel and their handling of this case were disclosed. (Moor Dec. and Lytle Dec.).

**B. Incentive Awards**

As part of the settlement, Defendant has agreed to pay, subject to this Court's approval, a service award for each Named Plaintiff in recognition of the time and effort they have personally invested in this Action. Plaintiffs' Counsel seeks $5,000.00 for each of the Named Plaintiffs. Each of the Named Plaintiffs in this action have engaged in the litigation above and beyond the typical class representative. Each helped Plaintiffs' counsel frame the complaint. Each of the Named Plaintiffs responded to written discovery. The Named Plaintiffs also remained fully engaged in the litigation for

the purpose of being able to review and consent to settlement terms. Further, even though each of the Named Plaintiffs supports approval of the Settlement, payment of the service award is not contingent on such support.

Service awards are common in class action litigation such as this case, and they serve to encourage class members to serve as class representatives and to reward individual efforts that they take on behalf of the classes they seek to represent. Federal courts often exercise their discretion under Rule 23(d) and (e) to approve incentive awards to the named plaintiffs who prosecuted the action on the theory that there would be no class wide benefit absent the named plaintiffs' suit. Service awards compensating class representatives for work done on behalf of the Class attempt to account for financial or reputational risks associated with litigation, and promote the public policy of encouraging individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). Factors relevant to determining whether an incentive award is proper and the amount of such award "include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff has expended in pursuing the litigation." *Cook,* 142 F.3d at 1016. The requested service awards are reasonable and are well within the range of awards granted in this district and awards affirmed by the Seventh Circuit. *See, e.g., Cook,* 142 F.3d at 1004, 1016 (affirming service awards of $25,000 per class representative); *In re Southwest Airlines Voucher Litig.,* No. 11-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (affirming awards of $15,000 for each to two named plaintiffs); *Craftwood Lumber Co. v. Interline Brands, Inc.,* No. 11-cc-4492, 2015 WL 1399367, at *17-19 (N.D. Ill. March 23, 2015) (awarding $25,000 service award to plaintiff in TCPA case); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* No. 07 C 2898, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012) (awarding seven plaintiffs $25,000 each); *Spicer* v. *Chi. Bd Options Exch., Inc.,* 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000 awarded from settlement fund of $10 million); *see also Abbott*

v. *Lockheed Martin Corp.,* No. 06-CV-701-MJR-DGW, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (awarding $25,000 each to six of the seven class representatives); *Beesley* v. *Int'l Paper Co.,* 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) ("[a]wards of 15,000 to 425,000 for a Named Plaintiff and total Named Plaintiff awards of less than one percent of the fund well within the ranges that are typically awarded in comparable cases.")

For these reasons, Plaintiffs suggest that an award of $5,000 to each of the Named Plaintiffs is proper and appropriate.

### C.    Attorneys' Litigation Costs

Plaintiff's Counsel incurred costs in handling the litigation.  Total costs are $35,454.82 $22,697.29 was incurred by Edward R. Moor (Ex. C, Moor Cost Declaration), and $12,757.41 by Paul J. Lytle (Ex. D, Lytle Cost Declaration).

F.R.Civ.P. 23(h) allows a court approving a class settlement to "award reasonable ... nontaxable costs that are authorized by law or by the parties' agreement."  The Seventh Circuit instructs that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay."  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation).

Reimbursable expenses include many litigation expenses beyond those narrowly defined "costs" recoverable from an opposing party under Rule 54(d), such as: expert fees; travel; long distance and conference telephone; postage; delivery services; and computerized legal research. *See, e.g. Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("clear error" to deny reimbursement of LEXIS and Westlaw

expenses because "the arms' length market reimburses" such expenses); *Beesley v. Int'l Paper Co.*, 3:06-CV-703-DRH-CJP, 2014 WL 375432 at *3 (S.D. Ill. Jan. 31, 2014) (granting reimbursement from common fund for litigation expenses including "expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation."); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 910 (S.D. Ill. 2012) (granting reimbursement of expenses "of the type that are routinely reimbursed by paying clients," including "experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs"). The costs and expenses sought by Plaintiffs' Counsel in this action are detailed in Exhibits C and D. Class Counsel has incurred these expenses over the course of five years, but do not seek to compensate for the time value of this money or the costs associated with advancing these expenses. In light of the length and complexity of this litigation, Counsel's request for reimbursement of costs and expenses should be approved as fair and reasonable.

WHEREFORE, Plaintiffs MANUEL BARRIOS, BRANDON FULLER, and SAVANNAH WASHINGTON, by counsel, respectfully request that this Court direct the payment of attorney's fees of 33.3% of the gross settlement amount after administration costs and inventive awards are deducted, or $1,624,789.76; reimbursement of $35,454.82 in costs, and incentive awards in the amount of $5,000 each for each Class Representatives. Plaintiffs further pray for any other relief that this Court deems just.

Respectfully submitted,

/s/ Edward R. Moor
Edward R. Moor, ARDC#6205169
Moor Law Office, P.C.
One North LaSalle Street, Suite 600
Chicago, Illinois 60602
erm@moorlaw.net

Paul J. Lytle, ARDC #6311194
The Lytle Law Group LLC
1431 Opus Place, Suite 110
Downers Grove, IL 60515
paul@thelytlelawgroup.com

***Attorneys for Plaintiffs and the Class***

## Group EXHIBIT A –

## Barrios Contingency Contract and
## Washington and Fuller's Contingency Contract

## ATTORNEY-CLIENT AGREEMENT

Agreement made February 13, 2015, between Manual Barrios ("Client"), individually

and as a representative of a class of similarly situated and aggrieved persons ("Class"), and Moor

Law Office, P.C., and Paul J. Lytle (hereinafter "Attorneys").

      1.     Client employs Attorneys to investigate, negotiate and attempt to settle and/or

bring suit and try his claims for damages, exclusive of appeal absent a separate agreement,

against the City of Chicago arising out of the City of Chicago's wrongful deprivation of

property, specifically an automobile, without due process of law pursuant to a purported

impoundment and/or civil asset forfeiture claim. This claim will be handled on a contingent fee

basis as described below.

      2.     Client further agrees as follows:

        a.     To pay Attorneys a contingent fee as a court of competent jurisdiction may award in favor of Client/Class, or 33 and 1/3% of any/all sums recovered ("Attorney's Fees"). "Any/all sums recovered" refers to the total of any and all money recovered before the costs and expenses referenced in paragraph (2)(b), below are deducted.

        b.     To pay all costs and expenses incurred in the pursuit of Client's claims, including but not limited to filing fees or fees associated with service of process, expert fees, investigator fees, expenses of discovery proceedings, including but not limited to, costs of court reporters, transcripts, duplication of exhibits, and for all other such costs, including but unlimited to postage, telephone charges, fax and copy charges and costs associated with computer legal research services. Attorneys will advance such costs, and Client will reimburse Attorneys for such costs and expenses from any and all sums recovered.

        c.     Attorneys shall have an attorneys' lien on any sums recovered. "Any sums recovered" refers to the total of any and all money recovered before the costs and expenses referenced in paragraph (3)(b), above are deducted.

Moor Law Office, P.C. · One N. LaSalle Street · Suite 600 · Chicago · Illinois · 60602
312-726-6207 | 312-276-4457 (fax) | 312-371-0181 (cell) | erm@moorlaw.net

Law Office of Paul J. Lytle, LLC, 208 S. Jefferson Street, Suite 204, Chicago, Illinois 60661
312-509-2633 | paul@pauljlytlelaw.com               Page 1

3.      Client retains the right to terminate this Agreement and to direct Attorneys to terminate any claims being prosecuted on his behalf.  Client acknowledges that termination of claim may require the payment of costs to opposing party.  Client also acknowledges that if he terminates this Agreement without terminating any lawsuit then being prosecuted on his behalf, Attorneys will seek to withdraw from the lawsuit.  If the court refuses to permit Attorneys to withdraw from the lawsuit, then this Agreement will remain in effect.  Upon Client's termination for any reason, other than Attorneys' failure to perform their obligations to diligently investigate and prosecute any meritorious claims in a manner consistent with the Illinois Rules of Professional Conduct, before a recovery is received, then Client shall pay Attorneys an amount equal to the value of the services Attorney rendered to that date and reimburse them for all reasonable costs incurred.

4.      Edward R. Moor and Paul J. Lytle are acting as co-counsel in this matter.  They have advised Client that they are splitting the Attorney's Fee on a 50% basis.

5.      Attorneys may, from time to time and at their discretion, delegate work on and/or collaborate in this matter with attorneys not employed by Attorneys.  Any fees due Attorneys, pursuant to paragraph 2(a) herein, will be allocated among and divided between Attorneys and such other non-employee attorneys in proportion to the services performed and responsibility assumed by each and will not result in any additional fees being charged to Client.

6.      This Agreement represents the complete agreement of the parties in connection with this engagement to provide legal services.  There are no other Agreements.

Moor Law Office, P.C. · One N. LaSalle Street · Suite 600 · Chicago · Illinois · 60602
312-726-6207 | 312-276-4457 (fax) | 312-371-0181 (cell) | erm@moorlaw.net

Law Office of Paul J. Lytle, LLC, 208 S. Jefferson Street, Suite 204, Chicago, Illinois 60661
312-509-2633 | paul@pauljlytlelaw.com                                            Page 2

7.    In deciding to enter into this Agreement, the undersigneds have relied only upon the representations herein and no others.

8.    The parties agree that any dispute or controversy relating to the enforcement, application or interpretation of this Agreement will be governed by the laws of the State of Illinois, further agree that any  action relating to same will be brought only in the Circuit Court of Cook County, Illinois, and agree hereby to waive any objections to the personal jurisdiction of and venue in that court, and will waive service of process except by certified mail and that, in any such action.

In witness thereof the parties have executed this Agreement on February 13, 2015.

MOOR LAW OFFICE, P.C.                PAUL J. LYTLE


_____              _____
Edward R. Moor     Date:   2-13-15       Date: 2-13-15



MANUEL BARRIOS


_____
Date:   2-13-15

Moor Law Office, P.C. · One N. LaSalle Street · Suite 600 · Chicago · Illinois · 60602
312-726-6207 | 312-276-4457 (fax) | 312-371-0181 (cell) | erm@moorlaw.net

Law Office of Paul J. Lytle, LLC, 208 S. Jefferson Street, Suite 204, Chicago, Illinois 60661
312-509-2633 | paul@pauljlytlelaw.com                                Page 3

# ATTORNEY-CLIENT AGREEMENT

Agreement made June 4, 2015, between Brandon Fuller and Savannah Washington, 887 Fotis Drive, Apt. 205, DeKalb, Illinois 60115, ("Clients"), individually and as representatives of a class of similarly situated and aggrieved persons ("Class"), and Moor Law Office, P.C., and Paul J. Lytle (hereinafter "Attorneys").

1.      Clients employ Attorneys to investigate, negotiate and attempt to settle and/or bring suit and try their claims for damages, exclusive of appeal absent a separate agreement, against the City of Chicago arising out of the City of Chicago's wrongful deprivation of property, specifically an automobile(s), without due process of law pursuant to a purported impoundment and/or civil asset forfeiture claim. This claim will be handled on a contingent fee basis as described below.

2.      Clients further agree as follows:

      a.      To pay Attorneys a contingent fee as a court of competent jurisdiction may award in favor of Client/Class, or 33 and 1/3% of any/all sums recovered ("Attorney's Fees"). "Any/all sums recovered" refers to the total of any and all money recovered before the costs and expenses referenced in paragraph (2)(b), below are deducted.

      b.      To pay all costs and expenses incurred in the pursuit of Client's claims, including but not limited to filing fees or fees associated with service of process, expert fees, investigator fees, expenses of discovery proceedings, including but not limited to, costs of court reporters, transcripts, duplication of exhibits, and for all other such costs, including but unlimited to postage, telephone charges, fax and copy charges and costs associated with computer legal research services. Attorneys will advance such costs, and Client will reimburse Attorneys for such costs and expenses from any and all sums recovered.

      c.      Attorneys shall have an attorneys' lien on any sums recovered. "Any sums recovered" refers to the total of any and all money recovered before the costs and expenses referenced in paragraph (3)(b), above are deducted.

Moor Law Office, P.C. · One N. LaSalle Street · Suite 600 · Chicago · Illinois · 60602
312-726-6207 | 312-276-4457 (fax) | 312-371-0181 (cell) | erm@moorlaw.net

Law Office of Paul J. Lytle, LLC, 208 S. Jefferson Street, Suite 204, Chicago, Illinois 60661
312-509-2633 | paul@pauljlytlelaw.com          Page 1

3. Clients retain the right to terminate this Agreement and to direct Attorneys to terminate any claims being prosecuted on their behalf. Clients acknowledge that termination of claim may require the payment of costs to opposing party. Clients also acknowledge that if they terminate this Agreement without terminating any lawsuit then being prosecuted on their behalf, Attorneys may seek to withdraw from the lawsuit. If the court refuses to permit Attorneys to withdraw from the lawsuit, then this Agreement will remain in effect. Upon Clients' termination for any reason, other than Attorneys' failure to perform their obligations to diligently investigate and prosecute any meritorious claims in a manner consistent with the Illinois Rules of Professional Conduct, before a recovery is received, then Clients shall pay Attorneys an amount equal to the value of the services Attorneys rendered to that date and reimburse them for all reasonable costs incurred.

4. Edward R. Moor and Paul J. Lytle are acting as co-counsel in this matter. They have advised Client that they are splitting the Attorney's Fee on a 50% basis.

5. Attorneys may, from time to time and at their discretion, delegate work on and/or collaborate in this matter with attorneys not employed by Attorneys. Any fees due Attorneys, pursuant to paragraph 2(a) herein, will be allocated among and divided between Attorneys and such other non-employee attorneys in proportion to the services performed and responsibility assumed by each and will not result in any additional fees being charged to Client.

6. This Agreement represents the complete agreement of the parties in connection with this engagement to provide legal services. There are no other Agreements.

Moor Law Office, P.C. · One N. LaSalle Street · Suite 600 · Chicago · Illinois · 60602
312-726-6207 | 312-276-4457 (fax) | 312-371-0181 (cell) | erm@moorlaw.net

Law Office of Paul J. Lytle, LLC, 208 S. Jefferson Street, Suite 204, Chicago, Illinois 60661
312-509-2633 | paul@pauljlytlelaw.com                                    Page 2

7.      In deciding to enter into this Agreement, the undersigneds have relied only upon the representations herein and no others.

8.      The parties agree that any dispute or controversy relating to the enforcement, application or interpretation of this Agreement will be governed by the laws of the State of Illinois, further agree that any action relating to same will be brought only in the Circuit Court of Cook County, Illinois, and agree hereby to waive any objections to the personal jurisdiction of and venue in that court, and will waive service of process except by certified mail and that, in any such action.

In witness thereof the parties have executed this Agreement on February 13, 2015.

MOOR LAW OFFICE, P.C.                              PAUL J. LYTLE

Edward R. Moor      Date:   6-4-15                 Date: 6-4-15

BRANDON FULLER                                    SAVANNAH WASHINGTON

Date:   6-4-15                                    Date: 6-4-15

Moor Law Office, P.C. · One N. LaSalle Street · Suite 600 · Chicago · Illinois · 60602
312-726-6207 | 312-276-4457 (fax) | 312-371-0181 (cell) | erm@moorlaw.net

Law Office of Paul J. Lytle, LLC, 208 S. Jefferson Street, Suite 204, Chicago, Illinois 60661
312-509-2633 | paul@pauljlytlelaw.com                              Page 3

# EXHIBIT B –

## Final Judgment and Order in *Cancel et al. v. City of Chicago* 08-cv-951



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DISENIA CANCEL, ISMAEL CANCEL,  )
and VIVIAN JARRETT,  )
  )
Plaintiffs,  )
  )
vs.  )
  )
CITY OF CHICAGO, and JODY WEIS,  )
SUPERINTENDENT of POLICE,  )
  )
Defendants.  )

08 C 951
Judge Gary Feinerman

## FINAL JUDGMENT AND ORDER

Plaintiffs Disenia Cancel, Ismael Cancel, Vivian Jarrett, and Defendants City of Chicago and Jody Weis in his capacity as Superintendent of the Chicago Police Department, having filed their respective Motions for Final Approval of Class Action Settlement (collectively, the "Motions") seeking an order granting final approval of the proposed settlement of the Litigation ("Settlement"), in accordance with the Amended Stipulation and Agreement of Settlement ("Stipulation") entered into by the Parties;

Plaintiffs having also filed the Affidavit of the Claims Administrator ("FCI Affidavit"), the Affidavit of Computer Friendly Associates, and the Affidavit of Settlement Class Counsel;

Due and adequate notice having been given to the Settlement Class; and

The Court being otherwise advised;

After review and consideration of the Stipulation, the Motions, the FCI Affidavit, the Affidavit of Computer Friendly Associates, and the Affidavit of Settlement Class Counsel, all other pleadings filed with the Court and the Exhibits annexed thereto, any comments received regarding the proposed Settlement, answers to questions posed at the fairness hearing of September 22, 2010, and having reviewed the entire record in the Litigation and good cause

appearing, after due deliberation, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

      1.     The Court, for purposes of this Final Judgment and Order ("Order"), adopts all defined terms as set forth in the Stipulation.

      2.     The Court has jurisdiction over the subject matter of the Litigation, Plaintiffs, the Settlement Class Members, and Defendants.

      3.     The Court finds that the distribution of the Notice and Proof of Claim form, and publication of the Summary Notice of Proposed Class Action Settlement, as provided for in the Preliminary Approval Order, constituted the best notice practicable under the circumstances to apprise all Persons within the definition of the Settlement Class of the pendency of the Litigation and their rights in it, the terms of the proposed Settlement of the Litigation, and afforded Settlement Class Members with an opportunity to present their objections, if any, to the Settlement. The Court finds that the provision of notice to the Settlement Class Members fully met the requirements of Fed. R. Civ. P. 23, due process requirements of the United States Constitution, and any other applicable law.

      4.     The Court finds that all Persons within the definition of the Settlement Class have been adequately provided with an opportunity to remove themselves from the Settlement Class by executing and returning a "request for exclusion" in conformance with the terms of the Stipulation.

      5.     The Court provides final approval of the prior provisional certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of all persons who had a vehicle towed by order of a Chicago Police Department officer between February 14, 2003 and December 31, 2009, provided that (a) the vehicle was towed pursuant to 720 ILCS 5/36-1 *et seq.*, for investigation, or for alleged involvement in a hit and run offense; (b) the individual was not arrested for a criminal offense, other than a traffic offense, related to the impoundment of the vehicle; (c) towing and storage fees were assessed against the owner; and (d) the Sheriff or the

State's Attorney declined to file an Article 36 forfeiture action or the Chicago Police Department agreed to voluntarily return the vehicle. Expressly excluded from the Settlement Class are owners of vehicles that were seized for potential forfeiture pursuant to the Illinois Drug Asset Forfeiture Procedure Act, 725 ILCS 150/1 *et seq. See Alvarez v. Smith*, No. 06 C 6423 (N.D. Ill.) (which concerns claims by such owners of vehicles excluded from the Settlement Class). Pursuant to Fed. R. Civ. P. 23(b)(3), Disenia Cancel, Ismael Cancel and Vivian Jarrett are approved as Settlement Class Representatives.

6.      With respect to the Settlement Class, this Court expressly finds and concludes that the requirements of Fed. R. Civ. P. 23(b)(3) are satisfied as: (a) the Settlement Class Members are so numerous that joinder of all Settlement Class members in the Litigation is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the Settlement Class Representatives are typical of the claims of the Class; (d) the Settlement Class Representatives and their counsel have fairly and adequately represented and protected the interests of all the Settlement Class members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering:  (i) the interests of the Settlement Class Members in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by Settlement Class Members, (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the Litigation.

7.      The Court hereby de-certifies all other class certified in the Litigation, other than the Settlement Class.

8.      Based upon the record made at the September 22, 2010 fairness hearing, and further based upon the submission of the Parties, the Motions are granted.  This Court approves the Settlement as set forth in the Stipulation, each of the releases, and other terms as fair, reasonable, adequate, and in the best interests of the Settlement Class.  The Parties to the

3

Stipulation are therefore directed to consummate and perform its terms. In addition, the Court finds as follows:

      a.    The settlement recovery is commensurate, if not more so, than the strength of the Settlement Class's claims. Because the probable cause standard the City would have to meet is minimal, and because the majority of Settlement Class Members arguably waived any challenge to the City's hearing procedures by not requesting a hearing, the vast majority of Settlement Class Members (Plaintiffs estimate 75%, Defendants estimate 90%) would not obtain any recovery. The average possible recovery for each of the 14,830 Settlement Class Members is generously estimated to be $450, for a estimated total possible recovery of $6.674 million. The class settlement figure of $1.94 million exceeds both 25% (using Plaintiffs' estimate of the number of Settlement Class Members who could recover) and 10% (using Defendants' estimate) of the estimated total possible recovery. And the per-class member settlement figure of $160 well exceeds the product of the average possible per-class member recovery and the overall likelihood of success. Finally, the revised hearing process called for by the Settlement will benefit the estimated 400-500 Settlement Class Members whose vehicles are still in the City's possession by capping the charge at $375 and providing access to the revised hearing procedure.

      b.    Further litigation of the Settlement Class Members' claims would be complex (dispositive motion practice, expert practice, trial, determining which Settlement Class Members could actually recover), lengthy (at least two years), and expensive, and not at all certain to yield a positive result for the Settlement Class.

      c.    There is no indication of any collusion between class counsel and the class representatives, on the one hand, and Defendants, on the other. This matter has been vigorously and ably litigated by both sides.

      d.    Class counsel, experienced class action attorneys in this niche of the law, have expressed the view that the settlement terms are fair.

4

        e.      The Settlement Class Members, who received appropriate notice, have supported the Settlement. A total of 1954 Settlement Class Members submitted timely proof of claims, approximately 13% of the Settlement Class, a relatively high figure in a case where the class members must submit a claim form and where the class period dates back to 2003. Only a handful (54) of the Settlement Class Members opted out, and only ten of the opt-outs are individuals, with the remainder representing vehicles owned by Hertz Rent-A-Car. *See* Doc. 160, attached hereto. No Settlement Class Members has objected to the Settlement.

        f.      The stage the proceedings is highly appropriate for a class settlement – the parties have taken extensive discovery and litigated preliminary injunction issues, and thus have a good sense of the value of the case.

        g.      The attorney fee award – 33% of $1.94 million, or $646,667 – is reasonable. The 33% percentage figure is in line with contingency percentages in class action litigation. As noted above, class counsel litigated this matter ably and obtained an excellent result for the class. Had the lodestar method been used, it would have yielded $400,000-$500,000 in fees, which is comparable to the actual fee award. Finally, the fee award does not diminish the recovery of any Settlement Class Member.

        9.      In order to consummate the terms of the Stipulation, the Court hereby authorizes and directs the Claims Administrator to make the following payments from the Settlement Escrow Account in accordance with the timing set forth below:

5

| Payee | Amount | Purpose | Date |
|---|---|---|---|
| Law Offices of Thomas Peters, the Law Offices of Kevin Peters, the Law Offices of Mary DeSloover, and the Law Offices of Robert Cotter. | $735,961.07 | Attorneys' Fees, reimbursement of costs of administration of class action settlement | Within 15 days of entry of the Final Judgment and Order |
| Disenia Cancel | $10,000 | Incentive Payment | 31 days after entry of the Final Judgment and Order |
| Ismael Cancel | $5,000 | Incentive Payment | 31 days after entry of the Final Judgment and Order |
| Vivian Jarrett | $5,000 | Incentive Payment | 31 days after entry of the Final Judgment and Order |
| Claimants | $312,640 | Settlement for filing valid and timely Proof of Claim (1,954 x $160) | 31 days after entry of the Final Judgment and Order |
| The City of Chicago | $871,398.93 | Reversion of remaining funds. | 31 days after entry of the Final Judgment and Order |

10.     Except as to any individual claim of those Persons (identified in Doc. 160, attached hereto) who have validly and timely requested exclusion form the Settlement Class, the Litigation, and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice as to Plaintiffs and other Settlement Class Members.  The Parties are to bear their own costs, except as provided in the Stipulation.  By operation of the Final Judgment and Order and under the terms of the Stipulation and releases therein, it is intended to preclude, and shall preclude, Plaintiffs and all other Settlement Class Members from filing or pursuing any Released Claims under federal law or the law of any state.

11.     Plaintiffs and the Settlement Class Members are deemed to have, and by operation of the Final Judgment and Order shall have fully, finally, and forever released, relinquished and discharged all Released Claims against each and all of the Released Parties, whether or not such member of the Settlement Class executed or timely delivered the Proof of Claim.

6

12.     All Settlement Class Members are permanently barred and enjoined from instituting or prosecuting, in any capacity, any action or proceeding that involves or asserts any of the Released Claims.

13.     Only those Settlement Class Members who have filed valid and timely Proofs of Claim shall be entitled to receive a distribution from the Settlement Fund. Settlement Class Member Janet Barton is deemed to have filed a valid and timely Proof of Claim. The Proof of Claim and Release executed by the Settlement Class Members shall further release all Released Claims against the Released Parties. All Settlement Class Members shall be bound by the releases whether or not they submit a valid and timely Proof of Claim.

14.     Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants, or (ii) shall be offered in evidence by any Party for any purpose except as provided for in this paragraph. The Released Parties may file the Stipulation and/or the Final Judgment and Order in any other action that may be brought against them in order to support a defense based upon principals of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or any theory of claim preclusion or issue preclusion or similar defense. The Parties may file the Stipulation in any proceeding brought to enforce any of the terms or provision of the Stipulation.

15.     Only those Persons in the Settlement Class who validly filed Requests for Exclusion from the Settlement Class (identified in Doc. 160, attached hereto) shall not be bound by this Final Judgment and Order.

16.     Any order, objection to, or appeal from any order approving Settlement Class Counsel's Attorney's Fees or incentive payments to Plaintiffs shall in no way disturb or affect this Judgment and shall be considered separate from this Order.

7

17.     The Court finds that the amount paid and other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

18.     To the extent that final judgment has not been entered, it is expressly determined, within the meaning of Fed. R. Civ. P. 54(b), that there is no just reason for delay and the entry of this Judgment is hereby expressly directed.

Date:     October 21, 2010

Enter: _____
            Gary Feinerman, United States District Judge

8



EXHIBIT C Cancel v City of Chicago Requests for Exclusions

| NAME | NAME2 | ADDRESS | CITY | STATE | ZIP | INVNTOYNUM |
|---|---|---|---|---|---|---|
| WILLIAM BERNARD YOUNG | | 2112 28TH ST | ROCK ISLAND | IL | 61201-4622 | 439299 |
| BURNSIDE CHRISTIAN CHURCH | | 2088 E COUNTY ROAD 2110 | BURNSIDE | IL | 62330-4019 | 443589 |
| MELISSA CORDERO | | 2704 N MCVICKER AVE | CHICAGO | IL | 60639-1116 | 434689 |
| HUSSEIN ALI | | 3040 W AINSLIE ST | CHICAGO | IL | 60625-4147 | 440012 |
| ALAN KINSLER | | 4500 PRIDE CT | ROLLING MEADOWS | IL | 60008-1160 | 437769 |
| EVANGELLA VARGAS | | 2319 N NATCHEZ AVE | CHICAGO | IL | 60707-3427 | 430363-1 |
| JAMES AND NANCY KUEBLER | | 2306 E TUSCANY WAY | APPLETON | WI | 54913-6734 | 443279 |
| JOSE C. LOPEZ | | 2647 S KEDVALE AVE | CHICAGO | IL | 60623-4322 | 442042 |
| PETER CHOI | | 133 E CHEWINK CT | PALATINE | IL | 60067-3549 | 436796 |
| HERTZ VEHICLES | | 19025 MAPLEWOOD AVE | CLEVELAND | OH | 44135-2445 | 429666-1 |
| THE HERTZ CORP | | PO BOX 51428 | INDIANAPOLIS | IN | 46251-0428 | 431621-1 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 431910-1 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 432430 |
| HERTZ CORP | | 450 WILLIAM F MCCLELLAN HWY | BOSTON | MA | 02128-1144 | 411652-1 |
| HERTZ CORPORATION | | 1211 STATE ROAD 436 | CASSELBERRY | FL | 32707-6485 | 433468 |
| THE HERTZ CORPORATION | | 401 N STATE ST | CHICAGO | IL | 60654-4607 | 433866 |
| HERTZ VEHICLES LLC | | 19025 MAPLEWOOD AVE | CLEVELAND | OH | 44135-2445 | 433885 |
| HERTZ VEHICLES | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 434390 |
| HERTZ | | 5259 S ARCHER AVE | CHICAGO | IL | 60632-4731 | 435798 |
| HERTZ VEHICLES LL | | 900 DOREMUS AVE | NEWARK | NJ | 07114-3009 | 435798 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 437192 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 437817 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 439018 |
| HERTZ VEHICLES | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 439134 |
| HERTZ VEHICLES LLC | DET METRO ARPT BLDG B | 289 LUCAS DR | DETROIT | MI | 48242-1202 | 439366 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 439535 |
| HERTZ VEHICLES LLC | | PO BOX 55190 | PORTLAND | OR | 97238-5190 | 440050 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 440626 |
| HERTZ VEHICLES | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 440647 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 440639 |

09/16/10

| | | | | | | |
|---|---|---|---|---|---|---|
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 440784 |
| HERTZ RENT A CAR | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 442567 |
| HERTZ VEHICLES LLC. | | 1420 DAVERN ST STE 100 | SAINT PAUL | MN | 55116-3080 | 442616 |
| VEHICLES HERTZ | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 442665 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 443053 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 443300 |
| HERTZ VEHICLES LLC | CT SERV | 20 OAK HOLLOW ST STE 350 | SOUTHFIELD | MI | 48033-7465 | 443692 |
| HERTZ VEHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 443822 |
| HERTZ VEHICLES | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 444086 |
| HERTZ VHICLES LLC | | 2170 MANNHEIM RD | DES PLAINES | IL | 60018-2956 | 444717 |
| HERTZ RENTAL | | 7218 S WESTERN AVE | CHICAGO | IL | 60636-3637 | 445291 |
| HERTZ VEHICLES CORPORATION | | 7801 BUSSING DR | EVANSVILLE | IN | 47725-6728 | 445291 |
| HERTZ VEHICLES | O'HARE FIELD | 10000 BESSIE COLEMAN DR | CHICAGO | IL | 60666 | 430708 |
| HERTZ VEHICLES | | 10000 BESSIE COLEMAN DR | CHICAGO | IL | 60666 | 430833 |
| HERTZ VEHICLES | | 10000 BESSIE COLEMAN DR | CHICAGO | IL | 60666 | 431352 |
| HERTZ VEHICLES LLC | O'HARE FIELD | 10000 BESSIE COLEMAN DR | CHICAGO | IL | 60666 | 432730 |
| HERTZ VEHICLES LLC | O'HARE FIELD | 10000 BESSIE COLEMAN DR | CHICAGO | IL | 60666 | 430024-1 |
| HERTZ VEHICLES LLC | | 7477961 CT SRVCS20 OAK HOLW | SOUTHFIELD | MI | 48033 | 447622 |
| HERTZ VEHICLES | | 89 LUCAS DR | DETROIT | MI | 48242 | 445428 |
| HERTZ VEHICLES | | BWI AIRPORT | BALTIMORE | MD | 21240 | 430334 |
| HERTZ VEHICLE | | 2170 SOUTH MANNHEIM RD | DES PLAINES | IL | 60018 | 431837 |
| HERTZ RENT A CAR | | 2170 A MANNHEIM RD | DES PLAINES | IL | 60018 | 435828 |
| HERTZ VEHICLE | | PHILADELPHIA INTL AIPORT | PHILADELPHIA | PA | 19153 | 432638 |
| ROGER AND JEAN ZYLSTRA | | 6816 JOLIET RD APT 6 | INDIAN HEAD PARK | IL | 60525-9026 | 433849 |

# EXHIBIT C –

# Cost Declaration of Edward R. Moor

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Manuel Barrios, Brandon Fuller, and | ) | |
| Savannah Washington individually and as | ) | |
| representatives of all similarly situated persons, | ) | No.: 15 cv 2648 |
| | ) | |
| Plaintiffs, | ) | The Honorable Joan B. Gottschall |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Chicago, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**COST DECLARATION OF EDWARD R. MOOR**</u>

I, Edward R. Moor, under penalty of perjury, hereby declare and state as follows:

1.      I am a one of the counsel for Plaintiffs and the Class in the above captioned case.

2.      I respectfully submit this declaration in support of Plaintiff's Motion for Attorney's Fees. Costs and Service Awards. Except as otherwise noted, I have personal knowledge of the facts set forth herein, and could testify to them competently if called upon to do so.

3.      The attached report lists the costs I have incurred in the prosecution of this case. (Ex. A, attached).

4.      None of the costs listed are overhead costs.  The vast bulk of the charges are for the ediscovery processing and hosting services that NextPoint provided to Plaintiffs, a service that enabled us to review and analyze the almost one million documents produced in this case.  I shared the costs of the NextPoint hosting with my co-counsel Paul Lytle, and I am seeking reimbursement for those occasions that I personally paid a NextPoint invoice instead of Mr. Lytle.

5.      I used the Expert Institute to locate the expert in automobile finance that we retained in this case.

6.     The expert we retained was Randall McCathren, who also did business as "BLC Associates."  I paid some of his bills, and Mr. Lytle paid others.  I am only seeking reimbursement for the sums that I paid to Mr. McCathren.

7.     I am not seeking reimbursement for the taxi fee I incurred to travel to and from 3510 S. Michigan to serve the complaint on Gary McCarthy, so the total I am seeking reimbursement for is $22,697.29 (not $22,727.94).

8.     All of the costs that I seek reimbursement for were necessary and reasonable costs incurred in the litigation of this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

Edward R. Moor

Executed on November 19, 2020, in Chicago, Illinois.

# Moor Law Office, P.C.

## CLIENT COSTS ADVANCED REPORT

All Dates

| DATE | CUSTOMER | TRANSACTION TYPE | NUM | NAME | MEMO/DESCRIPTION | AMOUNT | BALANCE |
|------|----------|------------------|-----|------|------------------|--------|---------|
| Advanced Client Costs | | | | | | | |
| 04/13/2015 | Manuel Barrios | Check | dbt | Dispatch Taxi | Taxi fare to serve complaint at 3510 S. Michigan | 30.65 | 30.65 |
| 06/27/2016 | Manuel Barrios | Check | 1305 | United Processing, Inc. | Service on Honda Finance | 100.00 | 130.65 |
| 07/06/2016 | Manuel Barrios | Check | EFT | NextPoint | | 183.33 | 313.98 |
| 07/21/2016 | Manuel Barrios | Expense | | The Expert Institute | Retainer of expert search firm | 2,000.00 | 2,313.98 |
| 09/18/2016 | Manuel Barrios | Check | dbt | NextPoint | | 850.00 | 3,163.98 |
| 04/12/2017 | Manuel Barrios | Check | 1418 | NextPoint | Barrios et al hosting and processing fees | 1,387.50 | 4,551.48 |
| 06/30/2017 | Manuel Barrios | Check | 1455 | NextPoint | NextPoint hosting and processing fee May 2017 | 550.00 | 5,101.48 |
| 07/28/2017 | Manuel Barrios | Check | 1496 | NextPoint | NextPoint hosting fee | 250.00 | 5,351.48 |
| 08/01/2017 | Manuel Barrios | Check | 1495 | Randall McCathren | Retainer fee | 2,500.00 | 7,851.48 |
| 10/10/2017 | Manuel Barrios | Check | 1546 | NextPoint | Barrios - August 2017 hosting | 400.00 | 8,251.48 |
| 10/25/2017 | Manuel Barrios | Check | 1554 | NextPoint | Hosting | 250.00 | 8,501.48 |
| 12/21/2017 | Manuel Barrios | Check | 1584 | NextPoint | November 2017 Hosting | 400.00 | 8,901.48 |
| 01/12/2018 | Manuel Barrios | Check | 1602 | NextPoint | Hosting fee December 2017 | 250.00 | 9,151.48 |
| 08/14/2018 | Manuel Barrios | Check | 1667 | NextPoint | Barrios hosting fee July 2018 | 250.00 | 9,401.48 |
| 10/11/2018 | Manuel Barrios | Check | | Thomson Reuters | | 483.96 | 9,885.44 |
| 03/13/2019 | Manuel Barrios | Bill | Barrios | NextPoint | 12-31-18 Hosting bill INV19301 | 250.00 | 10,135.44 |
| 03/13/2019 | Manuel Barrios | Bill | Barrios | NextPoint | 11-30-18 bill for loading and Nov Hosting | 1,375.00 | 11,510.44 |
| 03/13/2019 | Manuel Barrios | Bill | Barrios | NextPoint | 8-31-18 Hosting Fee - INV 18588 | 250.00 | 11,760.44 |
| 03/13/2019 | Manuel Barrios | Bill | Barrios | NextPoint | 5-2018 Import and and hosting fee - INV 18078 | 5,200.00 | 16,960.44 |
| 03/13/2019 | Manuel Barrios | Bill | Barrios | NextPoint | 2-28-19 INV 19666 for data hosting | 250.00 | 17,210.44 |
| 04/18/2019 | Manuel Barrios | Check | 1750 | NextPoint | NextPoint Hosting Fee | 250.00 | 17,460.44 |
| 06/11/2019 | Manuel Barrios | Check | 1627 | NextPoint | Hosting Fee | 250.00 | 17,710.44 |
| 06/24/2019 | Manuel Barrios | Check | 1765 | BLC Associates, Inc. | Payment to expert Randall McCrathen (partial payment, Paul Lytle to pay remainder of bill) | 2,000.00 | 19,710.44 |
| 06/28/2019 | Manuel Barrios | Bill | | NextPoint | Nextpoint Hosting Inv. 19903 | 250.00 | 19,960.44 |
| 06/28/2019 | Manuel Barrios | Bill | Barrios | NextPoint | Nextpoint Hosting Inv. 18726 | 250.00 | 20,210.44 |
| 03/09/2020 | Manuel Barrios | Bill | Barrios | BLC Associates, Inc. | Expert witness fees - McCrathen | 1,021.25 | 21,231.69 |
| 04/29/2020 | Manuel Barrios | Bill | Barrios | BLC Associates, Inc. | McCathren expert bill | 1,496.25 | 22,727.94 |
| **Total for Advanced Client Costs** | | | | | | | **$22,727.94** |
| **TOTAL** | | | | | | | **$22,727.94** |

# EXHIBIT A

# EXHIBIT D –

# Cost Declaration of Paul J. Lytle

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Manuel Barrios, Brandon Fuller, and Savannah Washington individually and as representatives of all similarly situated persons, ) ) ) | |
| ) No.: 15 cv 2648 | |
| Plaintiffs, ) | |
| ) | |
| v. ) The Honorable Joan B. Gottschall | |
| ) | |
| The City of Chicago, ) | |
| ) | |
| Defendant. ) | |

**DECLARATION OF PAUL J. LYTLE IN SUPPORT OF PLAINTIFFS'
LITIGATION COSTS**

I, Paul J. Lytle, under penalty of perjury, hereby declare as follows:

1. I am a principal with the Lytle Law Group LLC (formally known as Lytle & Milan, LLC) and am a member in good standing of the Bar of the State of Illinois.

2. I respectfully submit this declaration in support of Plaintiffs' litigation costs. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and I could testify competently to them if called upon to do so.

3. I represented named Plaintiff Manual Barrios in the Chicago Department of Administrative Hearings case, City of Chicago v. Manuel Barrios, docket number 14VP012952, and in the Circuit Court of Cook County case, Manuel Barrios v. Garry F. McCarthy, docket number 14CH18477, which preceded and form the basis for the *instant* claim.

4. I have personal knowledge of almost every aspect of this litigation, including the work activities performed by Class Counsel and how Plaintiffs' evidentiary proof was developed.

5. Class Counsel maintained documents in an e-discovery database hosted by Nextpoint. Nextpoint is a cloud-based e-discovery software which enables efficient searching, filtering, and coding of documents. I incurred the cost of $4,900.00 for our use of that software in this case. Mr. Moor shared in that expense and paid Nextpoint additional amounts.

6. Kelley Blue Book ("KBB") is the industry leader in automobile valuations. In operation for more than a century, the Irvine, California based company is recognized by both consumers and the automotive industry as the leading authority on vehicle valuation and automotive research. KBB's information and expertise is routinely recognized and relied upon by this Court and others. Black Book was a competitor of KBB during our valuation of vehicles in this case. I incurred the cost of $2,080.66 for our acquisition of those organizations' published and unpublished valuations.

7. Randall McCathren is the former Managing Director of the Association of Consumer Vehicle Lessors, and recognized expert in the field of automobile finance. I incurred the cost of $5,776.75 for our receipt Mr. McCathern's expert opinion with regard to liability and damages issues in the case. Mr. Moor paid additional sums to McCathren.

8. All of the aforementioned costs were reasonably and necessarily incurred by me in the course of this litigation and a summary of my litigation expenses is attached as Exhibit 1.

9. I assert a total litigation costs of $12,757.41. Said some does not include any regular and routine overhead expenses such as administrative support staff, rent and utilities, document reproduction and management, parking etc.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 18, 2020

/s/ Paul J. Lytle
Paul J. Lytle, ARDC #6311194
The Lytle Law Group, LLC
1431 Opus Pl., Suite 110
Downers Grove, Illinois 60515
paul@thelytlelawgroup.com

| Date | User | Activity | Description | Type | Rate/Cost | Duration/Quantity | Total |
|------|------|----------|-------------|------|-----------|-------------------|-------|
| 2016-06-10 | Paul J. Lytle | Expenses: Litigation Support Vendors | NextPoint, Inc. Invoice #14572 | expense | $550.00 | 1 | $550.00 |
| 2016-08-07 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint | expense | $700.00 | 1 | $700.00 |
| 2016-09-09 | Paul J. Lytle | Expenses: Other | Kelley Blue Book | expense | $104.39 | 1 | $104.39 |
| 2016-10-06 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint, Inc. | expense | $250.00 | 1 | $250.00 |
| 2016-11-14 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint, Inc. Subscription | expense | $250.00 | 1 | $250.00 |
| 2016-12-13 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint | expense | $550.00 | 1 | $550.00 |
| 2017-03-05 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint | expense | $400.00 | 1 | $400.00 |
| 2017-05-09 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint, Inc. | expense | $250.00 | 1 | $250.00 |
| 2017-07-11 | Paul J. Lytle | Expenses: Litigation Support Vendors | Black Book: Annual Block Fee/ Valuation | expense | $1,500.00 | 1 | $1,500.00 |
| 2017-08-14 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint | expense | $250.00 | 1 | $250.00 |
| 2017-11-13 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint, Inc | expense | $250.00 | 1 | $250.00 |
| 2018-02-12 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint | expense | $250.00 | 1 | $250.00 |
| 2018-03-12 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint, Inc. | expense | $250.00 | 1 | $250.00 |
| 2018-05-10 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint | expense | $700.00 | 1 | $700.00 |
| 2019-02-08 | Paul J. Lytle | Expenses: Litigation Support Vendors | Nextpoint | expense | $250.00 | 1 | $250.00 |
| 2019-04-01 | Paul J. Lytle | Expenses: Other | Kelley's Blue Book January-March 2013 | expense | $476.27 | 1 | $476.27 |
| 2019-06-25 | Paul J. Lytle | Expenses: Expert Witness Fees | Randall McCarthern | expense | $5,776.75 | 1 | $5,776.75 |
| | | | Total | | | | $12,757.41 |

**EXHIBIT A**